**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| PATRICIA LOWRY, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>  v.<br><br>RTI SURGICAL HOLDINGS, INC., CAMILLE I. FARHAT, BRIAN K. HUTCHISON, JONATHON M. SINGER, ROBERT P. JORDHEIM, and JOHANNES W. LOUW,<br><br>   Defendants. | Case No. 1:20-cv-01939<br><br>Hon. Matthew F. Kennelly |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
ROBERT P. JORDHEIM'S MOTION TO DISMISS**

**DLA PIPER LLP (US)**
Deborah Meshulam*
500 8th Street NW
Washington DC 20004
T: 202.799.4511
E: deborah.meshulam@dlapiper.com

Keara M. Gordon*
1251 Avenue of the Americas
New York, NY 10020-1104
T: 212.335.4632
E: keara.gordon@dlapiper.com

Yan Grinblat
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
T: 312.368.2183
E: yan.grinblat@dlapiper.com

* Admitted *pro hac vice*

*Counsel for Defendant Robert R. Jordheim*

Table of Contents

Page

Preliminary Statement.............................................................................................................1

Summary of Allegations Concerning Mr. Jordheim.........................................................3

Argument ...............................................................................................................................7

    I.     Mr. Jordheim's Potential Liability is Limited to Statements
         Attributed to Him. ...................................................................................... 7

    II.    The Plaintiff Does Not Adequately Allege that Mr. Jordheim Made
         Any Actionable Misstatements or Omissions of Material Fact. ............................ 8

         A.     The AC Does Not Adequately Allege any False Statements...................... 8

         B.     The AC Does Not Adequately Allege Materiality................................... 10

    III.    The Plaintiff Does Not Adequately Allege Scienter............................................ 11

         A.     Mr. Jordheim's Class-Period Purchase of RTI Stock and the
             Clean Audit Opinions of RTI's Independent Auditor Negate Any
             Inference of Scienter. .................................................................................. 11

         B.     The Confidential Witness Allegations are Deficient and Must
             Be Discounted. ........................................................................................... 13

         C.     The Plaintiff's Remaining Scienter Allegations Are Not Sufficient. ....... 14

    IV.    The "Control Person" Claims Should Be Dismissed. ......................................... 15

Conclusion ............................................................................................................................15

i

Table of Authorities

Page(s)

Cases

*Alizadeh v. Tellabs, Inc.*
2014 WL 2726676 (N.D. Ill. June 16, 2014) ...................................................................8

*Anderson v. Abbott Labs.*
140 F. Supp. 2d 894 (N.D. Ill. 2001), *aff'd*, 269 F.3d 806 (7th Cir. 2001) ............................11

*Avon Pension Fund v. GlaxoSmithKline PLC*
343 F. App'x 671 (2d Cir. 2009) ...........................................................................12

*Basic Inc. v. Levinson*
485 U.S. 224 (1988).......................................................................................10

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007).......................................................................................3

*City of New Orleans Emps.' Ret. Sys. v. PrivateBankcorp, Inc.*
2011 WL 5374095 (N.D. Ill. Nov. 3, 2011) ................................................................14

*City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*
388 F. Supp. 2d 932 (S.D. Ind. 2005) ................................................................13, 14

*City of Livonia Emps.' Ret. Sys. & Local 295/Local 851 v. Boeing Co.*
711 F.3d 754 (7th Cir. 2013) .............................................................................11

*City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*
963 F. Supp. 2d 1092 (E.D. Wash. 2013), *aff'd,* 691 F. App'x 393 (9th Cir.
2017) ...................................................................................................14

*Constr. Workers Pension Fund-Lake Cty. & Vicinity v. Navistar Int'l Corp.*
2014 WL 3610877 (N.D. Ill. July 22, 2014)...............................................................8

*Davis v. SPSS, Inc.*
431 F. Supp. 2d 823 (N.D. Ill. 2006) ....................................................................13

*DiLeo v. Ernst & Young*
901 F.2d 624 (7th Cir. 1990) .............................................................................9

*Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*
778 F.3d 228 (1st Cir. 2015)..............................................................................12

*Fryman v. Atlas Fin. Holdings, Inc.*
2020 WL 2735366 (N.D. Ill. May 26, 2020)...............................................................14

ii

Page(s)

*Gallagher v. Abbot Labs.*
269 F.3d 806 (7th Cir. 2001) ........................................................................................14

*Glickenhaus & Co. v. Household Int'l, Inc.*
787 F.3d 408 (7th Cir. 2015) ..........................................................................................7

*Higginbotham v. Baxter Int'l, Inc.*
495 F.3d 753 (7th Cir. 2007) ....................................................................................11, 12

*IBEW Local Union No. 58 Pension Tr. Fund v. Royal Bank of Scotland Grp.*,
783 F.3d 383, 391 (2d Cir. 2015)..................................................................................11

*In re Aspeon, Inc. Sec. Litig.*
168 F. App'x 836 (9th Cir. 2006) .................................................................................12

*In re Bally Total Fitness Sec. Litig.*
2006 WL 3714708 (N.D. Ill. July 12, 2006)................................................................15

