# EXHIBIT 12

PREM14A 1 d882497dprem14a.htm PREM14A

**Table of Contents**

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

---

# SCHEDULE 14A

**PROXY STATEMENT PURSUANT TO SECTION 14(a) OF THE
SECURITIES EXCHANGE ACT OF 1934**

---

Filed by the Registrant ☒     Filed by a Party other than the Registrant ☐

Check the appropriate box:

☒     Preliminary Proxy Statement

☐     **Confidential, for Use of the Commission Only (as permitted by Rule 14a-6(e)(2))**

☐     Definitive Proxy Statement

☐     Definitive Additional Material

☐     Soliciting Material under §240.14a-12

# RTI SURGICAL HOLDINGS, INC.
**(Name of Registrant as Specified In Its Charter)**

**(Name of Person(s) Filing Proxy Statement, if other than the Registrant)**

Payment of Filing Fee (Check the appropriate box):

☐     No fee required.

☒     Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11.

(1)     Title of each class of securities to which transaction applies:

(2)     Aggregate number of securities to which transaction applies:

(3)     Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (Set forth the amount on which the filing fee is calculated and state how it was determined):

(4)     Proposed maximum aggregate value of transaction: $440,000,000.

The purchase price payable under the Purchase Agreement (as defined in the attached proxy statement) is $440,000,000, subject to a possible adjustment as set forth in Section 3.1 of the Purchase Agreement. It is not possible as of the time of this filing to determine the value of this possible adjustment, or whether this possible adjustment would be positive or negative in value. Solely for purposes of calculating the filing fee, the proposed maximum aggregate value of the transaction assumes that no such adjustment to the purchase price will be required.

Table of Contents

On April 18, 2019, representatives of UBS Financial Services Inc. ("UBS") delivered an assessment of strategic alternatives to the Board and members of management. Among the alternatives discussed was the separation of the two businesses and the potential sale of either of the Business or RTI's spine business (the "Spine Business").

On April 28, 2019, a representative of Montagu contacted Mr. Farhat, seeking an introductory meeting. On May 14, 2019, Mr. Farhat met with Antoine de Peguilhan, director of Montagu. During this meeting, Mr. Farhat discussed RTI and its strategy and the Montagu representatives discussed Montagu's investment strategy. A sale of the Business was not discussed.

On July 11, 2019, the Board had a special meeting with certain members of management and representatives of Holland & Knight LLP ("Holland & Knight"), corporate governance counsel to the Board, where RTI's efforts to move to segment reporting for the Spine Business and the Business were discussed.

On August 16, 2019, certain members of the Board and RTI's management team and representatives of each of McKinsey & Company ("McKinsey") and Piper Sandler met to evaluate the feasibility of separating the Business and Spine Business and the possibility of the sale of the Business. On August 23, 2019, the subject was discussed with the Transaction Committee.

On September 4, 2019, at a Board meeting with certain members of RTI's management team present, the Board participated in a discussion with certain representatives of McKinsey, Piper Sandler and Holland & Knight. The Board reviewed Piper Sandler's presentation regarding various strategic alternatives, including a potential sale of the Business. A representative of Piper Sandler outlined the rationale, the potential universe of buyers, the proposed timeline, and the potential valuation range of such a sale based on precedent transactions. The Board discussed the material provided, during which certain members of RTI's management team and Piper Sandler representatives answered questions posed by the directors regarding the potential transaction and other strategic alternatives.

Following this discussion with representatives of Piper Sandler, the Board continued discussions with McKinsey regarding the strategic and financial rationale for divesting the Business, including recent valuations of comparable transactions and the expected effects of such a transaction on the Spine Business. McKinsey also outlined transaction-related considerations for the Board, including transition services agreements between the Business and the Spine Business, ownership of various assets and intellectual property, research and development matters, the timing and announcement of the potential transaction, and other issues regarding the separation of the two businesses. The Board reviewed these considerations.

At the conclusion of the meeting, the Board authorized RTI's management team to pursue the potential sale of the Business.

On September 8, 2019, Mr. Farhat met with a representative of Montagu. During this meeting, Mr. Farhat and the representative from Montagu discussed a potential sale. After this meeting, Piper Sandler was selected as RTI's financial advisor in connection with a potential sale.

On October 10, 2019, the Transaction Committee held a meeting to discuss the status of the potential sale. The Transaction Committee discussed the guiding principles for the potential sale that resulted from the September Board meeting, which included: (i) the separation should be set up to optimize the Spine Business for growth and the Business for EBITDA growth; (ii) the process must be kept confidential; and (iii) RTI's focus should be on business continuity in evaluating its future business model. Representatives of Piper Sandler then gave a presentation to the Transaction Committee regarding their preliminary valuation of the Business and the timeline of the divestiture process, which included launching buyer outreach, hosting phase one meetings with select buyers, distributing the confidential information memorandum, establishing a deadline for indications of interest, assisting with the potential buyer's detailed diligence of the Business, assessing final bids, negotiating a

34