# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA LOWRY, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No: 1:20-CV-01939 |
| RTI SURGICAL HOLDINGS, INC., CAMILLE I. FARHAT, BRIAN K. HUTCHISON, JONATHON M. SINGER, ROBERT P. JORDHEIM, and JOHANNES W. LOUW, | ) ) ) ) ) ) ) | Honorable Matthew F. Kennelly |
| Defendants. | ) | |

## DEFENDANT JOHANNES W. LOUW'S
### REPLY IN SUPPORT OF HIS MOTION TO DISMISS
#### PLAINTIFF'S CONSOLIDATED AMENDED CLASS ACTION COMPLAINT



Russell Koonin
Adam L. Schwartz
1200 Four Seasons Tower
1441 Brickell Avenue
Miami Florida 33131
Phone: (305) 350-5100
Fax: (305) 372-2738

**Jayaram Law Inc.**

Vivek Jayaram
Elizabeth Austermuehle
125 S. Clark Street
Suite 1175
Chicago Illinois, 60603
Phone: (312) 212-8676
Fax: (312) 661-5910

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................................... 1

II.    PLAINTIFF FAILS TO SUFFICIENTLY ALLEGE THAT MR. LOUW MADE MATERIAL MISREPRESENTATIONS IN THE INTERIM CFO STATEMENTS ........................................ 2

III.   PLAINTIFF FAILS TO ALLEGE THAT MR. LOUW ACTED WITH SCIENTER. ..................... 6

    A.    Mr. Louw's resignation does not support an inference of scienter ............................... 7

    B.    Plaintiff's other generic "group pleading" scienter allegations fail to support an inference of scienter as to Mr. Louw ................................................................................ 8

IV.   CONCLUSION .................................................................................................................... 10

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

## TABLE OF AUTHORITIES

### CASES

*City of New Orleans Emp. Ret. Sys. v. PrivateBancorp, Inc.*, No. 10 C 6826, 2011 WL 5374095 (N.D. Ill. Nov. 3, 2011)................................................................................................................7

*Cornielsen v. Infinium Capital Mgmt., LLC,* 916 F.3d 589 (7th Cir. 2019).....................................7

*Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697 (N.D. Ill. 2005) .................................................... 6, 9

*Hessefort v. Super Micro Comp., Inc.,* No. 18-cv-00838-JST, 2020 WL 1551140 (N.D. Cal. Mar. 23, 2020) ...................................................................................................................... 10

*Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753 (7th Cir. 2007).................................................4, 10

*In re Akorn, Inc. Sec. Litig.*, 240 F. Supp. 3d 802 (N.D. Ill. 2017) ...................................................4, 10

*In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600 (S.D.N.Y. 2017) ...................................5

*In re Interpool, Inc., Sec. Litig.*, No. 04-321, 2005 WL 2000237 (D.N.J. Aug, 17, 2005) .............6

*In re Micro Strategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620 (E.D. Va. 2000) .....................................9

*In re Newell Rubbermaid, Inc. Sec. Litig.*, No. 99 C 6853, 2000 WL 1705279 (N.D. Ill. Nov. 14, 2000)......................................................................................................................3

*In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2006 WL 3747560 (E.D. La. Dec. 14, 2006)...................................................................................................................... 10

*Janus Capital Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135 (2011) ........................................1, 3, 4

*Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620 (7th Cir. 2006)............................................................2

*Pugh v. Tribune Co.*, 521 F.3d 686 (7th Cir. 2008) ....................................................................2

*Ross v. Career Educ. Corp.*, No. 12 C 276, 2012 WL 5363431 (N.D. Ill. Oct. 30, 2012).................8

*Rossy v. Merge Healthcare Inc.,* 169 F. Supp. 3d 774 (N.D. Ill. 2015) .............................................. 10

*Roth v. OfficeMax Inc.*, 527 F. Supp. 2d 791 (N.D. Ill. 2007)................................................................. 10

*SEC v. Kelly*, 663 F. Supp. 2d 276 (S.D.N.Y. 2009)........................................................................4

*Thorpe v. Walter Inv. Mgmt., Corp.*, 111 F. Supp. 3d 1336 (S.D. Fla. 2015)................................ 4, 7

