**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| PATRICIA LOWRY, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:20-cv-1939 |
| v. | Honorable Matthew F. Kennelly |
| RTI SURGICAL HOLDINGS, INC., CAMILLE I. FARHAT, BRIAN K. HUTCHISON, JONATHON M. SINGER, ROBERT P. JORDHEIM, and JOHANNES W. LOUW, | |
| Defendants. | |

**DEFENDANT BRIAN K. HUTCHISON'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF HIS MOTION TO DISMISS THE CONSOLIDATED
AMENDED CLASS ACTION COMPLAINT**

James K. Goldfarb (*pro hac vice*)
Stephen J. Crimmins
MURPHY & McGONIGLE, P.C.
1185 Avenue of the Americas, 21st Floor
New York, New York 10036
(212) 880-3999

Alan M. Wolper
ULMER & BERNE, LLP
500 West Madison Street, Suite 3600
Chicago, Illinois 60661-4587
(312) 658-6500

*Attorneys for Defendant Brian K. Hutchison*

**Table of Contents**

Introduction.................................................................................................................... 1

Argument ....................................................................................................................... 2

I.    THE OPPOSITION BRIEF DOES NOT SOLVE FOR THE COMPLAINT'S FAILURE
      TO PLEAD FACTS RAISING ANY – LET ALONE THE REQUIRED STRONG –
      INFERENCE THAT MR. HUTCHISON INTENDED TO DECEIVE ............................... 2

      A. No Allegation of Fact Shows that Mr. Hutchison Was Aware of or Ignored a Risk that RTI
         Was Improperly Recognizing Revenue or Had Ineffective Internal Controls ........................ 3

      B. The Alleged Circumstantial Evidence Raises No Inference that Mr. Hutchison Knew or
         Should Have Known about the Alleged Fraud........................................................................ 5

            1.    The "Magnitude" Argument...................................................................................... 5

            2.    Confidential Witnesses............................................................................................. 6

            3.    The Core Operations Doctrine ................................................................................. 7

            4.    Sarbanes-Oxley Certifications................................................................................. 9

II.   THE OPPOSITION BRIEF DOES NOT SOLVE FOR THE COMPLAINT'S FAILURE
      TO PLEAD MISREPRESENTATIONS OR OMISSIONS ................................................. 10

      A. The Misrepresentation Claims Fail as a Matter of Law ......................................................... 10

      B. The Omission Claims Fail as a Matter of Law........................................................................ 12

III.  THE OPPOSITION BRIEF DOES NOT SOLVE FOR THE COMPLAINT'S FAILURE
      TO PLEAD CONTROL PERSON LIABILITY ................................................................. 12

Conclusion ...................................................................................................................... 13

**Table of Authorities**

**Cases**

*Crowell v. Ionics, Inc.*,
  343 F. Supp. 2d 1 (D. Mass. 2004) ....................................................................... 5

*Davis v. SPSS, Inc.*,
  385 F. Supp. 2d 697 (N.D. Ill. 2005) ............................................................... 6, 10

*Garden City Employees' Ret. Sys. v. Anixter Int'l, Inc.*,
  No. 09-cv-5641, 2012 WL 1068761 (N.D. Ill. Mar. 29, 2012) ................................ 12

*Garfield v. NDC Health Corp.*,
  466 F.3d 1255 (11th Cir. 2006) ............................................................................. 9

*Gelfer v. Pegasystems, Inc.*,
  96 F. Supp. 2d 10 (D. Mass. 2000) ....................................................................... 5

*Higginbotham v. Baxter Int'l, Inc.*,
  495 F.3d 753 (7th Cir. 2007) ................................................................................ 4

*Higginbotham v. Baxter Int'l, Inc.*,
  No. 04 C 4909, 2005 WL 1272271 (N.D. Ill. May 25, 2005) .................................... 4

*In re Akorn, Inc. Sec. Litig.*,
  240 F. Supp. 3d 802 (N.D. Ill. 2017) ............................................................... 4, 6, 9

*In re Allied Products Corp., Inc. Sec. Litig.*,
  No. 99 C 3957, 2000 WL 1721042 (N.D. Ill. Nov. 15, 2000) .................................... 5

*In re ArthoCare Corp., Sec. Litig.*,
  726 F. Supp. 2d 696 (W.D. Tex. 2010) .................................................................. 4

*In re Career Educ. Corp. Sec. Litig.*,
  No. 03 C 8884, 2007 WL 1029092 (N.D. Ill. Mar. 29, 2007),
  *vacated upon settlement*, 2008 WL 8666579 (N.D. Ill. Jun. 26, 2008) ................... 3

