**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| PATRICIA LOWRY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RTI SURGICAL HOLDINGS, INC., CAMILLE I. FARHAT, BRIAN K. HUTCHISON, JONATHON M. SINGER, ROBERT P. JORDHEIM, and JOHANNES W. LOUW,<br><br>Defendants. | Case No. 1:20-cv-01939<br><br>Hon. Matthew F. Kennelly |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT**
**ROBERT P. JORDHEIM'S MOTION TO DISMISS**

**DLA PIPER LLP (US)**
Deborah R. Meshulam*
500 8th Street NW
Washington DC 20004
T: 202.799.4511
E: deborah.meshulam@dlapiper.com

Keara M. Gordon*
1251 Avenue of the Americas
New York, NY 10020-1104
T: 212.335.4632
E: keara.gordon@dlapiper.com

Yan Grinblat
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
T: 312.368.2183
E: yan.grinblat@dlapiper.com

\* Admitted *pro hac vice*

*Counsel for Defendant Robert R. Jordheim*

Table of Contents

Page

Preliminary Statement.................................................................................................................1

Argument .....................................................................................................................................3

    I.      The AC Does Not Adequately Plead that Mr. Jordheim Made Material
           Misstatements. ................................................................................................... 3

          A.      The restatement does not render Mr. Jordheim's statements false. ............ 3

          B.      The AC does not adequately allege that challenged statements were
                material. ................................................................................................. 5

    II.     The AC Does Not Adequately Allege Mr. Jordheim's Scienter............................. 6

          A.      Mr. Jordheim's class-period stock purchases defeat any inference of
                scienter. ................................................................................................. 6

          B.      The PSLRA precludes the plaintiff's group pleading tactic. ...................... 7

          C.      The AC's confidential witness allegations merit no weight. ...................... 9

    III.    The "Control Person" Claims Should Be Dismissed. .......................................... 10

Conclusion ...................................................................................................................................10

i

Table of Authorities

Page(s)

Cases

*Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*,
2012 WL 1030474 (N.D. Ill. Mar. 27, 2012) ................................................................................ 8

*City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*,
388 F. Supp. 2d 932 (S.D. Ind. 2005) ..................................................................................... 10

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
916 F.3d 589 (7th Cir. 2019) ............................................................................................... 7, 8

*Davis v. SPSS, Inc.*,
431 F. Supp. 2d 823 (N.D. Ill. 2006) ..................................................................................... 10

*Fogel v. Vega*,
759 F. App'x 18 (2d Cir. 2018) .................................................................................................. 4

*Geinko v. Padda*,
2001 WL 1163728 (N.D. Ill. Sept. 28, 2001) ........................................................................... 7

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ..................................................................................................... 3

*Greater PA Carpenters Pension Fund v. Whitehall Jewellers, Inc.*,
2005 WL 61480 (N.D. Ill. Jan. 10, 2005) ................................................................................. 4

*Hallberg v. Am. Agencies Gen. Agencies, Inc.*,
2005 WL 563211 (N.D. Ill. Mar. 8, 2005) ................................................................................ 8

*In re Akorn, Inc. Sec. Litig.*,
240 F. Supp. 3d 802 (N.D. Ill. 2017) .................................................................................... 4, 5

*In re Allied Prod. Corp., Inc. Sec. Litig.*,
2000 WL 1721042 (N.D. Ill. Nov. 15, 2000) ............................................................................ 8

*In re Ashanti Goldfields Sec. Litig.*,
2004 WL 626810 (E.D.N.Y. Mar. 30, 2004) ............................................................................. 6

*In re Aspeon, Inc. Sec. Litig.*,
168 F. App'x 836 (9th Cir. 2006) ............................................................................................... 6

ii

Page(s)

*In re Bristol-Myers Squibb Sec. Litig.*,
312 F. Supp. 2d 549 (S.D.N.Y. 2004) .................................................................................. 7, 8

*In re Diamond Foods, Inc., Sec. Litig.*,
2012 WL 6000923 (N.D. Cal. Nov. 30, 2012) ............................................................................ 9

*In re Hansen Nat. Corp. Sec. Litig.*,
527 F. Supp. 2d 1142 (C.D. Cal. 2007) ...................................................................................... 9

*In re Newell Rubbermaid Inc. Sec. Litig.*,
2000 WL 1705279 (N.D. Ill. Nov. 14, 2000) .............................................................................. 5