*In re Bausch & Lomb, Inc. Sec. Litig.*
592 F. Supp. 2d 323 (W.D.N.Y. 2008) ........................................................................12

*In re Bristol-Myers Squibb Sec. Litig.*
312 F. Supp. 2d 549 (S.D.N.Y. 2004)......................................................................12, 14

*In re Hansen Nat. Corp. Sec. Litig.*
527 F. Supp. 2d 1142 (C.D. Cal. 2007) .......................................................................12

*In re Harley-Davidson, Inc. Sec. Litig.*
660 F. Supp. 2d 969 (E.D. Wis. 2009)..........................................................................10

*In re Midway Games, Inc. Sec. Litig.*
332 F. Supp. 2d 1152 (N.D. Ill. 2004) ...........................................................................9

*In re Newell Rubbermaid Inc. Sec. Litig.*
2000 WL 1705279 (N.D. Ill. Nov. 14, 2000) ...........................................................10, 11

*In re Trex Co., Inc. Sec. Litig.*
454 F. Supp. 2d 560 (W.D. Va. 2006) ..........................................................................13

*Janus Capital Grp., Inc. v. First Deriv. Traders*
564 U.S. 135 (2011)........................................................................................................7

*Johnson v. Tellabs, Inc.*
262 F. Supp. 2d 937 (N.D. Ill. 2003) ...........................................................................15

*Last Atlantis Capital LLC v. AGS Specialist Partners*
533 F. Supp. 2d 828 (N.D. Ill. 2008) ...........................................................................13

Page(s)

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*
    513 F.3d 702 (7th Cir. 2008) ...............................................................................................8

*Malin v. XL Capital Ltd.*
    499 F. Supp. 2d 117 (D. Conn. 2007), *aff'd,* 312 F. App'x 400 (2d Cir. 2009) .....................13

*McCasland v. FormFactor Inc.*
    2008 WL 2951275 (N.D. Cal. July 25, 2008)........................................................................8

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*
    575 U.S. 175 (2015)...........................................................................................................3, 9

*Parnes v. Gateway 2000, Inc.*
    122 F.3d 539 (8th Cir. 1997) .............................................................................................11

*Pension Tr. Fund for Operating Eng'rs v. DeVry Educ. Grp., Inc.*
    2017 WL 6039926 (N.D. Ill. Dec. 6, 2017) .......................................................................15

*Plumbers and Pipefitters Local Union v. Zimmer,*
    673 F. Supp. 2d 718 (S.D. Ind. 2009) ...........................................................................13, 14

*Pugh v. Tribune Co.*
    521 F.3d 686 (7th Cir. 2008) .............................................................................................15

*Tabor v. Bodisen Biotech, Inc.*
    579 F. Supp. 2d 438 (S.D.N.Y. 2008)..................................................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
    551 U.S. 308 (2007)..................................................................................................3, 11, 12

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*
    475 F.3d 824 (7th Cir. 2007) ...............................................................................................7

*Zucco Partners, LLC v. Digimarc Corp.*
    552 F.3d 981 (9th Cir. 2009) .............................................................................................13

Statutes, Regulations, and Rules

17 C.F.R. § 240.10b-5..........................................................................................................6, 7

15 U.S.C. § 78j(b) ....................................................................................................................6

15 U.S.C. § 78t(a) ...............................................................................................................6, 15

15 U.S.C. § 78u-4(b)...............................................................................................................11

Private Securities Litigation Reform Act of 1995, PL 104-67, 109 Stat. 737 .................... *passim*

## **PRELIMINARY STATEMENT**

During the putative class period, Robert Jordheim was the CFO of RTI Surgical Holdings, Inc. ("RTI" or the "Company") from March to December 2016, and March 2017 to September 2017. He was interim CEO from December 2016 to March 2017. The last RTI filing he signed was the Q2 2017 Form 10-Q; he left RTI thereafter. On June 8, 2020 – nearly *three years* after Mr. Jordheim left RTI – the Company restated its financial statements for 2014-2018 and the first three quarters of 2019. *See* Amended Complaint, ECF No. 53 ("AC") ¶ 226. In its restatement, RTI stated that "revenue for certain invoices" should have been recognized later than it was because at times, "[i]n response to binding purchase orders . . . goods were shipped and received by the customers before requested delivery dates and agreed-upon delivery windows" and, in some cases, RTI could not – years later – "locate evidence" of customer approval of those shipments. *Id.*

Capitalizing on the Company's disclosure while ignoring the fact that the restatement demonstrated that revenue was *understated* for much of Mr. Jordheim's tenure at RTI during the relevant period, the plaintiff, a putative RTI stockholder, sued RTI and certain present or former officers, including Mr. Jordheim. The crux of the AC is that because RTI ultimately announced a restatement, *every* statement *anyone* made concerning RTI's financial performance over the course of a four-year period (between March 7, 2016 and March 27, 2020) must have been false. For all of the reasons set forth in RTI's motion to dismiss and those of the other defendants, which Mr. Jordheim joins, these claims must be dismissed. Mr. Jordheim writes separately to demonstrate that the claims specifically asserted against him fail for the additional reasons below.