*W. Palm Beach Firefigrs.' Pension Fund v. Conagra Brands, Inc.*, __ F. Supp. 3d__, 2020 WL 6118605 (N.D. Ill. Oct. 15, 2020).................................................................................................6

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

STATUTES

15 U.S.C. § 78u-4(b).................................................................................................................................3

RULES

Fed. R. Civ. P. 9(b) ...................................................................................................................................3

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

Plaintiff's Opposition only serves to clarify why her purported claims against Defendant Johannes Louw fail, and must be dismissed with prejudice:

1. Plaintiff hides in her Opposition—and thus concedes—from the fact that the only purported misstatements that can be attributed to Mr. Louw without impermissible group pleading were, if misstatements at all, minuscule, immaterial understatements of revenue and income;

2. The timing of Mr. Louw's understatement of revenue and earnings fall outside Plaintiff's theories of liability;

3. Plaintiff has not alleged that at the time Mr. Louw made his statements, he had knowledge of their falsity or was reckless in making them; and

4. Plaintiff's inability to identify material misstatements made by Mr. Louw or allege he acted with scienter cannot be overcome by "group pleading."

## I.    INTRODUCTION.

In her attempt to resuscitate her Amended Complaint ("**AC**"), Plaintiff's Opposition attempts to craft a new theory of liability. Plaintiff now says that following RTI's accurate reporting of "erratic revenue declines" to its OEM Segment in 2016, it then hatched a plan in 2017 to "stabilize" and grow OEM revenue by improper revenue recognition practices (i.e., the so-called "OEM revenue smoothing") from 2017 through the first three quarters of 2019. Opp. at 3-4. This theory is much different than what Plaintiff alleges in her AC, which is that RTI began improperly recognizing and reporting OEM revenue beginning in March 2016. AC ¶¶ 2-4. The new theory means that no liability could possibly attach to Mr. Louw as a matter of law because he can only be held liable for the two public statements RTI made when he briefly served as RTI's Interim CFO—i.e., RTI's Form 10-K for 2016 and the statements he individually made in a 2016 year-end earnings call held on February 23, 2017 (the **"Interim CFO Statements"**). *See Janus Capital Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 142-43 (2011). The Interim CFO Statements preceded the purported scheme

1

of revenue smoothing and false reporting that Plaintiff now suggests. Mr. Louw cannot be held accountable for any other statements. Plaintiff effectively concedes[1] this point in the Opposition. This fact of timing is fatal to Plaintiff's claims against Mr. Louw.

Plaintiff nevertheless will not let go of Mr. Louw and attempts to hold onto him by grouping him with his co-Defendants and blurring years of alleged misstatements[2] supposedly for "simplicity." Opp. at 11 n.5. But the law does not permit Plaintiff to allege securities fraud via "group pleading." *See Pugh v. Tribune Co.*, 521 F.3d 686, 693-94 (7th Cir. 2008). Plaintiff may be unwilling to let Mr. Louw go, but the law requires it, and the Court should ensure it by dismissing Plaintiff's claims against Mr. Louw with prejudice.

## II. PLAINTIFF FAILS TO SUFFICIENTLY ALLEGE THAT MR. LOUW MADE MATERIAL MISREPRESENTATIONS IN THE INTERIM CFO STATEMENTS.

The only statements that would in theory subject Mr. Louw to liability under Sections 10(b) and 20(a) liability are the Interim CFO Statements. *See* Louw Mot. at 4-5. RTI's 2020 Restatement—which serves as the sole basis for Plaintiff's claims—shows that RTI understated its revenue by $3,119,000 or 1.1% and understated earnings per share by $ .01 in its original 2016 Form 10-K. ECF No. 61-10 at 115 of 144.

---

[1] Plaintiff's complete failure to address Mr. Louw's argument that per *Janus,* as a matter of law, he can only be held liable for the Interim CFO Statements means the argument is conceded. *See Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 643 n.7 (7th Cir. 2006).

[2] *See, e.g.,* Opp. at 9 ("[F]rom the beginning of 2016 through the third quarter of 2019, Defendants portrayed the market that they had stabilized a volatile OEM Business"); 17 ("They restated dozens of metrics across five years, including fifteen quarterly periods."); 24-25 ("Viewed holistically, the Complaint's allegations indicate that Defendants acted, at a minimum, recklessly in making Class Period misstatements.... Defendants further admitted that those deficiencies spanned financial filings for more than five years*.*") (emphasis in original); 28 ("The magnitude of disclosures in the Restatement further confirms that Defendants acted recklessly.")