*In re OCA, Inc. Sec. & Deriv. Litig.*,
  No. 05-cv-2165, 2006 WL 3747560 (E.D La. Dec. 14, 2006) ................................... 9

*In re Sears, Roebuck & Co. Sec. Litig.*,
  291 F. Supp. 2d 722 (N.D. Ill. 2003) ..................................................................... 7

*In re The Hain Celestial Grp. Inc. Sec. Litig.*,
  No. 16-cv-4581, 2020 WL 1676762 (E.D.N.Y. Apr. 6, 2020) ................................. 12

*In re UTStarcom, Inc. Sec. Litig.*,
  617 F. Supp. 2d  964 (N.D. Cal. 2009) ................................................................... 5

*In re Vecco Instruments, Inc. Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ................................................................................... 4

*Janus Capital Group, Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011) .................................................................................................... 11

*Jones v. Corus Bankshares, Inc.*,
    701 F. Supp. 2d 1014 (N.D. Ill. 2010) ........................................................................ 7

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
    513 F.3d 702 (7th Cir. 2008) ....................................................................................... 3

*Omnicare, Inc. v. Laborers Dist. Council Indus. Pension Fund*,
    575 U.S. 175 (2015) .................................................................................................... 12

*Rehm v. Eagle Fin. Corp.*,
    954 F. Supp. 1246 (N.D. Ill. 1997) .......................................................................... 5, 8

*Roth v. OfficeMax, Inc.*,
    527 F. Supp. 2d 791 (N.D. Ill. 2007) ....................................................................... 4, 9

*S.E.C. v. Fisher*,
    No. 07 C 4483, 2012 WL 3757375 (N.D. Ill. Aug. 28, 2012) ..................................... 4

*Schleicher v. Wendt*,
    529 F. Supp. 2d 959 (S.D. Ind. 2007) ......................................................................... 7

**Statutes**

15 U.S.C. § 78u-4(b)(2)(A) ................................................................................................ 3, 8

15 U.S.C. §78t ...................................................................................................................... 13

17 C.F.R. 240.10b-5 ...................................................................................................... passim

**Introduction**

Mr. Hutchison demonstrated in his moving brief that he did not engage in an unlawful revenue smoothing scheme in violation of Rule 10b-5. *See* Mem. at 5-6.[1] In fact, instead of making, then claiming to meet, rosy forecasts about OEM revenues – as an executive perpetrating such a scheme would do – Mr. Hutchison delivered a sober message about OEM's projected revenues in early 2016, then lowered those projections in three successive quarters as more information became available about inventory issues. *See id.* at 6.

Confronted with that fact, the plaintiff abandons her scheme liability claims and advances an entirely new theory – one that concedes the case against Mr. Hutchison. According to this new theory, the "Defendants" began misleading investors about OEM in 2017 (Opp'n at 3-6), more than two months **after** Mr. Hutchison retired from RTI. Far from claiming that RTI and Mr. Hutchison misled the market about OEM in 2016, the new theory posits the opposite: the alleged misrepresentations in 2017, 2018, and 2019 were made to "allay investors' concerns" about "previous declines with the OEM business" and "volatility of customer orders," concerns that arose from Mr. Hutchison and RTI's disclosures in 2016 about OEM's "erratic revenue declines" and "highly volatile" performance. *Id.* at 3-5. The plaintiff does not and cannot explain how Mr. Hutchison could have intended to deceive investors while simultaneously speaking so soberly that he raised "investors' concerns." At war with the complaint, the opposition brief does not salvage the claims against Mr. Hutchison.[2]

---

[1] Unless stated otherwise, terms used here, including "Motion," "complaint," and "Ex.," have the meaning ascribed to them in the Memorandum of Law in Support of Defendant Brian K. Hutchison's Motion to Dismiss the Consolidated Amended Class Action Complaint, ECF Doc. No. 67 ("moving brief" or "Mem."); all emphasis is added; and all internal citations and quotation marks are omitted. "Opposition brief" and "Opp'n" refer to the Omnibus Opposition to Motions to Dismiss, ECF Doc. No. 69.