*In re Ramp Networks, Inc.*,
201 F. Supp. 2d 1051 (N.D. Cal. 2002) ...................................................................................... 9

*In re Scholastic Corp. Sec. Litig.*,
252 F.3d 63 (2d Cir. 2001) ........................................................................................................ 10

*In re Silver Wheaton Corp. Sec. Litig.*,
2019 WL 1512269 (C.D. Cal. Mar. 25, 2019) ............................................................................ 9

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
513 F.3d 702 (7th Cir. 2008) ....................................................................................................... 6

*Malin v. XL Capital Ltd.*,
499 F. Supp. 2d 117 .................................................................................................................... 10

*Mulligan v. Impax Labs., Inc.*,
36 F. Supp. 3d 942 (N.D. Cal. 2014) ......................................................................................... 10

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) .................................................................................................................. 4, 5

*Pension Tr. Fund for Operating Eng'rs v. DeVry Educ. Grp., Inc.*,
2017 WL 6039926 (N.D. Ill. Dec. 6, 2017) .......................................................................... 7, 8, 9

*Pugh v. Tribune Co.*,
521 F.3d 686 (7th Cir. 2008) ............................................................................................... *passim*

*Roth v. OfficeMax, Inc.*,
527 F. Supp. 2d 791 (N.D. Ill. 2007) .......................................................................................... 9

*Roth v. OfficeMax, Inc.*,
2006 WL 2661009 (N.D. Ill. Sept. 13, 2006) .............................................................................. 4

Page(s)

*Sears v. Likens*,
  912 F.2d 889 (7th Cir. 1990)........................................................................................... 7

*Shenwick v. Twitter, Inc.*,
  282 F. Supp. 3d 1115 (N.D. Cal. 2017) ........................................................................... 6

*Twin Master Fund, Ltd. v. Akorn, Inc.*,
  2020 WL 564222 (N.D. Ill. Feb. 5, 2020)....................................................................... 5

*Van Noppen v. InnerWorkings, Inc.*,
  136 F. Supp. 3d 922 (N.D. Ill. 2015) ........................................................................... 4, 5

*Wade v. WellPoint, Inc.*,
  892 F. Supp. 2d 1102 (S.D. Ind. 2012) (dismissing ...................................................... 8

iv

## PRELIMINARY STATEMENT

Defendant Robert P. Jordheim was an officer of RTI Surgical Holdings, Inc. ("RTI" or the "Company") for the first six quarters of the five-year putative class period. *See* Amended Complaint, ECF No. 53 ("AC") ¶¶ 1, 30. The last public filing that Mr. Jordheim is alleged to have signed was RTI's Form 10-Q for Q2 2017; he left the Company shortly thereafter. *Id.* ¶ 153. On June 8, 2020 – nearly *three years* after Mr. Jordheim left – RTI restated its financial statements for 2014-2018 and the first three quarters of 2019. *Id.* ¶ 226. The plaintiff does not contest that the restatement merely corrected the *timing* of revenue "for certain invoices" issued in connection with "binding purchase orders" because "goods were shipped and received by the customers before requested delivery dates and agreed-upon delivery windows." 2018 10K/A (ECF No. 60-1), at 3. And she does not dispute that "[i]n many instances the . . . customers requested or approved the early shipments." *Id.* In fact, the opposition concedes that RTI "did not book phony revenue, create fake contracts, or engage in channel stuffing." ECF No. 69 ("Opp.") at 16 n.7.

Mr. Jordheim's opening brief focused upon the statements that *he* made during the period he was employed at RTI – the only statements for which he could conceivably have any liability – and explained why the plaintiff failed to state any viable claims against Mr. Jordheim based on those statements. In response, the plaintiff seeks to lump Mr. Jordheim's statements with those made by all other defendants, who served in different roles at different times, including years after Mr. Jordheim's departure. This is improper; the Seventh Circuit has "rejected the 'group pleading doctrine,'" and requires plaintiffs to plead facts "with respect to *each* individual defendant." *Pugh v. Trib. Co.*, 521 F.3d 686, 693 (7th Cir. 2008) (emphasis added; citation omitted). Here, the vast majority of the events to which the plaintiff points – including the sale of RTI's OEM business, the restatement, and *all* of the allegedly corrective disclosures – occurred years after Mr. Jordheim had left the Company. *See* AC ¶¶ 6-7, 47, 217, 222, 226, 235; *see also* Opp. at 24-25.