First, Mr. Jordheim can only be liable for statements he "made": those that he signed, delivered, or exercised control over. The plaintiff does not allege that Mr. Jordheim exercised control over the contents of any challenged statements that are not directly attributed to him. Thus, Mr. Jordheim's potential liability extends (if at all) to the challenged statements in RTI's Form 10-

K for 2015 and Forms 10-Q for Q1 2016 to Q2 2017, which he signed, and statements made during earnings calls for Q1 2016 to Q4 2016 and Q2 2017. Any purported claims against him for any other statements should be dismissed. *See* Section I.

Second, the AC does not adequately allege that Mr. Jordheim made any misstatements of material fact. Instead, the plaintiff surmises, based primarily on the fact that RTI issued a restatement, that *all* of Mr. Jordheim's earlier statements must have been false. *E.g.*, AC ¶ 98. Such generic fraud by hindsight allegations fall far short of the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The AC's rote allegations also ignore that for all but two of the class-period quarters that Mr. Jordheim was at RTI, revenue was *understated* and the restatement *increased* RTI's revenue for 2015 through 2017. As the Court previously has held, such facts negate any inference of fraud and compel the conclusion that RTI's understatement of revenue would not have been material to a reasonable investor. When RTI announced the restatement's lack of magnitude, its stock price *increased*, which strongly supports the inference that the market saw the restatement as immaterial. *See* Section II.

Third, the plaintiff fails to plead facts to support the required "strong inference" of scienter. It is unclear what motive Mr. Jordheim would have had to make the Company's financial statements look worse than they were, and the plaintiff does not articulate one. Mr. Jordheim *nearly doubled* his holdings in RTI stock (including through an independent purchase of shares) during the putative class period, which negates any inference of scienter. The contemporaneous conclusions of RTI's independent auditor that the Company's financial statements fairly presented its financial position and its internal controls were effective further rebut any such inference.

In an attempt to portray Mr. Jordheim as a participant in the alleged conduct, the plaintiff alleges a single supposed conversation, which, at most, would link Mr. Jordheim to *one* allegedly early shipment at some unknown period in time. The Court should reject this allegation because

its source is a confidential witness who apparently was not a party to the alleged conversation and has no first-hand knowledge of it. In addition, the allegation does not specify when the conversation supposedly occurred much less that it occurred during the putative class period. The AC's remaining allegations amount to generalized assertions that, at some unspecified time, the individual defendants were "privy" to indeterminate confidential information purportedly calling into question Company statements, but fail to identify any contemporaneous information that contradicts those statements. *See* AC ¶ 33. Seventh Circuit case law overwhelmingly rejects such vague "group pleading" and "core operations" allegations as insufficient. *See* Section III.

Fourth, the Court should dismiss the "control person" claim against Mr. Jordheim because the plaintiff fails to allege a primary violation. *See* Section IV.

### SUMMARY OF ALLEGATIONS CONCERNING MR. JORDHEIM[1]

**The Parties**: RTI was at all relevant times a publicly traded company that designed, developed, manufactured, and distributed biologic, metal, and synthetic surgical implants. AC ¶ 25. Other than from December 2016 to March 2017, when he served as interim CEO, Mr. Jordheim was the Company's CFO during the putative class period until he left RTI in September 2017. *Id.* ¶ 30. The plaintiff alleges that she is an RTI stockholder.

**RTI's Sales, Shipments, and Accounting**: The AC alleges that during the putative class period, RTI improperly recognized "revenue for certain contractual arrangements." *Id.* ¶ 50. The AC claims that unnamed individuals at RTI asked "customers to accept early shipments for

---

[1] Mr. Jordheim assumes as true well-pleaded allegations solely for purposes of this motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The Court, however, is not limited to the allegations and may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Mr. Jordheim's statements must be evaluated "fairly and in context." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 194 (2015). To place the allegations in proper context, Mr. Jordheim offers several documents that may be judicially noticed by the Court, attached as exhibits to his Request for Judicial Notice ("RJN").

purchase orders so that RTI could hit its revenue targets" and, in some instances, sent out early shipments without prior customer approval. *Id.* ¶ 51. By doing so, RTI allegedly improperly booked some of those sales in earlier financial reporting periods. *Id.* ¶ 53. The AC does not allege that RTI fabricated purchase orders or falsely increased existing purchase orders; rather, shipments were made in response to "binding purchase orders." *Id.* ¶ 226.

During Mr. Jordheim's tenure at RTI, the Company disclosed that "[r]evenue [was] recognized upon shipping, or receipt by. . . customers of the implant, depending on the Company's distribution agreements . . ." *Id.* ¶¶ 93, 94, 139, 167 (quoting Forms 10-K for 2015-2017). There is no allegation that it did not do so. Relatedly, for each of 2014, 2015, 2016, and 2017, RTI's independent auditor concluded that RTI's "consolidated financial statements . . . present fairly, in all material respects, the financial position of RTI" and that "the Company maintained, in all material respects, effective internal control over financial reporting." *See* RTI Mot. Ex. 2 (2015 10-K) at 64; Ex. 3 (2016 10-K) at 66; Ex. 4 (2017 10-K) at 79.