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

As this Court has held, it is proper for the court to determine on a motion to dismiss that a purported financial misstatement is not material due its small magnitude. *In re Newell Rubbermaid, Inc. Sec. Litig.*, No. 99 C 6853, 2000 WL 1705279, at *8 (N.D. Ill. Nov. 14, 2000) (holding 10% overstatement of income not material). Under this standard, the Interim CFO Statements are not material. RTI's 2016 1.1% <u>understatement</u> of total revenue is exactly the type of minute variance that would not be viewed by a reasonable investor to <u>significantly</u> alter the total mix of information available at that time. *See id.*

Plaintiff attempts to circumvent this reality by arguing that "Defendants misstated multiple financial metrics for years" (Opp. at 22) and that "Defendants did not report only revenue inaccurately," but instead "restated dozens of metrics" (Opp. at 17). Plaintiff, however, cannot pull-in "years" purported misstatements that Mr. Louw did not make. *See Janus*, 564 U.S. at 142-43. And Plaintiff does not specify the "dozens of metrics" Mr. Louw purportedly misstated as she must. Instead, Plaintiff alleges in boilerplate fashion, that in its 2016 Form 10-K financials, RTI <u>inappropriately recognized revenues</u> due to the purportedly improper OEM shipments. AC ¶ 134. Plaintiff's vague and boilerplate misrepresentation claims do not meet Rule 9(b) and the PSLRA's heightened pleading requirements. *See* Hutchison Mot. at 8.

Moreover, the Restatement's conclusion that RTI <u>understated</u> its 2016 revenue and income belies any of Plaintiff's allegations that RTI improperly recognized revenue in 2016. Perhaps this is why Plaintiff now contends that the OEM revenue misstatements occurred <u>after</u> 2016 and <u>after</u> Mr. Louw served as Interim CFO. Tellingly, in her chart on page 15 designed to show the "misleading metrics" RTI disclosed to the public, Plaintiff excludes 2016 altogether. The reason for this this intentional obfuscation is apparent: RTI's 2016

3

year-end financials (i.e., the Interim CFO Statements) do not fit in Plaintiff's narrative in her AC—that RTI overreported OEM revenue from 2014 through 2019. And if anything, Plaintiff's new theory exculpates Mr. Louw as he cannot be held responsible for those purportedly false financial statements from 2017 onward.

Likewise, Plaintiff's argument that the mere fact RTI issued the Restatement, which covers five years, is sufficient to establish materiality as to the Interim CFO Statements (Opp. at 21) also fails. Plaintiff cannot impute materiality on the Interim CFO Statements by pulling-in purported misrepresentations from other disclosures spanning multiple years that Mr. Louw did not make. *See Janus*, 564 U.S. at 142-43; *see also Thorpe v. Walter Inv. Mgmt., Corp.*, 111 F. Supp. 3d 1336, 1356 & 1360 (S.D. Fla. 2015) (dismissing Section 10(b) claims for "grouping defendants" with respect to the "maker" of the statements at issue and failing to make individualized scienter allegations for each defendant). When analyzing the Interim CFO Statements on their own, as the Court must for Mr. Louw, they are objectively immaterial. *Accord Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 759 (7th Cir. 2007) (noting the 5% rule-of-thumb test for materiality). Indeed, it would be highly unlikely for RTI to have issued a restatement solely for its 2016 year-end financials to report a penny increase in income per share.[3] The fact that RTI included its 2016 financials in its Restatement that spanned years does not make the Interim CFO Statements material.

---

[3] The cases upon which Plaintiff relies involve financial restatements of massive overstatements of income and revenue. *See, e.g., In re Akorn, Inc. Sec. Litig.*, 240 F. Supp. 3d 802, 815 (N.D. Ill. 2017) (involving an overstatement of year's net income by 194.7%); *SEC v. Kelly*, 663 F. Supp. 2d 276, 279 (S.D.N.Y. 2009) (involving the improper recognition of roughly $1 billion in revenue over a three-year period). The magnitude of those restatements pale in comparison with and demonstrate the relative immateriality of RTI's 2016 understatement of revenue by 1.1% and earnings per share by $.01.