[2] Perhaps realizing that the new theory cannot be reconciled with her claims against Mr. Hutchison, the plaintiff fudges when she summarizes it: "Accordingly, **from the beginning of 2016**

**Argument**

I. **THE OPPOSITION BRIEF DOES NOT SOLVE FOR THE COMPLAINT'S FAILURE TO PLEAD FACTS RAISING ANY – LET ALONE THE REQUIRED STRONG – INFERENCE THAT MR. HUTCHISON INTENDED TO DECEIVE**

Mr. Hutchison demonstrated in his moving brief that the complaint raises no inference of deceptive intent, an element of a Rule 10b-5 claim. *See* Mem. at 9-13. The plaintiff does not engage with Mr. Hutchison's points. She does not deny that the complaint contains no non-conclusory allegation of fact showing that Mr. Hutchison knew or should have known about RTI's alleged revenue smoothing or supposedly ineffective internal controls. *See id.* at 10. She does not deny that no confidential witness mentions Mr. Hutchison, let alone connects him to the alleged fraud. *See id.* at 10-11. She does not deny that Mr. Hutchison's 2016 disclosures about OEM's anticipated negative performance raise a cogent, compelling inference that Mr. Hutchison lacked deceptive intent. *See id.* at 13-14.

Unable to allege direct evidence that Mr. Hutchison intended to deceive, the plaintiff falls back on "circumstantial evidence" supposedly showing that the "Defendants" – not Mr. Hutchison specifically – acted "recklessly." Opp'n at 24. But Mr. Hutchison was not reckless as a matter of law, as the plaintiff's own cases make clear; and none of the circumstantial evidence raises any inference that Mr. Hutchison should have known about the alleged fraud, as Mr. Hutchison demonstrated in his moving brief. *See* Mem. at 11-13.

---

through the third quarter of 2019, Defendants portrayed to the market that they had stabilized a volatile OEM Business …." Opp'n at 6. But the notion that Mr. Hutchison portrayed OEM as stable in 2016 is belied not only by the disclosures the plaintiff herself relies on (*see* Mem. at 2-3, Exs. E-J), but also by the plaintiff's narrative throughout her brief. *See* Opp'n at 3 (stating that OEM "was struggling with erratic revenue declines **in 2016**," and "was highly volatile" "**[i]n 2016**," then citing for support the quarterly revenue losses that Mr. Hutchison disclosed in 2016); 9 ("RTI portrayed **2017** as a turning point for stabilization and growth"); 15 & 28 (citing, in support of the assertion that the defendants "consistently" or "repeatedly touted" "signs" that OEM was stabilizing, six paragraphs from the complaint addressing RTI's periodic disclosures **after** Mr. Hutchison retired).

2

The plaintiff has just one response: collectively, the circumstantial evidence adds up to a sufficient showing of scienter. *See* Opp'n at 25. But her math is bad: since none of the circumstantial evidence raises any inference that Mr. Hutchison acted recklessly, the whole cannot be greater than the sum of its part. *See In re Career Educ. Corp. Sec. Litig.*, No. 03 C 8884, 2007 WL 1029092, at *10 (N.D. Ill. Mar. 29, 2007) ("Plaintiffs again ask the court to consider the totality of their complaint, but … aggregating all of plaintiffs' insufficient allegations does not add up to more than their sum."), *vacated on settlement*, 2008 WL 8666579, at *8 (N.D. Ill. Jun. 26, 2008); *accord* 2007 WL 1029092, at *3 ("the court cannot draw any inferences from allegations that are not themselves well pleaded; zero plus zero is zero").

### A. No Allegation of Fact Shows that Mr. Hutchison Was Aware of or Ignored a Risk that RTI Was Improperly Recognizing Revenue or Had Ineffective Internal Controls

To plead that a defendant acted recklessly, a plaintiff must allege facts showing that the defendant at least disregarded a substantial risk of fraud. *See* Opp'n at 23, quoting *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 704-705 (7th Cir. 2008). To disregard a risk, a defendant must be aware of, or willfully blind to, it. *See id.* at 24, quoting *Tellabs*, 513 F.3d at 704. Here, the complaint alleges no fact showing that Mr. Hutchison – as opposed to "Defendants" [3] – knew, or willfully ignored a substantial risk, that RTI improperly recognized revenue from early shipping or had ineffective internal controls. Absent those allegations, the Rule 10b-5 claims against Mr. Hutchison fail as a matter of law. *See Roth v.*

---

[3] Trying to mask the absence of allegations particular to Mr. Hutchison, the opposition brief lumps him in with "Defendants." But the PSLRA proscribes group-pleading scienter, as Mr. Hutchison demonstrated in his moving brief. *See* Mem. at 10. Lacking a colorable response, the plaintiff claims that she uses "Defendants" for "simplicity" because the motions to dismiss are "largely overlapping" and "some motions incorporate[e] others." Opp'n at 11 n.5. But federal law requires a plaintiff to state with particularity the facts giving rise to a strong inference that **each** defendant acted with scienter (*see* Mem. at 10, citing 15 U.S.C. § 78u-4(b)(2)(A)), and the plaintiff cites no authority excusing her from complying with the law.