It is impermissible fraud by hindsight for the plaintiff to contend that statements Mr. Jordheim made in 2016 and 2017 regarding RTI's financial performance and internal control over financial reporting must have been "fraudulent" because, years later, the Company restated some "reported revenue figures." *See* Jordheim Memorandum of Law, ECF No. 63 ("RJ Mem."), at 8. Moreover, the plaintiff ignores that for each class-period year and nearly every class period quarter that Mr. Jordheim was at RTI, revenue was *understated* and the restatement retroactively *increased* it, raising the obvious question as to why Mr. Jordheim would have committed fraud to make the Company's financial performance look *worse*. *See id.* at 5.[1] Indeed, the plaintiff concedes that she cannot plead *any* motive for Mr. Jordheim to commit fraud. *See* Opp. at 37-38.

The fact that Mr. Jordheim increased his stock holdings during the putative class period – nearly doubling his ownership of RTI stock – further negates an inference of scienter and strongly supports the inference that Mr. Jordheim believed his challenged statements to be truthful. RJ Mem. at 6. The plaintiff likewise disregards that for each of the years during Mr. Jordheim's tenure, the Company's independent auditor concluded that RTI's financial statements presented the Company's financial position "fairly, in all material respects," and that RTI "maintained, in all material respects, effective internal control over financial reporting," which further supports Mr. Jordheim's contemporaneous belief in the truth of the challenged statements and rebuts any notion of scienter. *See id.* at 4.

The plaintiff does not plead any facts to show how any *specific* statement attributed to Mr. Jordheim was false when made or that demonstrate Mr. Jordheim did not believe his statements to be accurate at the time. All claims against Mr. Jordheim should be dismissed, with prejudice.

---

[1] For two class-period quarters during Mr. Jordheim's tenure, Company revenue was overstated – but only by a mere 0.1 and 0.75 percent. RJ Mem. at 5. When the details of the restatement were announced in June 2020, RTI's stock price *increased* by over 1 percent. *Id.*

## ARGUMENT

### I.    The AC Does Not Adequately Plead that Mr. Jordheim Made Material Misstatements.

The plaintiff does not contest that Mr. Jordheim may only be liable for statements that he "made" – meaning those he signed, "actually delivered," or "*actually exercised* control over." *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 426-27 (7th Cir. 2015). Thus, Mr. Jordheim's liability extends – if at all – to the statements the AC attributes to him. *See* RJ Mem. at 7. The plaintiff does not adequately plead the material falsity of any of these statements.

#### A.    The restatement does not render Mr. Jordheim's statements false.

The plaintiff's only basis for challenging *every* class-period statement attributed to Mr. Jordheim is the conclusory contention that because of the restatement, RTI's "reported revenue figures were false." AC ¶¶ 99, 101, 104, 109, 111, 116, 120, 123, 126, 131, 134, 137, 141, 144, 147, 152, 156; *see also* Opp, at 13 (claiming that "[t]he [r]estatement confirmed the material inaccuracy of [d]efendants' numerous statements"). This does not satisfy the plaintiff's pleading burden under Rule 9(b) and the PSLRA. *See* RJ Mem. at 8 & n.4 (alleging falsity for a "laundry list of reasons" that are "generally applicable to all allegedly misleading statements" is "not sufficient") (collecting cases). The opposition concedes this argument through silence.

Mr. Jordheim's statements that the OEM business was stabilizing, *see* AC ¶¶ 135, 150, remained true following the restatement. Contrary to plaintiff's conjecture, the "stabilization" that Mr. Jordheim and others at RTI discussed had nothing to do with "volatility of order timing," *see* Opp. at 4-5, but rather with growth. For example, during a quarterly conference call, Mr. Farhat informed investors "that commercial continues to stabilize and *has returned to growth*," and Mr. Jordheim echoed this sentiment, stating that the "commercial business continues to stabilize and *grew*[.]" AC ¶¶ 149-50 (emphasis added). The restatement did not reverse this growth. To the contrary, it increased OEM revenue for every year in the putative class period that Mr. Jordheim

3

was at RTI (from $99.1m to $111m in 2016 and from $103m to $111.5m in 2017). *See* 2016 10-K (ECF No. 60-3) at 33; 2017 10-K (ECF No. 60-4) at 82; 2018 10K/A at 43. Even after the restatement, Mr. Jordheim's statements that the OEM business "stabilized" and "grew" remained true, with revenue for this business line increasing from 2016 to 2017. *See id.*[2]

Several other statements attributed to Mr. Jordheim were similarly unrelated to the amount of RTI's revenue or income and were thus not called into question by the restatement. *See* AC ¶ 113 (reporting "lower orders from certain commercial distributors"); ¶ 115 (orders from one "commercial distributor" were lower than expected because that distributor's "sell-through opportunities or cross-selling opportunities . . . have been slower than expected to materialize"). The complaint does not plead any facts challenging these statements.