**Statements Attributed to Mr. Jordheim**: Most of Mr. Jordheim's challenged statements – contained in Forms 10-K or 10-Q or investor calls – merely report the amount of or percentage change in Company revenue in a given year or quarter. *See* AC ¶¶ 93-95, 102, 106-07, 112-13, 117-18, 124, 128-29, 142, 148, 153-54. The plaintiff does not detail why each of these statements was supposedly false; instead, the AC repeats its rote mantra: that RTI allegedly shipped certain customer orders early and, as a result, "pulled [shipments] from a future quarter into an earlier quarter" which, allegedly rendered all financials "false." AC ¶¶ 99, 101, 104, 109, 111, 116, 120, 123, 126, 131, 134, 137, 144, 147, 156.

But when one actually examines the restatement, there is no such pattern. For every year and nearly every quarter during the putative class period that Mr. Jordheim was at RTI, revenue was *understated* and the restatement retroactively *improved* RTI's financial position.

4

| Time period | Revenue (reported) | Revenue (restated) | % change after restatement |
|---|---|---|---|
| 2015 | $282.3M | $283.1M | 0.30% (*understated*) |
| Q1 2016 | $67.4M | $67.5M | 0.25% (*understated*) |
| Q2 2016 | $67.6M | $69.9M | 3.41% (*understated*) |
| Q3 2016 | $66.5M | $66.5M | -0.10% (overstated) |
| Q4 2016 | $71.3M | $72.1M | 1.00% (*understated*) |
| 2016 | $272.9M | $276.0M | 1.14% (*understated*) |
| Q1 2017 | $69.9M | $70.4M | 0.68% (*understated*) |
| Q2 2017 | $72.1M | $71.6M | -0.75% (overstated) |
| 2017 | $279.6M | $280.3M | 0.28% (*understated*) |

RTI Mot. Ex. 1 (2018 10K/A) at 36, 107, 125, 129, 130, 131. When the details of the restatement were announced on June 8, 2020, RTI's stock price *increased*, closing at $3.11 per share from a prior day close of $3.07 per share. RJN Ex. A.

The AC also challenges statements attributed to Mr. Jordheim in RTI's disclosures opining as to the adequacy of its internal controls over financial reporting. *See* AC ¶¶ 96, 97, 108, 119, 130, 143, 155. Again, it does not articulate a factual basis for why each of these statements was false, or allege that Mr. Jordheim had no basis to believe that those statements were accurate when made. Instead, the AC merely invokes the restatement. *Id.* ¶¶ 99, 109, 120, 131, 144, 156. But RTI only stated that its internal controls "were not effective *as of December 31, 2018*" – over a year *after* Mr. Jordheim left the Company. *Id.* ¶ 229 (emphasis added).

Finally, the AC challenges four conference call statements attributed to Mr. Jordheim, that: (1) in Q2 2016 global commercial revenue decreased in part "due to lower orders from certain commercial distributors primarily in the spine, trauma, and dental markets," *id.* ¶ 113, (2) an RTI "partner" reduced orders from RTI because certain "opportunities" did not "materialize," *id.* ¶¶ 114-15, (3) targeted "investments" resulted in "signs of stabilization" in RTI's "commercial business," *id.* ¶ 135, and (4) RTI was "starting to see the results of [its] cost reduction initiatives," *id.* ¶ 150. The AC does not allege, however, any contemporaneous facts contradicting these statements.

5

**Scienter Allegations**: The plaintiff does not articulate any motive for Mr. Jordheim to commit fraud. Any such allegations would not be plausible given that Mr. Jordheim independently purchased 8,179 shares of RTI common stock during the purported class period. *See* RJN Ex. B at 3 (SEC Form 4 dated 11/8/2016). In fact, through this independent market purchase, as well as the vesting of restricted stock awards and the exercise of stock options, Mr. Jordheim *increased* his RTI stock holdings from 87,000 shares in February 2016 to 145,000 shares in May 2017 (shortly before he left the Company). *See id.* (SEC Forms 4).

The only alleged connection between Mr. Jordheim and the purported early shipments is a single hearsay statement from a confidential witness. In presenting statements from "FE3," the AC alleges that "Jordheim told [RTI employee Terri] Oto that RTI needed to book additional revenue before the end of the quarter and that the Company would be shipping a purchase order early to one of Oto's hernia product distributors" but "[w]hen Oto raised the customer's unwillingness with Jordheim, he ordered the shipment to go ahead anyway." AC ¶¶ 84, 86. The AC does not allege how FE3 came to learn of this supposed conversation to which he or she was not a party, when it supposedly took place, or whether the customer accepted or rejected the alleged shipment.

The remaining scienter allegations are blanket contentions that "defendants" knowledge can be "infer[red]" because the restatement involved an "important" part of RTI's business. *Id.* ¶¶ 239-40. Plaintiff also contends that "defendants" were "privy" to unspecified "confidential proprietary information" that she presumes (but does not establish) contradicted RTI's disclosures. *Id.* ¶ 33. She does not explain what this alleged "confidential" information was, what it showed, when it was prepared, or whether Mr. Jordheim actually reviewed it.