4

The same holds true for Plaintiff's claim that Mr. Louw made a material misrepresentation when he signed RTI's 2016 Form 10-K certifying the effective internal controls over financial reporting ("**ICFR**") because in its Restatement, RTI (not Mr. Louw) states that its internal controls "were not effective as of December 31, 2018." Opp. at 16; AC ¶ 225. Plaintiff, however, fails to recognize that the certification Mr. Louw signed in 2016 included qualifying language that "[a]ll internal control systems, no matter how well designed have inherent limitations." ECF No. 61-4 at 62 of 105. The certification was not misleading because it did not purport to guarantee that all controls were performing perfectly in 2016. *See In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 649 (S.D.N.Y. 2017) (holding SOX certification language with qualification did not constitute materially false or misleading statement). Regardless, the immaterial <u>understatement</u> of revenue and income in the 2016 Form 10-K actually <u>supports</u> Mr. Louw's certification that RTI's internal controls were in-fact reasonably effective but not perfect. If there were any improper early shipments or there was revenue smoothing in 2016—it was immaterial. Mr. Louw's 2016 SOX certification was not materially false.

Last, Plaintiff tries to keep Mr. Louw in the case by arguing that Mr. Louw's statement in the 2016 year-end earnings call that RTI "saw stabilization in its [OEM]/other business during the year as the [OEM]/other business averaged $28 million over the last four quarters of 2016" was false because the revenue was actually "highly volatile" and it somehow suggested that OEM was stabilizing in 2017. Opp. at 3-4. Plaintiff pleads no facts to support this claim. Additionally, Mr. Louw's statement does not forecast the future performance of RTI's OEM business, but instead provides an accurate opinion that the Restatement supports—that is, OEM and other revenue declined from the prior year due

5

primarily from a large non-repeating 2015 OEM order. Plaintiff's chart that purports to show volatility (Opp. at 3) does nothing of the sort—it comports with Mr. Louw's statement that over 2016 there was a decline in OEM revenue from the preceding year. *See W. Palm Beach Firefigrs.' Pension Fund v. Conagra Brands, Inc.*, __ F. Supp. 3d__, 2020 WL 6118605, at *11 & *16-17 (N.D. Ill. Oct. 15, 2020) (holding accurate statements of past financial results and statements of opinion are unactionable) (citations omitted). Regardless, Mr. Louw's reference to "stabilization" is a nonactionable opinion or puffery. *See* Jordheim Mot. at 9.

### III. PLAINTIFF FAILS TO ALLEGE THAT MR. LOUW ACTED WITH SCIENTER.

In her Opposition, Plaintiff fails to cite a single case holding that a plaintiff sufficiently alleged scienter for a defendant who is alleged to have only underreported revenue by 1.1% and income by $.01 per share. This should come as no surprise as courts have almost unanimously held that allegations of an understatement of financials tends to negate any inference of scienter. *See, e.g., Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 709 (N.D. Ill. 2005); *In re Interpool, Inc., Sec. Litig.*, No. 04-321, 2005 WL 2000237, at *7 (D.N.J. Aug, 17, 2005). This is simple logic—if a CFO had an intention to mislead investors, he or she would overstate financial performance, not understate results. The Interim CFO Statements are incongruent with Plaintiff's theory alleged in her AC that Mr. Louw overstated RTI's performance due to the improper recognition of revenue stemming from unauthorized early shipments to its OEM clients. And there is not one confidential witness who provides first-hand information that Mr. Louw was aware of, or participated in, unauthorized early shipping to boost quarterly revenue recognition.

Instead of addressing Mr. Louw individually, Plaintiff groups Mr. Louw with his co-Defendants and pulls in years of purported misstatements for which Mr. Louw cannot be

6

held liable under the guise that the Court should take a "holistic" approach to determine whether the AC's allegations meet the PSLRA's strict pleading requirements for scienter. Opp. at 25. This Plaintiff cannot do. *See Cornielsen v. Infinium Capital Mgmt., LLC,* 916 F.3d 589, 601 (7th Cir. 2019) (holding that the PSLRA requires plaintiff to allege "with particularity facts giving rise to a strong inference that <u>the defendant</u> acted with the requisite state of mind") (emphasis in original); *Thorpe*, 111 F. Supp. 3d at 1360; *City of New Orleans Emp. Ret. Sys. v. PrivateBancorp, Inc.*, No. 10 C 6826, 2011 WL 5374095, at *8 (N.D. Ill. Nov. 3, 2011) (dismissing Section 10(b) claims because the complaint "lumps all of the officer and director defendants together for purposes of all the challenged statements" and makes general and vague allegations of scienter).