3

*OfficeMax, Inc.*, 527 F. Supp. 2d 791, 804 (N.D. Ill. 2007) (allegations that a defendant ignored red flags were "unavailing without allegations that [he] was aware of those red flags and thereby recklessly disregarded the risk of accounting fraud").[4]

The cases the plaintiff relies on do not support a different result. The plaintiffs in those cases alleged that the defendants directed the fraud, were aware of it, or were willfully blind to it. In contrast, Mr. Hutchison is not alleged to have instructed subordinates to improperly recognize revenue, as the *Vecco* defendants allegedly did, and no confidential witness claims that Mr. Hutchison "had actual knowledge of [the company's] alleged accounting improprieties." *In re Vecco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 231-32 (S.D.N.Y. 2006) (Opp'n at 27). Nor is Mr. Hutchison alleged to have learned about the company's ineffective internal controls from the independent auditors, as the *Akorn* defendants allegedly did, or to have fired the auditor or failed to remediate the control deficiencies while telling the market that "financial results were accurate and prepared in accordance with GAAP." *In re Akorn, Inc. Sec. Litig.*, 240 F. Supp. 3d 802, 819 (N.D. Ill. 2017) (Opp'n at 27). The other cases the plaintiff relies on are similarly distinguishable.[5]

---

[4] *Accord Higginbotham v. Baxter Int'l, Inc.*, No. 04 C 4909, 2005 WL 1272271, at *5 (N.D. Ill. May 25, 2005) (allegations contrasting statements that internal controls were effective with the company's restatement acknowledging that controls were weak did "not provide a basis for drawing a strong inference that [the defendants] made intentional or reckless misrepresentations" because the complaint "provide[d] no specific allegations as to what the deficiencies in the controls were, nor are there any specific allegations as to [the defendants'] awareness of those deficiencies"), *aff'd*, 495 F.3d 753, 759-60 (7th Cir. 2007). The cases the plaintiff relies on say the same. *See, e.g.*, *Stocke v. Shuffle Master, Inc.*, 615 F. Supp. 2d 1180, 1188 (D. Nev. 2009) ("The Complaint fails to allege contemporaneous facts in sufficient detail to create a strong inference that the alleged adverse facts were known to the Defendants at the time of the challenged statements. … Plaintiffs do not provide any specific facts, documents, reports, or sources to show that Defendants had information contrary to what was projected in their press release statements.").

[5] *See S.E.C. v. Fisher*, No. 07 C 4483, 2012 WL 3757375, at *12 (N.D. Ill. Aug. 28, 2012) (the defendant "was either directly responsible for critical decisions [involving the alleged fraud] or at least present and engaged in critical decision-making moments"); *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 717-18 (W.D. Tex. 2010) (the CEO "made several specific denials and misrepresentations" about "media reports [that] detailed with striking specificity some of the major improprieties at

The plaintiff also argues that "Defendants" must have known their disclosures were false because RTI "adopted a new accounting standard and conducted a comprehensive strategic review of the Company's business, all of which required an in-depth, retrospective examination of their contracts." Opp'n at 29, citing Ex. A [Compl.] ¶¶ 244, 254. But RTI adopted the new accounting standard on January 1, 2018 (*see* Ex. C [2018 10-K/A] at 65), more than a year after Mr. Hutchison retired. And the complaint contains no fact connecting the "retrospective examination" of contracts to Mr. Hutchison, let alone showing that the examination revealed any misconduct or a risk that RTI's 2016 disclosures were false when made. The plaintiff's unpled chain of assertions cannot bridge the gap between what is alleged and an inference of that Mr. Hutchison acted recklessly. *See* Mem. at 12.

**B.      The Alleged Circumstantial Evidence Raises No Inference that Mr. Hutchison Knew or Should Have Known about the Alleged Fraud**

**1.      The "Magnitude" Argument**

The plaintiff argues that a magnitude of reporting errors, GAAP violations, and internal policy departures supports an inference of scienter. *See* Opp'n at 25-30. But a magnitude of errors, standing alone, does not suffice, a point the plaintiff's own cases confirm. *See, e.g.*, *In re Allied Products Corp., Inc. Sec. Litig.*, No. 99 C 3957, 2000 WL 1721042, at *5