Finally, the restatement did not refute Mr. Jordheim's opinion regarding the efficacy of RTI's internal controls over financial reporting. The plaintiff ignores that statements regarding internal controls are "opinion statements" and not representations of fact. *Fogel v. Vega*, 759 F. App'x 18, 24 (2d Cir. 2018); *see* RJ Mem. at 9. This is evident from the statements themselves. *E.g.*, 2016 10-K at 43 ("management *believes* that . . . internal control over financial reporting is effective"). To adequately allege the falsity of these opinions, a plaintiff must allege that (1) they were objectively false, and (2) the speaker did not believe the opinion expressed. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund,* 575 U.S. 175, 184–87 (2015).

---

[2] The plaintiff's authorities do not involve statements such as Mr. Jordheim's regarding the *reasons* for or trends explaining defendants' financial performance. *See In re Akorn, Inc. Sec. Litig.*, 240 F. Supp. 3d 802, 815 (N.D. Ill. 2017); *Roth v. OfficeMax, Inc.*, 2006 WL 2661009, at *4 (N.D. Ill. Sept. 13, 2006); *Van Noppen v. InnerWorkings, Inc.*, 136 F. Supp. 3d 922, 950 (N.D. Ill. 2015) *Greater PA Carpenters Pension Fund v. Whitehall Jewellers, Inc.*, 2005 WL 61480, at *6 (N.D. Ill. Jan. 10, 2005) (all challenging financial results or statements reporting financial results). In fact, in *Roth* the court dismissed the complaint because – like here – plaintiff failed to allege any knowingly wrongful conduct. 2006 WL 2661009, at *7-8. And in *Van Noppen*, the only claims that survived involved allegations that invoices were falsified, 136 F. Supp. 3d 922, 946, which plaintiffs here admit did not occur, *see* Opp. at 16 n.7.

4

The AC does not do either. It alleges only that in 2020 – three years after Mr. Jordheim left RTI – the Company concluded that internal controls were "not effective *as of December 31, 2018*." AC ¶¶ 226, 229 (emphasis added). This has no bearing on the truth of Mr. Jordheim's statements regarding controls in 2015-17. Any speculation that such controls "*must* have been weak *because* a fraud [allegedly later] occurred" is "fraud by hindsight." *Pugh*, 521 F.3d at 694. Similarly, the AC does not plead any facts showing that Mr. Jordheim did not genuinely believe the efficacy of RTI's controls. That RTI came to a different conclusion about a later period – when the Company had new management and Mr. Jordheim was no longer there – does not controvert Mr. Jordheim's belief that controls were effective at the time his opinion was expressed. *Omnicare*, 575 U.S. at 186 ("a sincere statement of pure opinion is not an 'untrue statement of material fact'").

**B.      The AC does not adequately allege that challenged statements were material.**

"[W]hen it is clear that a particular financial misstatement could not possibly be significant to a reasonable investor due to its small magnitude, a court may properly determine on a motion to dismiss that the misstatement was immaterial as a matter of law." *In re Newell Rubbermaid Inc. Sec. Litig.*, 2000 WL 1705279, at *8 (N.D. Ill. Nov. 14, 2000) (Kennelly, J.) (collecting cases). In *Newell*, the Court held that an *overstatement* totaling "less than 1%" of defendant's revenue was not material. *Id.* (noting that courts have found overstatements of 2%-9% immaterial as a matter of law); *see also* RJ Mem. at 10-11 & n.5 (collecting cases). Here, for every class-period year and nearly every class period quarter that Mr. Jordheim was at RTI, the Company's revenue was *understated*. RJ Mem. at 5. Tellingly, the plaintiff does not even attempt to distinguish *Newell*, nor can she. The Court's well-reasoned prior holding compels the same result in this case.[3]

---

[3] The plaintiff's authorities are factually distinct. *See* ECF No. 70 ("RTI Reply") at 3 n.4 (distinguishing cases). And materiality cannot be inferred merely because "the total mix of information provided to investors was [allegedly] incorrect." Opp. at 22. Merely contending that a statement is false is not sufficient to plead that the statement was material to reasonable investors.