**The Claims Asserted**: The AC asserts claims against Mr. Jordheim for securities fraud under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, and for "control person" liability under Section 20(a) of the Exchange Act. AC ¶¶ 1, 268-83.

6

## **ARGUMENT**

To state a claim for securities fraud under Rule 10b-5, a plaintiff must allege that "(1) the defendant made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the plaintiff justifiably relied (6) and that the false statement proximately caused the plaintiff's damages." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 842 (7th Cir. 2007). For the reasons described below, in addition to those set forth in the other defendants' brief, incorporated herein by reference as applicable, the Court should dismiss the claims against Mr. Jordheim.[2]

## **I.  Mr. Jordheim's Potential Liability is Limited to Statements Attributed to Him.**

To be liable under Rule 10b-5, a defendant "must have 'made' the material misstatements" at issue. *Janus Capital Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 141 (2011). One "makes" statements if (1) his "signature or name appear[s] in [the statements] in the sense of an attribution," (2) he "actually deliver[s] the statements," or (3) he "*actually exercise[s]* control over the content of the [statements] and whether and how they were communicated." *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 426-27 (7th Cir. 2015) (citing *Janus*, 564 U.S. at 142).

The AC challenges RTI's 2015 Form 10-K, Forms 10-Q for Q1 2016 to Q2 2017, and Mr. Jordheim's statements on earnings calls in Q1 2016 to Q4 2016, and Q2 2017. *See* AC ¶¶ 93-96, 102, 106-08, 112-15, 117-19, 124, 128-30, 135, 142-43, 148, 150, 153-55. It does not allege that Mr. Jordheim "actually exercised" control over the contents of any other statements. *Glickenhaus*, 787 F.3d at 426. Mr. Jordheim's liability (if any) must be limited to the statements he is alleged to have "made." *Id.* Any claims against Mr. Jordheim predicated on other statements fail.

---

[2] Mr. Jordheim respectfully refers the Court to RTI's moving brief for the applicable standard of review. Mr. Jordheim does not concede that the AC meets any of the applicable elements and expressly reserves the right to challenge all such elements at the appropriate time, if necessary.

II.     **The Plaintiff Does Not Adequately Allege that Mr. Jordheim Made Any Actionable Misstatements or Omissions of Material Fact.**

A.      **The AC Does Not Adequately Allege any False Statements.**[3]

First, the PSLRA "requires a plaintiff to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading," and "all facts that form the plaintiff's basis for believing that the statement is misleading." *Constr. Workers Pension Fund-Lake Cty. & Vicinity v. Navistar Int'l Corp.*, 2014 WL 3610877, at \*4 (N.D. Ill. July 22, 2014). In *Navistar*, the court dismissed as "not sufficient" a pleading that "after quoting transcripts, press releases, SEC filings, and trade magazines at length" merely set out "that these statements were false and misleading for a laundry list of reasons" which were "generally applicable to all allegedly misleading statements and omissions." *Id.* at \*6.[4]

The same defect compels dismissal here. The AC challenges all of Mr. Jordheim's statements for the same generic reason: that "because certain customer orders . . . were shipped early to customers," RTI's "reported revenue figures were false." AC ¶¶ 99, 101, 104, 109, 111, 116, 120, 123, 126, 131, 134, 137, 141, 144, 147, 152, 156. There is no specificity, however, regarding how any particular early shipment, in any particular quarter, rendered a particular revenue figure false. Without these details, there is no basis to conclude that any *specific* statement attributed to Mr. Jordheim was false when made, especially since revenue was *understated* during most of Mr. Jordheim's class period tenure at RTI.

---

[3] As a threshold matter, the AC does not adequately allege that RTI's shipping practices were fraudulent. *See* RTI Mot. at 9-19; *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 709 (7th Cir. 2008) (early shipping only potentially problematic when used "to book revenues on the basis of goods shipped but not really sold"). Here, the plaintiff alleges that real products were shipped to real customers, who paid real money – but that some shipments may have been sent earlier than requested. No duty mandates disclosure of this practice. *See* Hutchison Mot. at 7-8.

[4] *See also Alizadeh v. Tellabs, Inc.*, 2014 WL 2726676, at \*4 (N.D. Ill. June 16, 2014); *McCasland v. FormFactor Inc.*, 2008 WL 2951275, at \*7 (N.D. Cal. July 25, 2008); *Tabor v. Bodisen Biotech, Inc.*, 579 F. Supp. 2d 438, 453 (S.D.N.Y. 2008) (similar pleading deficiencies required dismissal).