### A. Mr. Louw's resignation does not support an inference of scienter.

In fact, the only allegation specific to Mr. Louw even related to scienter in the AC is that on March 17, 2020 RTI announced that Mr. Louw would cease to be an employee as of April 8, 2020. AC ¶ 219. Plaintiff argues that an inference of scienter exists because Mr. Louw's departure was announced "just days after revealing the accounting scandal." Opp. at 37. This is simply not true.

As an initial matter, the announcement of Mr. Louw's future departure followed RTI's disclosure that its Audit Committee was conducting an internal investigation, not a "reveal" of a so-called "accounting scandal." In fact, RTI issued its Restatement on June 8, 2020, <u>months after</u> Mr. Louw's departure was announced.[4] ECF No. 61-6 at 3 of 5.

---

[4] It was also issued just one day after RTI announced that due to the COVID-19 pandemic, RTI would be taking employment actions to cut costs.

7

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

But more important is what Plaintiff <u>excludes</u> from her AC and Opposition: that in the same press release, RTI also announced that after stepping down as an employee, Mr. Louw would continue to work for the company as an independent contractor. ECF No. 61-7 at 5 of 7. This neutralizes any plausible inference of scienter. Indeed, even if Mr. Louw's departure as an employee was related to RTI's restated financials—the timing of the announcement, however, suggests otherwise—RTI would not have Mr. Louw continue to work for the Company as an independent contractor if it believed that Mr. Louw <u>intended</u> to misrepresent or was reckless in his dissemination of the Company's finances. *See* Louw Mot. at 14-15.

The cases cited by Plaintiff (Opp. at 37) provide that a resignation or termination in conjunction with a restatement (which is not even the case here) <u>alone</u> do not support an inference of scienter. Plaintiff makes no additional allegations as to Mr. Louw's departure as an employee. This stands in stark contrast to the facts in *Ross v. Career Educ. Corp.*, No. 12 C 276, 2012 WL 5363431, at * 10 (N.D. Ill. Oct. 30, 2012) (Kennelly, J.) where plaintiffs not only alleged specific facts about the defendant's knowledge of improper practices, but his resignation (along with three other senior executives) occurred <u>the day before</u> the company's improprieties were publicly disclosed. Plaintiff makes no such allegations here.

### B. Plaintiff's other generic "group pleading" scienter allegations fail to support an inference of scienter as to Mr. Louw.

Plaintiff's remaining allegations she claims support scienter—i.e., the "magnitude of reporting errors" as reported in the Restatement over a five-year period, the signed SOX certifications, the former employee allegations, and the core operations theory—similarly fail with respect to Mr. Louw for two reasons.

8

First, Plaintiff makes a shotgun style argument when she lumps in Mr. Louw with his co-Defendants and pulls in years of purported misrepresentations to claim that the "sheer number of inaccurate financial reports filed by RTI is a robust indicator that Defendants acted (at a minimum) recklessly in preparing and publishing those reports." Opp. at 27-28. This form of argument fares no better than a shotgun pleading would. Plaintiff cannot as a matter of law hold Mr. Louw responsible for the "years" of purported misrepresentations.

Further, even setting aside Plaintiff's new timeframe theory, and assuming that Mr. Louw's purported misrepresentations fell within the scope of Plaintiff's original theory of liability, Mr. Louw's liability could only arise from the two Interim CFO Statements. Those statements err, if at all, in the wrong direction for Plaintiff and are not of the "magnitude" that would support any finding of scienter. *See Davis,* 385 F. Supp. 2d at 713 (noting that a restatement does not create an inference of wrongdoing, "except in cases of gross financial misstatements"); *In re Micro Strategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 635 (E.D. Va. 2000) (noting that the number, size, timing, nature, frequency, and context of a restatement may tilt "in favor of a nonculpable state of mind") (cited by Plaintiff, Opp. at 18).