---

ArthroCare, and [that] were based on publically [sic] available information which would have been readily available to" him); *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 975 (N.D. Cal. 2009) (the defendants "were made aware … of significant internal control problems relating to revenue recognition," but "did not implement the proper control measures and continued to report and certify false revenue data"); *Stocke*, 615 F. Supp. 2d at 1190-91 (the defendants pledged to, but did not, remediate deficient internal controls); *Crowell v. Ionics, Inc.*, 343 F. Supp. 2d 1, 17 (D. Mass. 2004) (the CEO "ordered the accounting manipulations"); *In re Allied Products Corp., Inc. Sec. Litig.*, No. 99 C 3957, 2000 WL 1721042, at *5 (N.D. Ill. Nov. 15, 2000) (the defendants reallocated revised cost estimates to a later period though "the reallocation method ha[d] been expressly prohibited in the … accounting literature since 1981"); *Gelfer v. Pegasystems, Inc.*, 96 F. Supp. 2d 10, 15-16 (D. Mass. 2000) (the defendants gave false assurances that they resolved accounting issues that were the subject of prior litigation, a dispute with a previous independent auditor, and management letters from the new independent auditor); *Rehm v. Eagle Fin. Corp.*, 954 F. Supp. 1246, 1256 (N.D. Ill. 1997) (similar).

5

(N.D. Ill. Nov. 15, 2000) ("a company's overstatement of earnings, revenues, or assets in violation of GAAP does not itself establish scienter"). Here, the complaint's other scienter allegations have no merit. *See* Point I.B.2-4, below. And even if they did, the "magnitude" allegations do not. The number and extent of RTI's reporting errors and GAAP violations are unremarkable, particularly when compared to the massive restatements in the cases the plaintiff cites (*see* RTI Reply Br. at 3-4 & n.4), and particularly for the period relevant to Mr. Hutchison. When restated, RTI's 2015 and 2016 year-end revenue **increased** by 0.3 and 1.14 percent. *See* Mem. at 9 & n.7. The plaintiff cites no case holding that an **upward** restatement raises an inference of recklessness. Nor could she. Understating revenue is the opposite of what a deceptive executive would do to hide underperformance. *See id.* at 14, citing *Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 709 (N.D. Ill. 2005).[6] Accordingly, RTI's alleged reporting errors and GAAP violations raise no inference that Mr. Hutchison acted recklessly. In fact, RTI's restatement shows that Mr. Hutchison lacked scienter.[7]

### 2. Confidential Witnesses

The opposition brief spills a lot of ink trying to rehabilitate the complaint's confidential witnesses (*see* Opp'n at 29, 30-34), but not a drop relates to Mr. Hutchison.

---

[6] Responding to a different point made by a different defendant, the plaintiff argues that *Davis* "simply holds that a restatement's value to the scienter inquiry depends on whether it sheds light on 'the intent behind the misstatements.'" Opp'n at 26 n.8, quoting 385 F. Supp. 2d at 713. Exactly, and RTI's restatement sheds no light on Mr. Hutchison's state of mind three years earlier. The plaintiff also argues that the restatement "indicat[es] Defendants' recklessness" because it "rendered **five years** of publicly-filed financial statements presumptively unreliable." *Id.* (emphasis plaintiff's). But scienter may not be group pled (*see* Mem. 10-11), a point the plaintiff does not dispute; so the restatement's span sheds no light on Mr. Hutchison's state of mind in 2016.

[7] The plaintiff also argues that "using inaccurate financials to achieve consensus estimates" supports an inference of scienter. Opp'n at 27, citing *Stocke*, 615 F. Supp. 2d at 1191, *Akorn Inc.*, 240 F. Supp. 3d at 820. But the complaint does not allege that analysts set consensus estimates in 2016, or that RTI met them by fraud. To the contrary, RTI and Mr. Hutchison began 2016 by lowering market expectations for OEM revenues, then lowered OEM revenue projections in three successive quarters (*see* Mem. at 2-3, Exs. D-L) – the opposite of the scienter-supporting conduct in *Stocke* and *Akorn*.

Confidential witness statements that do not mention a particular defendant raise no inference that the defendant acted recklessly. The plaintiff cites no case holding otherwise.[8]

### 3. The Core Operations Doctrine

Mr. Hutchison demonstrated in his moving brief that the core operations doctrine does not apply and, therefore, raises no inference that Mr. Hutchison acted recklessly. As the plaintiff's own allegations show, OEM did not constitute "nearly all" of RTI's business, and was not "essential" to RTI's survival, in 2015 and 2016. *See* Mem. at 11. The plaintiff cannot and does not dispute that. Instead, she argues that executives should be presumed to "be aware of the major facts affecting the company's primary segments" and any "important transactions" when no "segment" "individually accounts for more than 50% of revenue." Opp'n at 35. But the plaintiff cites no precedent to support her argument,[9] and the Court should decline to create any because well-established rules for pleading scienter caution against such a sweeping expansion of the core operations doctrine.