That RTI's stock price *increased* when the details of the restatement were announced supports the inference that the restatement was not material. *See* RJ Mem. at 5, 11. The plaintiff's contention that "the market's negative reaction" is evidence of materiality concedes that here, the market's positive reaction is evidence of non-materiality. *See* Opp. at 21.

## II.  The AC Does Not Adequately Allege Mr. Jordheim's Scienter.

A securities complaint "must create a *strong* inference of scienter with respect to *each* individual defendant." *Pugh*, 521 F.3d at 693–94 (citing *Makor Issues & Rts, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 710 (7th Cir. 2008)) (emphasis added). But the AC does not plead any particularized facts permitting an inference that Mr. Jordheim acted with fraudulent intent.

### A.  Mr. Jordheim's class-period stock purchases defeat any inference of scienter.

As the plaintiff concedes, the AC does not allege *any* motive for Mr. Jordheim to commit fraud. *See* Opp. at 37 (claiming motive "not required").[4] Nor can the Court infer any such motive, since during the putative class period, Mr. Jordheim nearly *doubled* his investment in RTI stock, increasing his holdings from 87,000 shares to 145,000 shares, including through an independent stock purchase. RJ Mem. at 6; *see Pugh*, 521 F.3d at 695 ("the fact that the defendants are not alleged to have sold the stock at the inflated prices meant that they stood to lose a lot of money if the value of Tribune's stock fell"). Plaintiffs simply ignore this fact. This commitment to the Company's future strongly indicates that Mr. Jordheim "knew or believed that the issued statements were accurate" and "negate[s] the inference of scienter." *In re Aspeon, Inc. Sec. Litig.*, 168 F. App'x 836, 840 (9th Cir. 2006); *see* RJ Mem. at 11-12 & n.6 (collecting cases).[5]

---

[4] The contention that all defendants had motive to inflate revenue to facilitate the sale of RTI's OEM business, Opp. at 38, fails as to Mr. Jordheim because (1) the sale occurred years after he left RTI, and (2) OEM revenue was *understated* during Mr. Jordheim's tenure

[5] Plaintiffs' authorities are inapposite. *See In re Ashanti Goldfields Sec. Litig.*, 2004 WL 626810 (E.D.N.Y. Mar. 30, 2004) (alleging fraud was discussed during class period); *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115 (N.D. Cal. 2017) (defendants did not purchase company stock).

### B.       The PSLRA precludes the plaintiff's group pleading tactic.

When, as here, no motive is pled, the "strength of the circumstantial allegations must be correspondingly greater," requiring "specific[]" facts contradicting *each* defendant's statements. *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 562 (S.D.N.Y. 2004). The plaintiff does not identify any. Instead, she continues the AC's "group pleading" strategy, failing to distinguish between defendants when discussing the AC's scienter allegations. *E.g.*, Opp. at 24 ("Defendants admitted to filing materially inaccurate financials"); *id.* at 29 ("Defendants adopted a new accounting standard"); *id.* at 36-37 (claiming that internal investigation, SEC investigation, and separation of RTI officer – each announced in 2020 – support *all* defendants' scienter); *accord* AC ¶¶ 239-40 (alleging that scienter of all "defendants" can be "infer[red]" based on the 2020 restatement). All these events post-date Mr. Jordheim's tenure at RTI. The plaintiff fails to identify any "particularized allegations shedding light on when, if ever, [Mr. Jordheim] should have known that [any challenged statement] was or might be false[.]" *Pension Tr. Fund for Operating Eng'rs v. DeVry Educ. Grp., Inc.*, 2017 WL 6039926, at *12 (N.D. Ill. Dec. 6, 2017).