Second, the AC does not allege any facts contradicting Mr. Jordheim's opinions as to the adequacy of RTI's internal controls. The plaintiff alleges in conclusory fashion that these opinions were false because RTI later determined that its internal controls *as of December 31, 2018* were "not effective." AC ¶¶ 99, 109, 120, 131, 141, 144, 156, 229. That date was over a year after Mr. Jordheim left RTI, and the plaintiff does not plead any facts to establish that internal controls were lacking during Mr. Jordheim's tenure or that Mr. Jordheim did not honestly believe that RTI's internal controls were adequate at the time. *See* RTI Mot. at 19, 25; *see also Omnicare*, 575 U.S. at 186. The securities laws do not permit such "fraud by hindsight" pleading strategies. *DiLeo v. Ernst & Young*, 901 F.2d 624, 628 (7th Cir. 1990).

Third, the plaintiff does not plead facts demonstrating the falsity of the remaining statements Mr. Jordheim is alleged to have made during RTI's earnings calls.

- She challenges a statement that in Q2 2016, global commercial revenue decreased in part "due to lower orders from certain commercial distributors primarily in the spine, trauma, and dental markets." AC ¶ 113. But she does not allege that such orders did not in fact decrease or that this decrease did not lower RTI's commercial revenue in that quarter.

- She challenges a statement that RTI was "feeling the impact of" diminished orders from a customer who "ordered a lot of product . . . in an anticipation of . . . opportunities" that did not "materialize." *Id.* ¶ 115. She does not, however, allege facts showing this statement was not true, or that this customer ever received any early or unauthorized shipments.

- She challenges statements that RTI's "investments in . . . areas where we see the greatest growth potential" led to "signs of stabilization," *id.* ¶ 135, and that the "commercial business continues to stabilize" based on "cost reduction initiatives," *id.* ¶ 150. Again, she does not allege that RTI did not invest in areas targeted for growth, did not implement cost reduction initiatives, that RTI's commercial business did not show signs of stabilization, or how these statements were rendered false by a later restatement of revenue.

Moreover, such "puffery" cannot give rise to a securities violation. *In re Midway Games, Inc. Sec. Litig.*, 332 F. Supp. 2d 1152, 1164 (N.D. Ill. 2004) (dismissing claims based on statements that were "so vague, so lacking in specificity . . . that no reasonable investor could find them important to the total mix of information available") (collecting cases).

9

### B.   The AC Does Not Adequately Allege Materiality.

A statement is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (citation omitted). Here, (1) the plaintiff fails to plead materiality based on RTI's restatement, and (2) the size of the restatement renders it immaterial as a matter of law.

First, the AC's "[g]eneral allegations that [RTI's] accounting practices resulted in a false report of the company's earnings [are] not . . . sufficient[.]" *In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 989 (E.D. Wis. 2009). In *Harley-Davidson*, the court dismissed a securities complaint alleging early shipments, holding that to plead materiality a plaintiff must set forth "(1) the particular financial transaction which caused the alleged misstatement of earnings; (2) the amount of the overstatement and the effect it had on the company's earnings; [and] (3) the applicable accounting principle(s) applied by the company and why they were improperly applied." *Id.* The AC does meet these requirements.

Second, the small magnitude of the restatement during Mr. Jordheim's tenure renders it immaterial. In *In re Newell Rubbermaid Inc. Sec. Litig.*, this Court observed that "when it is clear that a particular financial misstatement could not possibly be significant to a reasonable investor due to its small magnitude, a court may properly determine on a motion to dismiss that the misstatement was immaterial as a matter of law." 2000 WL 1705279, at *8 (N.D. Ill. Nov. 14, 2000) (Kennelly, J.) (collecting cases). The Court dismissed the complaint because it found the alleged one percent *overstatement* of net revenue was immaterial to an average investor. *Id.*

The same result is warranted here. RTI's revenue was *understated* by 0.3% in 2015 and 1.14% in 2016. RTI Mot. Ex. 1 at 36, 107, 125, 129, 130, 131. RTI's revenue was overstated for only two class-period quarters during which Mr. Jordheim was at RTI – and only by 0.1% and

0.75%, respectively. *Id.* As in *Newell,* the alleged misrepresentations would not have been material. *See id.* "[I]ndeed, securities lawyers often use a 5% change as a rule-of-thumb approach to what is 'material.'" *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 759 (7th Cir. 2007).[5]

That RTI's stock price *increased* when the details of the restatement were announced, *see* RJN Ex. _, further supports the inference that the restatement was not material. *See Anderson v. Abbott Labs.*, 140 F. Supp. 2d 894, 902 (N.D. Ill. 2001), *aff'd*, 269 F.3d 806 (7th Cir. 2001).

## III. The Plaintiff Does Not Adequately Allege Scienter.

The PSLRA requires plaintiffs to "state with particularity facts giving rise to a *strong* inference" of "scienter" – "an intent to deceive, demonstrated by knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false." 15 U.S.C. § 78u-4(b)(2) (emphasis added); *see Higginbotham*, 495 F.3d at 756. The inference of scienter must be "powerful," "cogent," "strong in light of other explanations," and "at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 323-24 (2007). If the PSLRA's exacting requirements are not met, "the court *shall* . . . dismiss the complaint[.]" 15 U.S.C. § 78u-4(b)(3)(A) (emphasis added). They are not met here.

### A. Mr. Jordheim's Class-Period Purchase of RTI Stock and the Clean Audit Opinions of RTI's Independent Auditor Negate Any Inference of Scienter.