Plaintiff's AC lacks a single specific allegation that would support the claim that Mr. Louw knowingly violated GAAP or the Company's policies when he signed off and reported RTI's 2016 financials or was reckless in doing so. If anything, the Restatement's increase of revenue and income in 2016 demonstrates a lack of scienter, and validates his certification as to RTI's ICFR for 2016. *See, e.g., Hessefort v. Super Micro Comp., Inc.,* No. 18-cv-00838-JST, 2020 WL 1551140, at *9 (N.D. Cal. Mar. 23, 2020) (holding that 6.8% inflation of bottom line insufficient to overcome inference that overstatement was innocent error); *Rossy v. Merge Healthcare Inc.,* 169 F. Supp. 3d 774, 785 (N.D. Ill. 2015) (dismissing complaint

9

because it did not identify any red flags or provide any allegation to support inference defendant was aware of the alleged errors at the time they were made).

The fact that RTI's auditor provided an unqualified opinion in 2016 further undermines Plaintiff's scienter allegations. Plaintiff's contention that a clean audit report does not alone insulate the Defendants (Opp. at 30) misses the mark. The 2016 unqualified audit opinion in conjunction with the Restatement and other factors show that Mr. Louw acted in good faith in relation to the Interim CFO Statements.

Second, Plaintiff's generic scienter allegations constitute impermissible fraud by hindsight. *See Higginbotham,* 495 F.3d at 759-60. Plaintiff makes no particularized factual allegation that Mr. Louw knew or should have known when making the Interim CFO Statements and signing the SOX certification in RTI's 2016 Form 10-K, that the financials included material misrepresentations. *See Roth v. OfficeMax Inc.*, 527 F. Supp. 2d 791, 804 (N.D. Ill. 2007) (holding CFO signature on SOX certification alone did not suffice to allege scienter).[5] Here, Plaintiff makes no specific allegation with respect to Mr. Louw.

## IV.     CONCLUSION.

Under her new theory or the old, Plaintiff has no cognizable claim against Mr. Louw. For the foregoing reasons, Plaintiff's AC must be dismissed with prejudice as to Mr. Louw.

---

[5] In sharp contrast to Plaintiff's allegations with respect to Mr. Louw, in the cases upon which Plaintiff relies, there were ample allegations to demonstrate the defendants knew the SOX certifications were false at the time they were signed. *See, e.g.*, *In re Akorn, Inc. Sec. Litig.*, 240 F. Supp. 3d at 819 (finding defendants' execution of SOX certifications constituted evidence of scienter because prior to executing the certifications, three independent auditing firms concluded Akorn's ICFR were ineffective); *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2006 WL 3747560, at *19 (E.D. La. Dec. 14, 2006) (noting specific allegations that would put defendants on notice of company's ICFR problems at the time they certified them).

HOMER BONNER JACOBS Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

Respectfully submitted:



Attorneys for Defendant Johannes W. Louw
1200 Four Seasons Tower
1441 Brickell Avenue
Miami Florida 33131
Phone: (305) 350-5100
Fax: (305) 372-2738

By:  /s/ *Russell Koonin*

Russell Koonin, Esq. (admitted *pro hac vice*)
Email: rkoonin@homerbonner.com
Adam Schwartz, Esq. (admitted *pro hac vice*)
Email: aschwartz@homerbonner.com

-and-

**Jayaram Law, Inc.**
125 S. Clark Street
Suite 1175
Chicago Illinois 60603
Phone: 312-212-8676
Fax: 312-661-5910

Vivek Jayaram, Esq.
IL Bar No. 6284388
vivek@jayaramlaw.com
Elizabeth Austermuehle, Esq.
IL Bar No. 6302326
liz@jayaramlaw.com

11

## CERTIFICATE OF SERVICE

I certify that on January 4, 2020, I filed the foregoing Reply in Support of Defendant Johannes W. Louw's Motion to Dismiss Plaintiff's Consolidated Amended Complaint using the ECF system for the Northern District of Illinois. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record registered on the ECF system.

By:     /s/ *Russell Koonin*
Russell Koonin, Esq. (admitted *pro hac vice*)

12