---

[8] The only reference to Mr. Hutchison in the confidential witness allegations is the claim that FE3 "worked at RTI for fifteen years and reported to Defendant Hutchison during that time." (Ex. A ¶ 75). The complaint does not allege when FE3 reported to Mr. Hutchison or the scope of his duties and reporting, and FE3 does not mention Mr. Hutchison, let alone so much as suggest that Mr. Hutchison knew about allegedly unlawful early shipping or revenue recognition.

[9] The cases the plaintiff cites support Mr. Hutchison's position, not hers, because unlike OEM, the relevant operations in those cases were greater than 50 percent of the companies' business or essential to their survival. *See Jones v. Corus Bankshares, Inc.*, 701 F. Supp. 2d 1014, 1020 (N.D. Ill. 2010) (the market impacting 85 percent of the company's loans was deteriorating, and 90 percent of the company's loans outstanding were set to mature or reprice into an unstable market); *In re Sears, Roebuck & Co. Sec. Litig.*, 291 F. Supp. 2d 722, 724 (N.D. Ill. 2003) (the credit card business accounted for 58 percent of the company's operating income, and the company pinned its turnaround plan on the credit card business); *Schleicher v. Wendt*, 529 F. Supp. 2d 959, 975 (S.D. Ind. 2007) (the defendants inflated cash flows that they told the market were "critical to [the company's] survival" – the plaintiff conveniently omits the quoted phrase from her parenthetical (*see* Opp'n at 35)). To be sure, a business-line that is less than 50 percent of a company's revenue may be critical to the company's survival, thereby supporting the core operations doctrine's application. But the plaintiff points to nothing in or outside the complaint that indicates that OEM was essential to RTI's survival in 2015 or 2016.

Courts uniformly reject motive as a basis for scienter when the alleged motive is common to all executives, such as a desire to increase share price. Courts reason that to allow common motives "to support the scienter requirement would subject companies to securities fraud lawsuits whenever their public statements of corporate earnings were subject to downward revision." *Rehm v. Eagle Fin. Corp.*, 954 F. Supp. 1246, 1253-54 (N.D. Ill. 1997) (Opp'n at 26). That reasoning guts the plaintiff's argument: like the common desire to increase share price, every company has "significant" business-lines and "important transactions," so the core operations doctrine would apply in every securities fraud lawsuit. In fact, the reasoning applies with greater force when a plaintiff relies on circumstantial evidence, as this plaintiff does, because circumstantial evidence is a less direct way of pleading scienter; when motive allegations are lacking, the "strength of the circumstantial allegations must be correspondingly greater." *Id.* at 1255. The plaintiff would turn that rule on its head and give more leeway to a less direct way of pleading scienter. Yet she does not and cannot square that approach with the PSLRA's heightened pleading standard for scienter or 25 years of precedent interpreting and applying that standard.

The plaintiff also suggests that the core operations doctrine applies to any business-line that is "a regular and important focus of discussion … during earnings calls and in press releases." Opp'n at 34. But that suggestion is even more breathtaking because the standard appears to approximate the materiality standard for public disclosures; so scienter would be assumed for any topic a company addresses publicly. That Mr. Hutchison discussed OEM on earnings calls, however, does not mean he knew or should have known about any alleged misconduct concerning OEM, particularly absent any red flags. The plaintiff points to no

8

case holding otherwise, and no red flags.[10]  The core operations doctrine has no application here and raises no inference that Mr. Hutchison acted recklessly.

### 4.      Sarbanes-Oxley Certifications

The plaintiff argues that Sarbanes-Oxley certifications may support an inference of scienter.  *See id.* at 35.  But that is so, if at all, only when a defendant "had reason to know, or should have suspected, due to the presence of glaring accounting irregularities or other 'red flags,' that the financial statements contained material misstatements or omissions."  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006); *accord Roth v. OfficeMax, Inc.*, 527 F. Supp. 2d 791, 804 (N.D. Ill. 2007).  The complaint contains no such allegations as to Mr. Hutchison and, therefore, does not support using his Sarbanes-Oxley certifications to infer that he acted recklessly.[11]

\*                    \*                    \*                    \*

The cases cited in the opposition brief highlight the complaint's fatal flaw.  In those cases, red flags alerted the defendants to the fraud or the risk of fraud, and confidential witnesses confirmed that the defendants committed fraud or turned a blind eye to it.  The

---

[10] The argument that the "Individual Defendants" must have known about the fraud because they "repeatedly spoke about the timing of customer orders" (Opp'n at 35) fails for the same reason.  The plaintiff also argues that RTI "repeatedly" attributed OEM's "volatile decline" to the "timing of orders." Opp'n at 3, citing 3Q16 10-Q.  But nothing in the complaint or the opposition brief shows that the "timing of orders" did not, in fact, cause uneven revenue.