A securities complaint is insufficient when, like here, it "is bereft of any detail concerning who was involved in each allegedly fraudulent activity [or] how the alleged fraud was perpetrated[.]" *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (affirming dismissal where "the complaint lumps all the defendants together"); *see Pugh*, 521 F.3d at 693. Courts routinely dismiss "group argument[s]" that "treat[] all of the individual defendants together." *Geinko v. Padda*, 2001 WL 1163728, at *4, 6 (N.D. Ill. Sept. 28, 2001) (dismissing because making "the same type of generalized allegations of knowledge" for all defendants is "not sufficient under the PSLRA").[6]

---

[6] The need to conduct a "holistic review" of the allegations and "consider the complaint in its entirety," Opp. at 24, does not excuse the AC's pleading failures. *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 601 (7th Cir. 2019) (plaintiff must plead scienter of "'*each defendant*' in multiple defendant cases") (emphasis added) (collecting cases and affirming dismissal); *see*

The plaintiff cannot avoid her pleading burden by claiming that the allegations relate to RTI's "core operations." *C.f.* Opp. at 34. Here, the conduct alleged – ad hoc early shipments of orders without prior approval – is "diffuse," and even if the OEM business was "a vital component of [RTI's] business, that is not sufficient to create a strong inference that the defendants knew whether or how often its [employees]" sent shipments early. *Operating Eng'rs*, 2017 WL 6039926, at \*12 (citation omitted); *see Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*, 2012 WL 1030474, at \*10 (N.D. Ill. Mar. 27, 2012) (declining to infer that executives knew employees were overly "aggressive" and sometimes "resorted to deception" to meet expectations).

Nor does the "magnitude" of the restatement support Mr. Jordheim's scienter. *C.f.* Opp. at 25. To the contrary, after the restatement, revenue for both RTI as a whole and the OEM business *increased* for every class-period year that Mr. Jordheim was at the Company. Moreover, the amount of the restatement was *de minimis*, with revenue increasing 0.3 percent in 2015, 1.1 percent in 2016, and 0.28 percent in 2017. RJ Mem. at 5. A "[r]estatement alone does not provide a basis for inferring scienter" without specific allegations of fraudulent intent. *Bristol-Myers*, 312 F. Supp. 2d at 565. The AC does not make any such allegations as to Mr. Jordheim, nor could it since the restatement occurred three years after Mr. Jordheim left RTI. Moreover, that Mr. Jordheim "made [similar challenged statements] over a period of several [quarters] provides no support for any inference of scienter if" – like here – he "never had reason to suspect that [any statement] was false." *Operating Eng'rs*, 2017 WL 6039926, at \*15 (refusing to infer that a statement made by

---

*Hallberg v. Am. Agencies Gen. Agencies, Inc.*, 2005 WL 563211, at \*4 (N.D. Ill. Mar. 8, 2005) (dismissing where the "only allegations in the complaint which directly address scienter are conclusory and are stated about '[d]efendants' generally" because "a complaint must give sufficient reasons to believe that each specific defendant acted with a fraudulent intent") (collecting cases); *Wade v. WellPoint, Inc.*, 892 F. Supp. 2d 1102, 1127 (S.D. Ind. 2012) (dismissing where "[p]laintiff generally groups the individual [d]efendants together when referring to the [alleged scheme]" and "incorporates no particularized facts about any one person's knowledge or awareness of this alleged plot").

management over several *years* was knowingly false simply because the statement was made over a long period and the metric reported was important to the defendant's business).[7]

This anti-scienter inference is further strengthened because for each year Mr. Jordheim was at RTI, outside auditors concluded that RTI's financial statements present its financial position "fairly, in all material respects" and that RTI "maintained, in all material respects, effective internal control over financial reporting." RJ Mem. at 12. The opposition does not contest that such "unqualified opinion[s] [are] 'highly probative' of an absence of scienter." *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1158 (C.D. Cal. 2007); *see* RJ Mem. at 12 (collecting cases).[8]

Finally, the Sarbanes Oxley certifications allegedly signed by Mr. Jordheim do not support an inference of scienter. The plaintiff admits that such certifications support scienter only where defendants *knew* the certifications were false *at the time* they were signed. Opp. at 35-36; *see also Roth v. OfficeMax, Inc.*, 527 F. Supp. 2d 791, 804 (N.D. Ill. 2007) (signing certifications "does not suffice to allege scienter without allegations that [defendant] was aware of [alleged] material weaknesses in . . . internal controls"). No such facts are alleged as to Mr. Jordheim.