The AC does not allege any motive for Mr. Jordheim to commit fraud. "Without a motive to commit securities fraud, businessmen are unlikely to commit it." *City of Livonia Emps.' Ret. Sys. & Local 295/Local 851 v. Boeing Co.*, 711 F.3d 754, 758 (7th Cir. 2013). An executive who "*increase[s]* his holdings of [company] stock" during the alleged class period has no "motive to

---

[5] *See also IBEW Local Union No. 58 Pension Tr. Fund v. Royal Bank of Scotland Grp.*, 783 F.3d 383, 391 (2d Cir. 2015) (undisclosed potential exposure of $6.8bn not material where it "constitutes less than 4% of [defendant's] total asset backed securities exposure, and less than 1% of its total assets"); *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 547 (8th Cir. 1997) (2% overstatement of assets not material).

11

artificially inflate [the company's] stock during that period." *Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 246 (1st Cir. 2015). As a result, courts hold that "a stock purchase may indicate that the corporate insider knew or believed that the issued statements were accurate" and "tends to negate the inference of scienter." *In re Aspeon, Inc. Sec. Litig.*, 168 F. App'x 836, 840 (9th Cir. 2006).[6] During the putative class period, Mr. Jordheim independently purchased 8,179 shares of RTI stock, and increased his class-period stock holdings via purchases and option exercises from 87,000 in early 2016 to 145,000 shortly before he left RTI in mid-2017. *See* RJN Ex. B. Mr. Jordheim's significant financial investment in RTI during the alleged class period negates any inference of scienter.

Similarly, auditors' "unqualified opinion[s] [are] 'highly probative' of an absence of scienter." *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1158 (C.D. Cal. 2007); *see In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 340 (W.D.N.Y. 2008) (no scienter where independent auditor handed down "clean audit opinions"); *see also* RTI Mot. at 24. Here, for each of 2014-2017, RTI's independent auditor found that the Company's "financial statements . . . present fairly, in all material respects, the [Company's] financial position" and that "the Company maintained, in all material respects, effective internal control over financial reporting" further supports this conclusion. RTI Mot. Ex. 2 at 64; Ex. 3 at 66; Ex. 4 at 79. The fact that the Company discovered a lack of internal controls as of December 2018 – years after Mr. Jordheim left – "does not suffice to show scienter." *Hansen*, 527 F. Supp. 2d at 1158 (collecting cases).

---

[6] *See also Higginbotham*, 495 F.3d at 759 ("the *absence* of sales by other managers who would have been in the know (had news of the fraud reached HQ) implies that nothing was thought to be out of the ordinary"); *Avon Pension Fund v. GlaxoSmithKline PLC*, 343 F. App'x 671, 673 (2d Cir. 2009) (affirming dismissal because executives' increase in stock holdings "cannot support a 'cogent and compelling' inference of fraudulent intent" and instead "signals only confidence in the future of their company") (citing *Tellabs*, 551 U.S. at 324); *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004) (that defendants "*increased* their [stock] holdings during the Class Period" is "wholly inconsistent with fraudulent intent").

**B.        The Confidential Witness Allegations are Deficient and Must Be Discounted.**

The only allegation purporting to connect Mr. Jordheim to early shipments is a single statement attributed to one confidential witness. According to "FE3," Mr. Jordheim told Ms. Oto that the Company needed to book additional revenue before the end of the quarter and would ship one purchase order early to one customer. AC ¶ 86. When Ms. Oto allegedly indicated that the customer had, at some unknown time in the past, been "unwilling[]" to receive early shipments, Mr. Jordheim purportedly ordered that the shipment still proceed. *Id.* As detailed in RTI's brief, the Court should steeply discount all of the confidential witness testimony. *See* RTI Mot. at 10-13. The Court should reject the FE3 allegations entirely for the reasons below.

First, confidential witness allegations that "report only unreliable hearsay . . . are not sufficient to raise a strong inference of scienter[.]" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 996 (9th Cir. 2009); *see Last Atlantis Capital LLC v. AGS Specialist Partners*, 533 F. Supp. 2d 828, 832 (N.D. Ill. 2008) (discounting confidential witness allegations that were "uncorroborated" and "vague about the source's basis of personal knowledge") (citation omitted); *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 139, n. 17 (D. Conn. 2007) ("impermissible hearsay . . . cannot be considered"), *aff'd,* 312 F. App'x 400 (2d Cir. 2009); *In re Trex Co., Inc. Sec. Litig.*, 454 F. Supp. 2d 560, 573 (W.D. Va. 2006) (PSLRA requires that confidential witness have "personal knowledge" and their statements "[]not be based on hearsay"); *see also Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer*, 673 F. Supp. 2d 718, 747 (same).