[11] In quoting the rule from *Stocke*, the plaintiff conveniently omits *Stocke's* citation to *Garfield*, and the excerpt from *Garfield*, quoted above and in *Stocke*, that shows that the rule has no application here.  *See* Opp'n at 35-36.  The other cases the plaintiff cites are distinguishable because, as in *Stocke* (*see* n.5, above), the defendants in those cases allegedly knew about or ignored the risk of fraud.  *See In re OCA, Inc. Sec. & Deriv. Litig.*, No. 05-cv-2165, 2006 WL 3747560, at \*22 (E.D. La. Dec. 14, 2006) (the company fired the independent auditor that called attention to material control weaknesses; the next independent auditor resigned "after it was unable to investigate potential illegalities because [the company] failed to take appropriate remedial actions in response to serious accounting irregularities"); *Akorn*, 240 F. Supp. 3d at 819 (the defendants fired the two independent audit firms that identified internal control weaknesses, and told the market that the company's financial results were accurate and GAAP-compliant, only to issue a massive restatement weeks later).

9

complaint here alleges nothing of the sort, especially about Mr. Hutchison. At best, the theory is that Mr. Hutchison must (or should) have known about the alleged fraud because he was the CEO, and RTI restated its financial results. But that is textbook fraud-by-hindsight, which the Seventh Circuit has rejected as a basis for alleging scienter. *See* Mem. at 13.[12] The plaintiff cannot and does not argue otherwise. Because the complaint fails to show that Mr. Hutchison acted recklessly, the Court should grant the Motion and dismiss the plaintiff's Rule 10b-5 claims against him.

## II. THE OPPOSITION BRIEF DOES NOT SOLVE FOR THE COMPLAINT'S FAILURE TO PLEAD MISREPRESENTATIONS OR OMISSIONS

### A. The Misrepresentation Claims Fail as a Matter of Law

Mr. Hutchison demonstrated in his opening brief that RTI's alleged early shipping was neither deceptive nor manipulative and, therefore, did not violate Rule 10b-5(a) and (c). *See* Mem. at 5-7. Unable to dispute the point, the plaintiff concedes it (*see* Opp'n at 16 n.7) and abandons her scheme liability claim against Mr. Hutchison. (*See* page 2, above). Still, she argues that RTI misstated its revenue in violation of Rule 10b-5(b) because it incorrectly recognized revenue from early-shipped goods. *See id.* at 17-19. But even if RTI misstated revenue, the complaint raises no inference that Mr. Hutchison knew or should have known that. (*See* Point I, above; Mem. at 9-13). Absent scienter, the Rule 10b-5(b) claims against Mr. Hutchison that are based on RTI's allegedly misstated revenue fail as a matter of law.

Claims based on the allegedly misstated year-end revenue for 2015 fail for an additional reason: immateriality. *See* Mem. at 8-9. Mr. Hutchison demonstrated in his moving brief that, when restated, 2015 year-end revenue **increased** by 0.3 percent, a difference well

---

[12] Allegations that executives must have known about the fraud because of their positions is a "permutation[] of 'fraud by hindsight'" that does "not create an inference, much less a strong inference, of scienter." *Davis*, 385 F. Supp. 2d at 714.

below the five percent rule-of-thumb threshold for materiality, and one that would not have altered a reasonable investor's decision to buy RTI common stock. *See* Mem. at 8-9. The plaintiff disputes none of that. Instead, she attacks a strawman. She says Mr. Hutchison "suggest[ed] that, because the Restatement increased the reported revenue for some financial periods, those original financials were not false." Opp'n at 17. But Mr. Hutchison suggested no such thing. Rather, he demonstrated that because revenue was revised incrementally, and upward, the originally stated figure was misstated, if at all, immaterially, and without deceptive intent. *See* Mem. at 8-9, 14. The opposition brief contains no response to those points.[13]

The plaintiff also sets up a strawman to try to attack Mr. Hutchison's point about his 2016 OEM disclosures. Mr. Hutchison demonstrated in his moving brief that an executive perpetrating an early shipping and revenue smoothing scheme would try to hide that from the market. The executive would not, as he did, warn investors that the company's next year would be worse, or lower revenue projections throughout the year as more information became available about inventory issues. *See id.* at 4, 6. Unable to dispute that, the plaintiff claims that Mr. Hutchison was asserting a truth-on-the-market defense: the misstatements were immaterial because the market was informed of the fraud. *See* Opp'n at 22-23. But Mr. Hutchison advanced no such argument. Rather, he demonstrated that his openness belied the existence of a fraudulent scheme, not that one existed and was known to the market. The opposition brief contains no response to the point Mr. Hutchison actually made.[14]

---

[13] The plaintiff also argues that Mr. Hutchison is liable for "years of inaccurately reported financials." Opp'n at 17; *see also id.* at 22 (addressing materiality). But a defendant cannot be liable under Rule 10b-5(b) for statements he never made, and Mr. Hutchison made no statement after he retired from RTI on December 16, 2016. Mr. Hutchison made this point in his opening brief. *See* Mem. at 9 n.7, citing *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). The opposition brief contains no response.