### C.    The AC's confidential witness allegations merit no weight.

The only allegation purporting to connect Mr. Jordheim to a *single* early shipment – a confidential witness's hearsay account of a conversation between Mr. Jordheim and another RTI

---

[7] None of the plaintiff's authorities suggest a financial *understatement* is probative of scienter. *See* RTI Reply at 3 n.4. In fact, *In re Allied Prod. Corp., Inc. Sec. Litig.*, 2000 WL 1721042, at *3 (N.D. Ill. Nov. 15, 2000), supports dismissal, holding that an 18% *overstatement* was not indicative of recklessness and that specific facts showing wrongful intent were required.

[8] The opposition's authorities are not to the contrary. *See In re Diamond Foods, Inc., Sec. Litig.*, 2012 WL 6000923, at *8 (N.D. Cal. Nov. 30, 2012) (defendants "scrubbed" financial statements before providing them to auditor); *In re Ramp Networks, Inc. Sec.*, 201 F. Supp. 2d 1051, 1074 n.6 (N.D. Cal. 2002) (agreeing that a clean audit is probative of no scienter, but finding scienter because challenged statements post-dated audit); *In re Silver Wheaton Corp. Sec. Litig.*, 2019 WL 1512269, at *10 (C.D. Cal. Mar. 25, 2019) (agreeing that "courts have found the opinions of independent auditors to be 'highly probative of an absence of scienter,'" but finding scienter based on specific allegations of knowing, wrongful conduct).

employee – is unverified, "impermissible hearsay" which "cannot be considered." *Malin v. XL Cap. Ltd.*, 499 F. Supp. 2d 117, 139, n. 17 (D. Conn. 2007), *aff'd,* 312 F. App'x 400 (2d Cir. 2009). The opposition concedes that the confidential witness did not have personal knowledge of the conversation and that the conversation pre-dated the alleged class period. *See* Opp. at 32-33 & n.12. In fact, there are no allegations regarding (a) how the witness learned of this conversation, (b) when he learned of it, or (c) when the conversation took place. A plaintiff must allege "how or why such employees would have access to the information they purport to possess" and the Court cannot credit "knowledge [that] came from [a witness's] former co-workers, and not from himself/herself." *Davis v. SPSS, Inc.*, 431 F. Supp. 2d 823, 827-28 (N.D. Ill. 2006) (pleading "job title, office location and dates of employment" insufficient where complaint does not allege "with substantial specificity" how witnesses "came to learn of the information they provide") (collecting cases)). Without any information corroborating the witness's purported knowledge, the Court cannot credit this unreliable hearsay allegation. *See* RJ Mem. at 13-14 (collecting cases).[9]

### III. The "Control Person" Claims Should Be Dismissed.

Because the AC has not alleged any primary violation, the control person claim against Mr. Jordheim also should be dismissed. *Pugh*, 521 F.3d at 698.

### CONCLUSION

For the reasons above, in Mr. Jordheim's moving brief, and the briefs of all co-defendants, incorporated herein, all claims against Mr. Jordheim should be dismissed with prejudice.

---

[9] The plaintiff mistakenly claims that "the reliability of the former employees should [not] turn on whether they were *employed* during the [c]lass [p]eriod." Opp. at 32 (emphasis added). The allegations fail because the AC "provides no dates or facts regarding when the confidential witnesses . . . *acquired* the information they claim to possess." *City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*, 388 F. Supp. 2d 932, 943 (S.D. Ind. 2005) (emphasis added); *see* RJ Mem. at 14. Plaintiff's authorities are not to the contrary. *See In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001) (confidential witness testimony not at issue); *Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 953 (N.D. Cal. 2014) (witnesses reported information from class period).

Dated: January 4, 2021                      Respectfully submitted,

                                            By:   */s/ Yan Grinblat*

Deborah R. Meshulam*                              Yan Grinblat
DLA Piper LLP (US)                                DLA Piper LLP (US)
500 8th Street NW                                 444 West Lake Street, Suite 900
Washington DC 20004                               Chicago, IL 60606-0089
T: 202.799.4511                                   T: 312.368.2183
E: deborah.meshulam@dlapiper.com                  E: yan.grinblat@dlapiper.com

Keara M. Gordon*
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020-1104
T: 212.335.4632
E: keara.gordon@dlapiper.com

\* Admitted *pro hac vice*                  *Counsel for Defendant Robert P. Jordheim*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that, on January 4, 2021, I electronically filed the foregoing document using the ECF System for the United States District Court for the Northern District of Illinois. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record registered on the ECF system.

*/s/ Yan Grinblat*
Yan Grinblat
DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606