In *Davis v. SPSS, Inc.*, a securities case alleging premature booking of sales, the court rejected confidential witnesses testimony because it was "unclear how they learned" of the alleged information and "any information witnesses received second- or third-hand is insufficient to establish its reliability." 431 F. Supp. 2d 823, 831 (N.D. Ill. 2006) (dismissing claims); *see also City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*, 388 F. Supp. 2d 932, 942 (S.D. Ind. 2005)

13

(rejecting confidential witness testimony lacking personal knowledge and dismissing claim). Here, the plaintiff does not allege that FE3 was a party to or had personal knowledge of the alleged conversation. In fact, there are no allegations *at all* about how FE3 learned of this conversation, whether it and the alleged shipment occurred during the putative class period, the shipment's financial import, whether the customer in fact was "unwilling" at the time to receive it, and whether the customer returned or refused it. As such, this allegation is plainly insufficient.

Second, the plaintiff does not allege that the purported conversation occurred during the putative class period and "[a]ny inference that pre-Class Period practices continued during the Class Period amounts to unsubstantiated speculation." *City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1135 (E.D. Wash. 2013), *aff'd,* 691 F. App'x 393 (9th Cir. 2017); *see Zimmer*, 673 F. Supp. 2d at 737 (discounting confidential witness allegations that were "uncorroborated, and vague as to the timing"); *ITT*, 388 F. Supp. 2d at 942 (knowledge during the class period required). FE3's undated and uncorroborated hearsay statements amount to unreliable speculation and should be rejected.

### C.     The Plaintiff's Remaining Scienter Allegations Are Not Sufficient.

When no motive is pled, the "strength of the circumstantial allegations must be correspondingly greater" and plaintiffs must "specifically alleg[e] defendants' knowledge of the facts or access to information contradicting their public statements." *Bristol-Myers*, 312 F. Supp.2d at 562. A "[r]estatement alone does not provide a basis for inferring scienter" without specific allegations of fraudulent intent. *Id.* at 565; *see* RTI Mot. at 19-20. No such allegations are asserted as to Mr. Jordheim.

"Vague allegations that defendants had 'access to undisclosed information' have been rejected under the PSLRA." *City of New Orleans Emps.' Ret. Sys. v. PrivateBankcorp, Inc.*, 2011 WL 5374095, at *8 (N.D. Ill. Nov. 3, 2011); *see Fryman v. Atlas Fin. Holdings, Inc.*, No. 18-cv-

14

01640, 2020 WL 2735366, at *10 (N.D. Ill. May 26, 2020) (plaintiffs must "state with particularity the information to which Defendants had access"). Signing SOX certifications "does not suffice to allege scienter without allegations that [defendant] was aware of [alleged] material weaknesses in . . . internal controls." *Roth v. OfficeMax, Inc.*, 527 F. Supp. 2d 791, 804 (N.D. Ill. 2007).

Finally, claims that scienter can be "infer[red]" because the restatement involved an "important" part of RTI's business fail. Scienter "may not rest on the inference that defendants must have been aware of a misstatement based simply on their positions within the company." *In re Bally Total Fitness Sec. Litig.*, 2006 WL 3714708, at *8 (N.D. Ill. July 12, 2006). Dismissal is particularly warranted where "[t]here are no particularized allegations shedding light on when, if ever, defendants should have known that [a challenged statement] was or might be false." *Pension Tr. Fund for Operating Eng'rs v. DeVry Educ. Grp., Inc.*, 2017 WL 6039926, at *12 (N.D. Ill. Dec. 6, 2017); *see Johnson v. Tellabs, Inc.*, 262 F. Supp. 2d 937, 957 (N.D. Ill. 2003).

The AC falls far short of these standards. It does not plead any contemporaneous facts Mr. Jordheim knew during the putative class period that render his statements false when made. It offers generic allegations that "defendants" were "privy" to certain "confidential" information, but there is no allegation how or when that information contradicted any public statements. AC ¶ 33. The AC also does not explain what this alleged "confidential" information was, what it showed, when it was available, or whether Mr. Jordheim actually reviewed such information.

## IV.     The "Control Person" Claims Should Be Dismissed.

Because the AC has not alleged any primary violation, the control person claim against Mr. Jordheim also should be dismissed. *Pugh v. Tribune Co.*, 521 F.3d 686, 693, 698 (7th Cir. 2008).

## CONCLUSION

The Court should dismiss all claims against Robert P. Jordheim in the consolidated amended complaint, with prejudice.

15

Dated: Chicago, Illinois
      October 15, 2020

**DLA PIPER LLP (US)**

By:   */s/ Yan Grinblat*

Deborah R. Meshulam\*
500 8th Street NW
Washington DC 20004
T: 202.799.4511
E: deborah.meshulam@dlapiper.com

    Yan Grinblat
    444 West Lake Street, Suite 900
    Chicago, IL 60606-0089
    T: 312.368.2183
    E: yan.grinblat@dlapiper.com

Keara M. Gordon\*
1251 Avenue of the Americas
New York, NY 10020-1104
T: 212.335.4632
E: keara.gordon@dlapiper.com

\* Admitted *pro hac vice*

*Counsel for Defendant Robert P. Jordheim*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 15, 2020, I electronically filed the foregoing document using the ECF System for the United States District Court for the Northern District of Illinois. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record registered on the ECF system.

*/s/ Yan Grinblat*
Yan Grinblat
DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606