[14] Mr. Hutchison also demonstrated in his moving brief that the two oral statements attributed to him (*see* Ex. A ¶¶ 103, 125) do not support a Rule 10b-5(b) claim because the complaint contains no

**B.      The Omission Claims Fail as a Matter of Law**

Mr. Hutchison demonstrated in his moving brief that he had no duty to disclose early shipping because it was not unlawful, and neither he nor RTI spoke about early shipping. *See* Mem. at 7, quoting Ex. A ¶ 51; *see also In re The Hain Celestial Grp. Inc. Sec. Litig.*, No. 16-cv-4581, 2020 WL 1676762 (E.D.N.Y. Apr. 6, 2020) (holding that sales and revenue recognition practices that did not violate Rule 10b-5(a) and (c) cannot support a Rule 10b-5(b) claim for failing to disclose those practices). The plaintiff disputes none of that. Instead, she argues that "Defendants" misled the market by making representations that RTI's restatement subsequently showed to be false. Opp'n at 20. But that describes affirmative misrepresentation, not omission. To plead omission, "plaintiffs must point to a specific statement that is made misleading by [an] omission, and offer specific, contradictory information known to [the defendant] sufficient to establish that [the defendant] made any misleading statements." *Garden City Employees' Ret. Sys. v. Anixter Int'l, Inc.*, No. 09-cv-5641, 2012 WL 1068761, at *5 (N.D. Ill. Mar. 29, 2012); *accord Omnicare, Inc. v. Laborers Dist. Council Indus. Pension Fund*, 575 U.S. 175, 192 (2015) (as quoted in Opp'n at 20: "[L]iteral accuracy is not enough: [a company] must as well desist from misleading investors by saying one thing **and holding back another**."). The complaint alleges no fact showing that Mr. Hutchison said one thing while holding back another. Accordingly, the complaint states no omission claim against him.

## III.      THE OPPOSITION BRIEF DOES NOT SOLVE FOR THE COMPLAINT'S FAILURE TO PLEAD CONTROL PERSON LIABILITY

The plaintiff does not dispute that her control person claim against Mr. Hutchison fails absent a primary securities violation by another defendant during the time when Mr.

---

particularized allegations showing how those statements were false. *See* Mem. at 8. The plaintiff does not engage with that point and, therefore, abandons her Rule 10b-5(b) claims based on those statements.

12

Hutchison could have been a control person, March 6, 2016 to December 16, 2016.  Here, the only other defendants during the relevant time are Mr. Jordheim and RTI.  But the Rule 10b-5 claims against those defendants fail for the reasons set forth in their motion papers.  Additionally, the plaintiff's "corporate scienter" argument against RTI (*see* Opp'n at 39) fails for the reasons set forth in RTI's reply brief.  *See id.* at 13-14.  Accordingly, the plaintiff has no basis for her Section 20(a) claims against Mr. Hutchison.

## Conclusion

For the foregoing reasons, those set forth in the moving brief, and those set forth in the other defendants' motion papers the Court should grant the Motion and dismiss all claims against Mr. Hutchison in their entirety with prejudice.

Dated:  January 4, 2021
        New York, New York

Respectfully Submitted,

MURPHY & MCGONIGLE, P.C.

By:  /s/ James K. Goldfarb

James K. Goldfarb (*pro hac vice*)
*jgoldfarb@mmlawus.com*
Stephen J. Crimmins
*scrimmins@mmlawus.com*
1185 Avenue of the Americas, 21st Floor
New York, New York  10036
(212) 880-3999

Of Counsel:

Alan M. Wolper
*awolper@ulmer.com*
Ulmer & Berne, LLP
500 West Madison Street, Suite 3600
Chicago, Illinois  60661-4587
(312) 658-6500

*Attorneys for Defendant Brian K. Hutchison*

13

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on January 4, 2021, a true and correct copy of the foregoing **DEFENDANT BRIAN K. HUTCHISON'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION TO DISMISS** was electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, using the Court's CM/ECF System, which shall send notification of such filing to all parties registered to use ECF or are represented by a registered E-filer. Parties may access this filing through the Court's CM/ECF System.

/s/ James K. Goldfarb

4849-4111-1508