**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| PATRICIA LOWRY, individually and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) RTI SURGICAL HOLDINGS, INC., CAMILLE ) I. FARHAT, BRIAN K. HUTCHISON, ) JONATHON M. SINGER, ) ROBERT P. JORDHEIM, and JOHANNES W. ) LOUW, ) ) Defendants. ) | No.: 20-cv-01939 Honorable Matthew F. Kennelly |

**DEFENDANT JOHANNES W. LOUW'S ANSWER**
**TO PLAINTIFF'S CONSOLIDATED AMENDED COMPLAINT**

Defendant Johannes W. Louw responds to each paragraph of Plaintiff's Consolidated Amended Class Action Complaint (the "Complaint") as follows:

**ANSWER**

**GENERAL DENIAL**

In responding to Plaintiff's Complaint, Defendant Louw denies any allegations or averments in the headings, unnumbered paragraphs, and "wherefore" clauses of the Complaint to the extent any response is required.

**NATURE OF ACTION**

1.  This is a federal securities class action brought on behalf of a class consisting of all persons and entities that purchased or otherwise acquired RTI common stock from March 7, 2016 through March 27, 2020, both dates inclusive (the "Class Period"), seeking to recover compensable damages caused by Defendants' violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act") (the "Class").

1

**RESPONSE:** Defendant Louw denies the allegations in paragraph 1, except he admits that

Plaintiff purports to bring a federal securities class action.

2. During the Class Period, Defendants assured the market that (i) RTI recognized revenue in accordance with contractual arrangements between the Company and its customers; (ii) RTI's internal controls over financial reporting were effective; and (iii) RTI's public disclosures were complete.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 2, except he admits that

RTI (or the "Company") made certain representations in its public filings to the SEC.

3. In reality, the exact opposite was true: RTI improperly recognized and reported revenue for contractual arrangements – primarily arrangements related to its most critical segment, i.e., its original equipment manufacturer ("OEM") business.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 3.

4. At the heart of RTI's revenue recognition manipulation was the practice of "revenue smoothing," through which the Company regularly shipped products to customers early so that management could hit quarterly revenue targets. "Revenue smoothing" included fraudulent conduct on the part of RTI leadership – including the Individual Defendants – that ranged from prodding account managers to ask customers to accept early shipments for purchase orders to ordering shipments to go out early without the customer's permission. Defendants' fraud was twofold in that they misrepresented both the manner in which RTI recognized revenue and RTI's revenue numbers.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 4.

5. In post-Class Period disclosures, the Company admitted to its fraudulent revenue recognition practices. Moreover, multiple knowledgeable former RTI employees, as well as an employee of Medtronic, PLC ("Medtronic"), RTI's most important customer, attested to those practices. See ¶¶88-92, infra.

**RESPONSE:** Defendant Louw denies the allegations in the first sentence of paragraph 5, and

because Defendant Louw lacks knowledge and information sufficient to form a belief as to

the truth of the allegations attributed to the "Confidential Witnesses," in the second sentence

of paragraph 4, he therefore denies them.

2

6.      Towards the end of the Class Period, RTI's deceptive accounting treatment began to materialize in the form of the following adverse developments:

• an SEC investigation into the Company's accounting practices;

• an internal investigation by the Company's Audit Committee;

• RTI's inability to timely file its annual report for fiscal year 2019;

• the need to restate several years of SEC filings deemed incorrect and unreliable to the tune of millions of dollars;

• the Company's acknowledgement that its internal controls were ineffective;

• the abrupt departure of the Company's recently-appointed CFO;

• RTI's citation for breaching its much-publicized agreement to sell its OEM business;

• RTI's being compelled to reduce the sale price of its OEM business by $40 million;

• RTI's loss of a previously-negotiated ownership stake in the go-forward OEM business; and

• the postponement of RTI's annual meeting of shareholders.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 6, except he admits that the SEC opened an investigation into RTI and that RTI's Audit Committee conducted an internal investigation.

7.      On March 16, 2020, after the market closed, RTI disclosed that it could not timely file its annual report on Form 10-K for fiscal year 2019 due to ongoing investigations regarding revenue recognition by the SEC and the Audit Committee.

**RESPONSE:** Defendant Louw admits the allegations in paragraph 7 that RTI issued a press release stating it the Company would not be timely filing its Form 10-K for fiscal year 2019 for the reasons stated; however, Defendant Louw lacks knowledge and information sufficient to form a belief concerning the truth of the statements made by RTI in the referenced press release, and therefore denies them.

3

8.      On this news, RTI's stock price fell $0.76 per share, nearly 28%, to close at $1.99 per share on March 18, 2020, on unusually heavy trading volume.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 8, and refers to the historical stock price and trading volume for its contents.

9.      On March 20, 2020, RTI revealed, just before the market closed, that as a result of the Company's delay in filing its Form 10-K, the Company was not in compliance with the NASDAQ's listing requirements. Later that evening, RTI announced that Defendant Louw would be departing the Company no later than April 8, 2020.

**RESPONSE:** Defendant Louw admits the allegations in paragraph 9.  Defendant Louw asserts that his departure was not based on any wrongdoing whatsoever.

10.     Following the March 20 disclosure, shares fell $0.44 per share, or 19.6%, to close at $1.80 on March 23, 2020.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 10, and therefore denies them.

11.     Finally, before the market opened on March 30, 2020, the Company disclosed that, due to the failure to timely file a proxy statement with the SEC, RTI was in breach of its agreement to sell its OEM business to Montagu Private Equity LLP ("Montagu"), a private European equity firm.

**RESPONSE:** Defendant Louw Defendant Louw admits RTI made the announcement on March 30, 2022, as described in paragraph 11.

12.     In response, RTI shares fell $0.20 per share, or 11%, to close at $1.68 on March 30, 2020.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 12, and therefore denies them.

13.     On April 9, 2020, the Company filed a current report on a Form 8-K with the SEC announcing that the internal audit investigation remained ongoing and that investors should no longer rely on prior financial reports and reports concerning the internal controls over financial reporting for the fiscal years ended December 31, 2014, 2015, 2016, 2017 and 2018, and RTI's unaudited financial statements for the quarterly periods for 2016-2018, and the nine

4

months ended September 30, 2019. RTI further announced its impending plans to restate its previously released financial statements.

**RESPONSE:** To the extent these allegations are deemed to be directed at Defendant Louw, he denies the allegations in paragraph 13, except (i) he admits on April 9, 2020, RTI filed a Form 8-K with the SEC and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

14.    Critically, the April 9 announcement included RTI's admission that "goods were delivered early without obtaining the customers' affirmative approval," thus leading to improper revenue recognition, and that improper adjustments had been made for product returns.1 Multiple former employees of RTI corroborated RTI's admission. RTI's admitted practice of delivering goods without customer approval is also supported and corroborated by the testimony of multiple former RTI employees.

**RESPONSE:** To the extent these allegations are deemed to be directed at Defendant Louw, he denies the allegations in paragraph 14, except (i) he admits on April 9, 2020, the Company filed a Form 8-K with the SEC and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents. Defendant Louw also states that he lacks knowledge and information sufficient to form a belief as to the truth of the allegations regarding confidential witnesses referenced in paragraph 14, and therefore denies them.

15.    On June 8, 2020, RTI filed its restated financial statements for the previously disclosed periods, impacting various line items including revenue, operating expenses, accounts receivable, inventories, and accounts payable. RTI also identified material weaknesses, including that "the tone from executive management was insufficient to create the proper environment for effective internal control over financial reporting" and that "the Company's formal [Sarbanes-Oxley Act of 2002] compliance program did not have sufficient scope and focus on the key financial reporting risks."

**RESPONSE:** Defendant Louw states that he was not an officer, employee or consultant of the Company on June 8, 2020 and lacks sufficient knowledge and information to form a belief as

5

to the truth or falsity of the allegations in paragraph 15, and therefore denies them. In this denial, Defendant Louw (i) does admit that the Company filed its restated financial statement on June 8, 2020, and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

16. The same day, the Company filed its belated 2019 annual report, which restated certain financial items that were previously reported in quarterly reports for fiscal 2019. It further identified "errors [that] were made in connection with the recording of the acquisition of Paradigm Spine, LLC in 2019."

**RESPONSE:** Defendant Louw states that he was not an officer, employee or consultant of the Company on June 8, 2020 and lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 16, and therefore denies them. In this denial, Defendant Louw (i) does admit that the Company filed its restated financial statement on June 8, 2020, and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

17. On June 29, 2020, the Company disclosed that the Audit Committee's internal investigation, had established, inter alia, that:

- revenue for certain invoices should have been recognized at a later date than when originally recognized;

- in response to binding purchase orders from certain OEM customers, goods were shipped and received by the customers before requested delivery dates and agreed-upon delivery windows; and

- in many instances, the OEM customers requested or approved the early shipments, but the Company determined that on other occasions the goods were delivered early without obtaining the customers' affirmative approval. Some of those unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from *a future quarter into an earlier quarter*.

**RESPONSE:** Defendant Louw states that he was not an officer, employee or consultant of the Company on June 29, 2020 and lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 17, and therefore denies them. In

this denial, Defendant Louw (i) does admit that the Company filed its Form 10-Q on June 29, 2020, and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

18. More recently, on August 12, 2020, RTI admitted that the material weaknesses identified in the Company's restatement still "have not been remediated as of June 30, 2020."

**RESPONSE:** Defendant Louw states that he was not an officer, employee or consultant of the Company on August 12, 2020 and lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 18, and therefore denies them. In this denial, Defendant Louw (i) does admit that the Company filed its Form 10-Q on June 29, 2020, and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

19. As a result of Defendants' false and/or misleading statements, RTI common stock traded at inflated prices during the Class Period. After disclosure of Defendants' false and misleading statements and/or materialization of Defendants' concealed risks, RTI stock suffered a precipitous decline in market value, thereby causing significant losses and damages to Plaintiff and the Class.

**RESPONSE:** Defendant Louw denies the allegations of paragraph 19.

### JURISDICTION AND VENUE

20. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 8 240.10b-5).

**RESPONSE:** Defendant Louw denies the allegations in Paragraph 20, except he admits that Plaintiff made claims pursuant to the Securities Exchange Act of 1934 and the rules promulgated thereunder. Defendant Louw denies that Plaintiff has valid claims.

21. This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

**RESPONSE:** Defendant Louw admits the allegations in Paragraph 21.

22. Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b), as the Company conducts business and is headquartered in this District.

**RESPONSE:** Defendant Louw admits the allegations in Paragraph 22.

23. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**RESPONSE:** Defendant Louw denies the allegations of paragraph 23.

## PARTIES

24. Plaintiff acquired RTI common stock at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged disclosures and/or materialization of Defendants' concealed risks.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 24, and lacks knowledge and information sufficient to form a belief as to the truth of the allegations regarding Plaintiff's acquisition of the Company's common stock, and therefore denies them.

25. Defendant RTI purports to operate as a surgical implant company that designs, develops, manufactures, and distributes biologic, metal, and synthetic implants worldwide. RTI is a Delaware corporation maintaining its headquarters at 520 Lake Cook Road, Suite 315, Deerfield, Illinois. During the Class Period, RTI's securities traded on the NASDAQ under the ticker symbol "RITX." Post-restatement, the Company was renamed Surgalign Holdings, Inc., and currently trades on the NASDAQ under the ticker "SRGA."

**RESPONSE:** Defendant Louw admits the allegations in paragraph 25, except, based on information and belief, denies that RTI "purports" to operate as described, in that RTI does so operate as described.

26. On March 8, 2019, RTI Surgical, Inc. acquired – via a merger-and-acquisition transaction – Paradigm Spine, LLC, a company focused on spinal infusion technology. The resultant company reorganized itself as RTI Surgical Holdings, Inc.

**RESPONSE:** Defendant Louw admits the allegations in paragraph 26.

8

27.    Defendant Camille I. Farhat ("Farhat") has served as the Company's Chief Executive Officer ("CEO") since March 2017.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 27, except he admits that Farhat served as the Company's Chief Executive Officer for a period of time beginning in March 2017.

28.    Defendant Brian K. Hutchison ("Hutchison") served as the Company's CEO from December 2001 until December 2016.

**RESPONSE:** Defendant Louw admits the allegations in paragraph 28.

29.    Defendant Jonathon M. Singer ("Singer") has served as the Company's Chief Financial Officer ("CFO") and Administrator since September 2017. On January 10, 2020, RTI promoted Defendant Singer to Chief Operating Officer ("COO"), contingent and effective upon the Company's proposed sale of its OEM business. Less than three weeks before the disclosure that marked the end of the Class Period, Defendant Singer sold 11,450 Company shares on inside information, for a gain of approximately $44,444.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 29, except he admits that Jonathon Singer was named the Company's Chief Financial and Administrative Officer, Corporate Secretary in September 2017 and that on January 10, 2020, the Company promoted Defendant Singer to Chief Operating Officer.

30.    Defendant Robert P. Jordheim ("Jordheim") served as the Company's Executive Vice President and CFO from July 2013 until September 2017, and interim CEO from December 2016 until March 2017.

**RESPONSE:** Defendant Louw admits the allegations in paragraph 30.

31.    Defendant Johannes W. Louw ("Louw") served as the Company's Vice President of Financial Planning and Analysis from September 2018 until April 2020, when he was terminated from RTI. On January 10, 2020, less than three months prior to Defendant Louw's termination, RTI promoted him to CFO, contingent and effective upon the Company's proposed sale of its OEM business.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 31, except he admits that he served as the Company's Vice President of Financial Planning and Analysis from September 2018 until April 2020, after which time he was no longer with the Company.

32.     Defendants Farhat, Hutchinson, Singer, Jordheim, and Louw are sometimes referred to herein as the "Individual Defendants."

**RESPONSE:** Defendant Louw admits the allegations in paragraph 32 as alleged, but denies that he is properly named as a defendant in this matter.

33.     Each of the Individual Defendants:

- directly participated in the management of the Company;

- was directly involved in the day-to-day operations of the Company at the highest levels;

- was privy to confidential proprietary information concerning the Company and its business and operations;

- was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

- was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

- was aware of or recklessly disregarded the fact that the false and misleading statements alleged herein were being issued about the Company; and/or

- approved or ratified said false and misleading statements about the Company in violation of the federal securities laws.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 33 as they pertain to him, and with respect to the other Defendants, Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

34.     RTI is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as

10

all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

**RESPONSE:** Defendant Louw is without sufficient knowledge and information as to the

allegations in paragraph 34, and therefore denies them.

35. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to RTI under *respondeat superior* and agency principles.

**RESPONSE:** Defendant Louw is without sufficient knowledge and information as to the

allegations in paragraph 35, and therefore denies them.

36. Defendant RTI and the Individual Defendants are referred to herein, collectively, as the "Defendants."

**RESPONSE:** Defendant Louw admits the allegations in paragraph 36, but denies he is

properly named as a defendant in this matter.

## SUBSTANTIVE ALLEGATIONS

### Company Background

37. RTI is a global provider of biologic, metal and synthetic implants, which are used in sports medicine, general surgery, spine, orthopedic and trauma procedures.

**RESPONSE:** Defendant Louw admits the allegations in paragraph 37.

38. RTI came into existence in 1998 as a spin off from the University of Florida, which transferred its tissue allograft procedures, associated equipment, and agreements to a newly formed company, Regeneration Technologies.

**RESPONSE:** Defendant Louw admits the allegations in paragraph 38.

39. Regeneration Technologies went public in 2000 and subsequently experienced a measure of success with its allograft technologies. In February 2008, the Company formed RTI Biologics, which specialized in sterile biologic implants for surgeries. In 2013, The Company purchased Pioneer Surgical Technology, which expanded the Company's product portfolio to include metal and synthetic based implants. By this time, the Company was known as RTI Surgical, Inc.

**RESPONSE:** Defendant Louw admits the allegations in paragraph 39.

40. Before and during the Class Period, the Company had four main lines of businesses comprised of four franchises: (i) spine; (ii) sports; (iii) OEM; and (iv) international.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 40.

41. During the Class Period, OEM accounted for the largest portion of the Company's overall revenue within its franchises. During the fiscal year ended December 31, 2018, for example, OEM reportedly accounted for 43% of RTI's total revenues.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 41, except he admits that in its Form 10-K filed for the year-ended December 31, 2018, the Company reported that OEM had accounted for 43% of the Company's total revenues.

42. Prior to the submission of the Company's annual report in March 2018, RTI referred to "OEM Channels" as "Commercial Channels."

**RESPONSE:** Defendant Louw denies the allegations in paragraph 42, except he admits that the Company sometimes referred to "Commercial Channels."

43. During the Class Period, Defendants regularly informed investors that they were in the process of implementing – or had implemented – ASC 606, a new accounting measure. By their own admission, this required Defendants to perform a detailed review of RTI's agreements, review all types of customer contracts, and go through the five step process outlined in the new revenue recognition standard for each type of contract.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 43, except he admits that the Company disclosed that it was implementing and evaluating the impact of ASC 606.

44. During the Class Period, Defendants repeatedly informed investors and analysts that they would undertake, and were undertaking, a comprehensive strategic review of the company's business lines and operations to leverage the company's expertise, technology and products and to identify opportunities that could generate the most value for RTI's customers, employees, and shareholders.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 44.

12

45.     On March 8, 2019, RTI Surgical, Inc. acquired Paradigm Spine, LLC, a motion preservation and non-fusion spinal implant technology company, and reorganized as RTI Surgical Holdings, Inc, the corporate Defendant here. Thereafter, RTI Surgical, Inc. became a wholly owned subsidiary of Defendant RTI, a successor reporting company.

**RESPONSE:** Defendant Louw admits the allegations in paragraph 45.

46.     In the fourth quarter of 2019, RTI reorganized to operate under two operating segments: Global Spine and Global OEM. The Global Spine segment focused on sales, distribution, and research and development activities for the global spine market, whereas the Global OEM segment focused on the design, development, and manufacturing of biologics and hardware medical technology.

**RESPONSE:** Defendant Louw admits the allegations in paragraph 46.

### The Company Fraudulently Manipulation (sic) the OEM Business's Revenues

47.     Despite reporting record results for the OEM business in second quarter 2019, the Company announced on January 13, 2020 that it had entered into a "definitive agreement" to sell its OEM Business to Montagu.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 47, except he admits that the Company reported results for the OEM business in the second quarter of 2019, and that the Company announced on January 13, 2020, that it had entered into a "definitive agreement" to sell the OEM business to Montagu.

48.     Shares of RTI jumped over 63%, from $2.76 per share to $4.51 per share, upon the announcement of the deal.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 48, and therefore denies them.

49.     According to Defendants, the sale meant that RTI would become a pure play on its smaller spine business, combined with a very large net cash position. Defendant Farhat publicly claimed to be "excited" by the value created by the OEM transaction.

**RESPONSE:** Defendant denies the allegation in paragraph 49 as it relates to himself, and with respect to his co-defendants Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

50.     The Company had other reasons to jettison what it had portrayed to investors as its most profitable segment. Unbeknownst to investors, RTI, as early as 2014, had been improperly recognizing and reporting revenue for certain contractual arrangements, primarily with customers in the Company's core OEM business.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 50.

51.     RTI leadership regularly prodded account managers to ask customers to accept early shipments for purchase orders so that RTI could hit its revenue targets. Where that option was unavailable, management went so far as to order shipments to go out early without the customer's permission.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 51.

52.     Through that conduct, RTI portrayed potential future sales as current sales. As a result, RTI consistently manipulated its reported revenues and other material financial metrics during each quarter and fiscal year (*see* ¶¶225-237, *infra*). Simply put, RTI reported to investors that, during a financial period, the Company had made more sales than the Company, in fact, had made during that period. Moreover, RTI's scheme perpetuated, with each subsequent financial period requiring fraudulent reporting to maintain the optics of profitability.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 52.

53.     As the Company entered a new financial period, Defendants had previously [and improperly] recognized some of the sales and revenues that should have been reported for that period. Deprived of those sales, the current financial period faced worse results. Therefore, Defendants, once again, had to take sales slated for a future financial period and, instead, improperly book those sales in the current period. As a consequence, RTI's financials remained materially inaccurate, violated the relevant accounting policies and principles (*see* ¶¶54-66), and provided investors with a materially misleading understanding of RTI's business.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 53.

14

## Relevant Accounting Policies and Principles

### 1. GAAP Requirements Generally

54. Generally Accepted Accounting Principles ("GAAP") are the principles recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practices at a particular time, against which financial presentations should be measured. GAAP are the official accounting standards and have been codified and are primarily promulgated by the Financial Accounting Standards Board ("FASB").

**RESPONSE:** Defendant Louw denies the allegations in paragraph 54, except he admits that the FASB has promulgated certain Accounting Standards Codification including GAAP.

55. The SEC requires that public companies present financial statements in accordance with GAAP. SEC Regulation S-X (17 C.F.R. § 210.4-01(a)(1)) states that financial statements filed with the SEC that are not prepared in compliance with GAAP are presumed to be misleading and inaccurate, despite footnotes and other disclosures.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 55, and refers to GAAP and SEC Regulation S-X (17 C.F.R. § 210.4-01(a)(1)) for their true and correct contents.

56. Regulation S-X also requires that interim financial statements comply with GAAP, with the exception that interim financial statements need not include disclosures that would be duplicative of disclosures accompanying annual disclosures, pursuant to 17 C.F.R. § 210.10-01(a).

**RESPONSE:** Defendant Louw denies the allegations in paragraph 56, and refers to SEC Regulation S-X (17 C.F.R. § 210.4-01(a)(1)) for its true and correct contents.

### 2. Accounting Standards Governing Restatements

57. A restatement is a revision of a previously issued financial statement to correct an error.

**RESPONSE:** Defendant Louw admits this is the common understanding of a restatement in the context of a company's public filings, but denies the allegation in paragraph 57 in so much as it insinuates or implies that RTI's June 2020 Restatement was to correct an error allegedly caused by him.

15

58.    GAAP rules governing the circumstances under which an entity should or must correct and/or amend previously issued financial statements, are reflected primarily in ASC 250, Accounting Changes and Error Corrections. An "Error in Previously Issued Financial Statements" is defined as:

An error in recognition, measurement, presentation, or disclosure in financial statements resulting from mathematical mistakes, mistakes in the application of generally accepted accounting principles (GAAP), or ***oversight or misuse of facts that existed at the time the financial statements were prepared.*** A change from an accounting principle that is not generally accepted to one that is generally accepted is a correction of an error.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 58, except he admits that

ASC 250 contains the material quoted.

### 3.    Relevant Internal Control Standards

59.    Management plays a critical role in the operation and growth of a company, such as establishing the internal control environment within which employees function. The Committee of Sponsoring Organizations of the Treadway Commission Report ("COSO Report") defines internal control as a process that is "designed to provide reasonable assurance regarding the achievement of objectives" related to the effectiveness and efficiency of operations, the reliability of financial reporting, and compliance with applicable laws and regulations. COSO Report, Executive Summary. RTI indicated in its public Class Period filings that its management evaluates internal controls according to the standards of the COSO Report.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 59, and refers to the

Committee of Sponsoring Organizations of the Treadway Commission Report ("COSO

Report") for its true and correct contents.

60.    Generally accepted auditing standards ("GAAS") outline the responsibilities of an auditor of an entity's financial statements (among other things), but also explains that management is responsible for the preparation of those financial statements. It states, in relevant part:

The financial statements are management's responsibility. The auditor's responsibility is to express an opinion on the financial statements. ***Management is responsible for adopting sound accounting policies and for establishing and maintaining***

16

*internal control* that will, among other things, initiate, record, process, and report transactions (as well as events and conditions) consistent with management's assertions embodied in the financial statements. The entity's transactions and the related assets, liabilities, and equity are within the direct knowledge and control of management. The auditor's knowledge of these matters and internal control is limited to that acquired through the audit. Thus, ***the fair presentation of financial statements in conformity with generally accepted accounting principles is an implicit and integral part of management's responsibility***. (Auditing Standard ("AS") 1001.03.)

**RESPONSE:** Defendant Louw denies the allegations in paragraph 60, and refers to GAAS for its true and correct contents.

61.     Management is responsible for establishing and maintaining adequate internal control over financial reporting as defined in Rule 13a-15(f) under the Exchange Act. The Company's internal control over financial reporting is designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with GAAP.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 61, and refers to SEC Rule § 24013a-15 for its true and correct contents.

62.     The term "reliable," as used in the COSO Report, requires that financial statements prepared for external purposes be fairly presented in conformity with GAAS and regulatory requirements. The requirement of reliable financial reporting applies to published financial statements, including interim and consolidated financial statements, and selected financial data, such as earnings releases, derived from these financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 62, and refers to the COSO Report for its true and correct contents.

63.     Internal control over financial reporting, as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act, is a process designed by, or under the supervision of, the CEO and CFO and is effected by the Board of Directors, management and other personnel to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external reporting purposes in accordance with U.S. GAAP.

17

Internal control over financial reporting includes those policies and procedures that:

- pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the Company;

- provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with US GAAP, and that the receipts and expenditures of the Company are being made only in accordance with appropriate authorization of management and the board of directors; and

- provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of the Company's assets that could have a material effect on the financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 63, and refers to the cited

rules for their true and correct contents.

64. The COSO Report recognizes that the chief executive officer sets the "tone at the top" that affects integrity, ethics, and other factors of a positive control environment. "In any organization, 'the buck stops' with the chief executive. He or she has ultimate ownership responsibility for the internal control system .... The influence of the CEO on an entire organization cannot be overstated." COSO Report, Chapter 8, p. 84. The chief executive fulfills this duty by providing leadership and direction to senior managers and reviewing the way they are controlling the business.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 64, and refers to the COSO

report for its true and correct contents.

65. The Company's Code of Conduct provided, at all relevant times, that each employee must "[p]rovide full, fair, accurate, timely and understandable disclosure in reports and documents that the Company files or submits to the Securities and Exchange Commission and in other public communications made by the Company."

**RESPONSE:** Defendant Louw admits the Code of Conduct includes the quoted statement.

66. The Company's Code of Conduct required, at all relevant times, that each employee must "[r]ecognize and report possible violations of this Code, as well as all policies, guidelines, applicable laws and regulatory requirements under which the Company operates."

18

**RESPONSE:** Defendant Louw admits the Code of Conduct included the quoted statement.

## Statements of Former and Third-Party Employees

67. Former Employee ("FE") 1, was Director of Corporate Accounts at RTI Surgical from September 2010 to January 2015. FE1 was based in Chicago, Illinois, and reported to Mike LaPrade ("LaPrade"), Vice-President and General Manager of Sales, Sales Training, Sales Operations, Strategic Marketing – General Surgery Division.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 67, and therefore denies them, except he admits that Mike LaPrade was RTI's Vice-President and General Manager of Sales, Sales Training, Sales Operations, Strategic Marketing – General Surgery Division.

68. FE1 stated that, on orders from top executives, RTI Surgical regularly asked its largest customer, Medtronic, to accept shipment of orders earlier than planned so that the order would come in before the end of a quarter.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 68, and therefore denies them.

69. In one instance, FE1 was instructed to ask Medtronic if RTI could ship an order worth $2 to $3 million early, but FE1's contact at Medtronic, after asking his boss, said Medtronic did not want it early. RTI, however, shipped the order early anyway. FE1 was later subject to complaints from Medtronic about the early shipping that were ultimately resolved by FE1's superiors at RTI.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 69, and therefore denies them.

70. FE1 personally heard Steven Hansen, who was responsible for RTI's account with Stryker Corporation ("Stryker"), a medical technology company, complain that he was having trouble getting business from Stryker and that RTI's requests to send orders early and delay orders were making things more difficult.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 70, and therefore denies them.

19

71.     In 2013, FE1 confronted FE1's boss, LePrade, about the inappropriate "income smoothing" at RTI that was being done to present a better picture to investors. "Income smoothing," according to FE1, refers to the practice of pushing orders ahead and holding orders behind to help with earnings calls and financial reporting. LePrade shrugged in response to FE1's allegations, but, shortly thereafter, the SEC initiated an investigation of RTI's practices.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 71, and therefore denies them.

72.     FE2 was a Senior Executive Assistant at RTI from 2000 to February 2017, and was based at the Company's headquarters in Alachua, Florida.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 72, and therefore denies them.

73.     While serving as executive assistant to the Executive Vice President of Commercial Distribution (OEM customers), Robby Lane ("Lane"), FE2 sat in on two to three meetings during which Lane discussed the practice of early shipping to RTI customers. In addition to Lane and FE2, these meetings were attended by Cristina Slade, a brand manager; Michael Emokpae, a high-level executive in the finance department who reported to Defendant Louw; aa well as FE1, the account manager responsible for Medtronic whose testimony FE2 corroborates.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 73, and therefore denies them.

74.     FE2 explained that the conversations in question took place during a series of regular weekly meetings in which attendees provided updates about their areas of responsibility. The in-person meetings took place around a table in the center of the commercial division's office in Alachua, while attendees like FE1, who was located in Chicago, attended the meetings via video conference.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 74, and therefore denies them.

75.     FE3 worked at RTI Surgical for fifteen years and reported to Defendant Hutchison during that time. FE3 was hired in 2002 to run the tissue donation business, but he was soon also running sales and marketing the for-profit side of RTI, then known as Regeneration Technologies.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 75, and therefore denies them.

76. Later, FE3 had expanded responsibilities for managing revenue: for a time, everyone in the company reported to FE3 with the exception of the CFO.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 76, and therefore denies them.

77. FE3's employment with RTI ended in November 2017.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 77, and therefore denies them.

78. Corroborating FE1 and FE2, FE3 confirmed it was commonplace for RTI to ship orders early to customers so the Company could meet monthly and quarterly revenue targets.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 78, and therefore denies them.

79. FE3 confirmed that the practice was particularly commonplace at the end of a quarter or the end of the month.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 79, and therefore denies them.

80. For example, if RTI was going to fall short for second quarter revenues, the Company would make some phone calls in the last days of June to find a customer willing to accept an early shipment for a purchase that was already scheduled for shipment to the customer in July.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 80, and therefore denies them.

81. If the shipment went out before the end of June, RTI could recognize the revenue for that purchase order in the second quarter instead of waiting to booking it in July as it had previously been scheduled.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 81, and therefore denies them.

82. FE3 recalled that if the direct side of the business was going to fall short of revenue targets for a month or a quarter, the Company would approach its OEM customers to accept orders early to cover the shortfall occurring on the direct end-use customer side.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 82, and therefore denies them.

83. RTI employee Terri Oto ("Oto") managed accounts for OEM dental product distributers and who worked directly under FE3. Notably, Defendants claimed throughout the Class Period that the "dental market" was critical to the performance of the commercial/OEM channel. *See, e.g.*, ¶¶115, 129, 158, 163, *infra.*

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 83, and therefore denies them, except he admits that Terri Oto managed accounts for OEM dental product distributers and states that the Company or its employees commented on the dental market during the Class Period.

84. According to FE3, Oto was forced out of RTI as retaliation for refusing to do what Vice-President of Operations John Varela ("Varela") wanted her to do regarding an early shipment to a customer.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 84, and therefore denies them.

85. Worried that RTI was not going to hit its revenue targets, Varela told Oto to ship product early to a customer despite that customer's unwillingness to accept the shipment early as it had been doing.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 85, and therefore denies them.

86. In another instance, Defendant Jordheim told Oto that RTI needed to book additional revenue before the end of the quarter and that the Company would be shipping a purchase order early to one of Oto's hernia product distributors.

22

The customer had previously told Oto they did not want to accept early shipments. When Oto raised the customer's unwillingness with Jordheim, he ordered the shipment to go ahead anyway.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 86, and therefore denies them.

87. Ultimately, because Oto refused to do the early shipments that Varela demanded, she was put on a performance improvement plan that was impossible for her to satisfy and was then compelled to resign.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 87, and therefore denies them.

88. FE4 was employed at Medtronic from 2006 to October 2015. FE4 dealt with RTI in FE4's capacity as a materials planner.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 88, and therefore denies them.

89. FE4 corroborates FE1, FE2, and FE3 in attesting to RTI's practice of shipping products in months other than the months those products were due to arrive. FE4 said, for example, the purchase order for the product would be for an Oct. 4 delivery, but Medtronic would receive it September.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 89, and therefore denies them.

90. While FE4 noted that RTI would sometimes obtain Medtronic's agreement in advance of early shipments, FE4 also recalled that RTI shipped products early to Medtronic without first obtaining permission to do so.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 90, and therefore denies them.

91. Echoing FEs 1-3, FE4 stated that RTI shipped products early so they could book the revenue before the end of a quarter.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 91, and therefore denies them.

92. FE4 said Medtronic took possession and owed payment for the RTI products the day the shipment arrived at Medtronic – not the day the products were shipped – which necessitated adjustments to Medtronic's own books. For example, if Medtronic was expecting the shipment on the first of the month in a new quarter, they might receive it instead on the last day of the month for the ending quarter.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 92, and therefore denies them.

### Materially False and Misleading Statements Issued During the Class Period

93. The Class Period begins on March 7, 2016, the when the Company filed a Form 10-K for the fiscal year ended December 31, 2015 (the "2015 10-K") with the SEC. The 2015 10K was signed by Defendants Hutchison and Jordheim. The 2015 10-K stated, in pertinent part, the following concerning the Company's approach to revenue recognition:

> *Revenue Recognition—Revenue is recognized upon shipping, or receipt by the Company's customers of the implant, depending on the Company's distribution agreements with the Company's customers or distributors. Other revenues are recognized when all significant contractual obligations have been satisfied.*
>
> The Company permits returns of implants in accordance with the terms of contractual agreements with customers if the implant is returned in a timely manner, in unopened packaging, and from the normal channels of distribution. *Allowances for returns are provided based upon analysis of the Company's historical patterns of returns matched against the revenues from which they originated.*
>
> *The Company records estimated implant returns, discounts, rebates and other distribution incentives as a reduction of revenue in the same period revenue is recognized.* Estimates of implant returns are recorded for anticipated implant returns based on historical distributions and returns information. Estimates of discounts, rebates and other distribution incentives are recorded based on contractual terms, historical experience and trend analysis. (Emphasis added.)

24

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 93, except (i) he admits that on March 7, 2016, RTI filed with the SEC a Form 10-K for the fiscal year ended December 31, 2015 and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

94.     In the 2015 10-K, RTI claimed that "[w]e recognize revenue upon shipping, or receipt by our customers of the processed tissue for implantation, depending on our distribution agreements with our customers or distributors. *We recognize our other revenues when all appropriate contractual obligations have been satisfied.*" (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 94, except (i) he admits that on March 7, 2016, RTI filed with the SEC a Form 10-K for the fiscal year ended December 31, 2015 and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

95.     The 2015 10-K informed investors that—

> **Our total revenues increased $19.5 million, or 7.4%, to $282.3 million for the year ended December 31, 2015 compared to $262.8 million for the year ended December 31, 2014. Our year over year revenue comparisons were impacted due to a significant amount of our revenue being derived from large commercial stocking distributors, whose timing of orders can vary from year to year**. These ordering patterns can result in significant unit volume variations, which can result in significant variation in period over period comparisons. (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 95, except (i) he admits that on March 7, 2016, RTI filed with the SEC a Form 10-K for the fiscal year ended December 31, 2015 and (ii) without waiving any

25

evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

96.     As to RTI's internal controls over financial reporting, the 2015 10-K stated that, "*as of December 31, 2015, the Company's internal control over financial reporting is effective.*" (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 96 except (i) he admits that on March 7, 2016, RTI filed with the SEC a Form 10-K for the fiscal year ended December 31, 2015; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

97.     The 2015 10-K reassured investors that "*[t]here have been no changes in the Company's internal control over financial reporting during the Company's last fiscal quarter that materially affected, or are reasonably likely to materially affect the Company's internal control over financial reporting.*" (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 97, except (i) he admits that on March 7, 2016, RTI filed with the SEC a Form 10-K for the fiscal year ended December 31, 2015; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

98.     The 2015 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendant Hutchison and Jordheim attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 98 except (i) he admits that on March 7, 2016, RTI filed with the SEC a Form 10-K for the fiscal year ended December 31, 2015; and (ii) without waiving any

evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

99. The statements referenced in ¶¶93-98 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; (5) there were material weaknesses in the Company's internal control over financial reporting, including with respect to the accuracy of journal entries and the accounting for sales returns; (6) RTI's internal controls and procedures were not effective; and (7) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 99.

100. On April 28, 2016, the Company announced first quarter 2016 financial results in a press release filed with the SEC on Form 8-K. Specifically, the Company reported that –

*Worldwide revenues were $67.4 million for the first quarter of 2016 compared to revenues of $68.0 million for the first quarter of 2015*. For the first quarter of 2015, the company benefited from $1.5 million in non-recurring accelerated deferred revenue recognition due to loss of exclusivity by its commercial distributor in the breast reconstruction market. *Domestic revenues were $61.2 million for the first quarter of 2016 compared to revenues of $62.7 million for the first quarter of 2015. International revenues were $6.2 million for the first quarter of 2016*, compared to revenues of $5.3 million for the first quarter of 2015. On a constant currency basis, international revenues for the first quarter of 2016 increased 18 percent compared to the first quarter of 2015. (Emphasis added.)

27

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 100, except (i) he admits that on April 28, 2016, the Company published a press release announcing it first quarter 2016 financial results; and (ii) without waiving any evidentiary objections with respect thereto, refers to the text of the press release for its true and correct contents.

101. The statements referenced in ¶100 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; and (5) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 101.

102. On April 28, 2016, Defendants held a conference call with investors and analysts (the "Q1 2016 Earnings Call"). During the Q1 2016 Earnings Call, Defendants Jordheim and Hutchison repeated the same materially false and/or misleading revenue figures set forth in ¶100 above.

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 102, except (i) he admits that RTI held a conference call on April 28, 2016 with investors and analysts; and (ii) without waiving any evidentiary objections with respect thereto, refers to the transcript of the conference call for its true and correct contents.

103. Referring to OEM, Defendant Hutchison stated that "***we've seen revenue from our commercial business ebb and flow from year-to-year, but trending to***

*growth long-term*. In fact from 2005 through today, our commercial business has achieved compound average annual growth rate of 7%." (Emphasis added).

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 103, except (i) he admits that RTI held a conference call on April 28, 2016 with investors and analysts; and (ii) without waiving any evidentiary objections with respect thereto, refers to the transcript of the conference call for its true and correct contents.

104. The statements referenced in ¶¶102-103 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; Defendants' statements about ; and (5) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 104.

105. That same day, analysts at Craig-Hallum Capital Group ("Craig-Hallum") reiterated their "BUY" rating for RTI on April 28, 2016, noting that "Q1 Revenue Shows Strength In Spine" and that RTI had beat earnings estimates.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 105, and therefore denies them.

106. On May 4, 2016, the Company filed its quarterly report on Form 10-Q for the period ended March 31, 2016 (the "Q1 2016 10-Q"). The Q1 2016 10-Q was signed by Defendants Hutchison and Jordheim and stated, in relevant part:

*Our total revenues decreased by $683,000, or 1.0%, to $67.4 million for the three months ended March 31, 2016 compared to $68.0 million for the three months ended March 31, 2015*. Our global

29

commercial revenue comparisons are impacted due to a significant amount of our revenue being derived from large global commercial stocking distributors, whose timing of orders can vary from quarter to quarter. These ordering patterns can result in significant unit volume variations, which can result in significant variation in quarter over quarter comparisons. (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 106, except (i) he admits that on May 4, 2016, RTI filed with the SEC a quarterly report on Form 10-Q for the quarterly period ended March 31, 2016 (the "Q1 2016 Form 10-Q"); and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

107. The Q1 2016 10-Q went on to state that:

> ***Revenues from global commercial decreased $3.6 million, or 12.4%, to $25.3 million for the three months ended March 31, 2016 compared to $28.9 million for the three months ended March 31, 2015***. Global commercial revenues decreased primarily as a result of lower unit volumes of 7.0% and lower average revenue per unit of 5.9%. The lower average revenue per unit was primarily due to lower stocking orders and changes in distribution mix from our global commercial stocking distributors.

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 107, except (i) he admits that on May 4, 2016, RTI filed with the SEC a Q1 2016 Form 10-Q; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

108. The Q1 2016 10-Q stated, with respect to internal controls, that our Chief Executive Officer and Chief Financial Officer concluded that the design and operation of our disclosure controls and procedures were effective as of the end of the period covered by this report."

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 108, except (i) he admits that on May 4, 2016, RTI filed with the SEC

30

a Q1 2016 Form 10-Q; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

109. The statements referenced in ¶¶106-108 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; (5) there were material weaknesses in the Company's internal control over financial reporting, including with respect to the accuracy of journal entries and the accounting for sales returns; (6) RTI's internal controls and procedures were not effective; and (7) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 109.

110. On July 27, 2016, the Company announced second quarter 2016 financial results in a press release filed with the SEC on Form 8-K. Specifically, the Company reported that –

*Worldwide revenues were $67.6 million for the second quarter of 2016 compared to revenues of $71.6 million for the second quarter of 2015. Domestic revenues were $61 million for the second quarter of 2016 compared to revenues of $66 million for the second quarter of 2015. International revenues were $6.6 million for the second quarter of 2016, compared to revenues of $5.6 million for the second quarter of 2015*. On a constant currency basis, international revenues for the second quarter of 2016 increased 16 percent compared to the second quarter of 2015. (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 110 except (i) he admits that on July 27, 2016, the Company announced second quarter 2016 financial results in a press release filed with the SEC on

31

Form 8-K; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

111. The statements referenced in ¶110 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; and (5) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 111.

112. On July 27, 2016, Defendants held a conference call with investors and analysts (the "Q2 2016 Earnings Call"). During the Q2 2016 Earnings Call, Defendants Jordheim and Hutchison repeated the same materially false and/or misleading revenue figures set forth in ¶110 above.

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 112, except (i) he admits that on July 27, 2016, RTI held a conference call with investors and analysts (the "Q2 2016 Earnings Call"); and (ii) without waiving any evidentiary objections with respect thereto, refers to the transcripts for its true and correct contents.

113. Defendant Jordheim stated that *"[g]lobal commercial revenue of $24.8 million for the second quarter of 2016 decreased 27% compared to the second quarter of 2015, due to lower orders from certain commercial distributors primarily in the spine, trauma, and dental markets.*"

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 113, except (i) he admits RTI held the Q2 2016 Earnings Call; and

(ii) without waiving any evidentiary objections with respect thereto, refers to the transcripts for its true and correct contents.

114. Subsequently, an analyst asked Defendant Jordheim, "[r]egarding the commercial business [OEM], is it one partner that you're having some issues with, or is it a couple of them?"

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 114, except (i) he admits RTI held the Q2 2016 Earnings Call; and (ii) without waiving any evidentiary objections with respect thereto, refers to the transcripts for its true and correct contents.

115. Defendant Jordheim responded as follows:

It's actually – it's primarily one partner. It's our commercial distributor in the trauma and dental businesses. With the major acquisitions made last year by this particular commercial partner, the 2015 inventory balance, ***they've ordered a lot of product from us in an anticipation of our sell-through opportunities or cross-selling opportunities. Those cross-selling opportunities have been slower than expected to materialize. So net-net in 2015, the orders were higher than they probably should have been and we're feeling the impact of that in 2016****.* (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 115, except (i) he admits RTI held the Q2 2016 Earnings Call; and (ii) without waiving any evidentiary objections with respect thereto, refers to the transcripts for its true and correct contents.

116. The statements referenced in ¶¶112-115 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to

customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; (5) Defendants, having expedited shipping and overloaded RTI's commercial customers with orders, bore responsibility for the demand slowdown referred to by Defendant Jordheim; and (6) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 116.

117. On August 4, 2016, the Company filed its quarterly report on Form 10-Q for the period ended June 30, 2016 (the "Q2 2016 10-Q"). The Q2 2016 10-Q was signed by Defendants Hutchison and Jordheim and stated, in relevant part:

*Our total revenues decreased by $4.0 million, or 5.6%, to $67.6 million for the three months ended June 30, 2016 compared to $71.6 million for the three months ended June 30, 2015.* Our direct revenues increased by $5.3 million, or 15.6%, to $39.6 million, offset by our global commercial revenues which decreased by $9.2 million, or 27.1%, to $24.8 million. Our global commercial revenue comparisons are impacted due to a significant amount of our revenue being derived from large global commercial stocking distributors, whose timing of orders can vary from quarter to quarter. These ordering patterns can result in significant unit volume variations, which can result in significant variation in quarter over quarter comparisons.

*Global Commercial: Revenues from global commercial decreased $9.2 million, or 27.1%, to $24.8 million for the three months ended June 30, 2016 compared to $34.0 million for the three months ended June 30, 2015. Global commercial revenues decreased primarily as a result of lower orders from certain commercial distributors, primarily in the dental and trauma markets.* (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 117 except (i) he admits that on August 4, 2016, RTI filed with the SEC a quarterly report on Form 10-Q for the quarterly period ended June 30, 2016 (the "Q2 2016 Form 10-Q"); and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

118. The Q2 2016 10-Q further stated:

34

> ***Our total revenues decreased by $4.7 million, or 3.3%, to $135.0 million for the six months ended June 30, 2016 compared to $139.6 million for the six months ended June 30, 2015.*** Our direct revenues increased by $9.1 million, or 13.2%, to $78.3 million, ***offset by our global commercial revenues which decreased by $12.8 million, or 20.3%, to $50.1 million.*** Our global commercial revenue comparisons are impacted due to a significant amount of our revenue being derived from large global commercial stocking distributors, whose timing of orders can vary from quarter to quarter. These ordering patterns can result in significant unit volume variations, which can result in significant variation in quarter over quarter comparisons.
>
> ***Global Commercial: Revenues from global commercial decreased $12.8 million, or 20.3%, to $50.1 million for the six months ended June 30, 2016 compared to $62.9 million for the six months ended June 30, 2015. Global commercial revenues decreased primarily as a result of lower orders from certain commercial distributors, primarily in the dental and trauma markets.*** (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 118 except (i) he admits that on August 4, 2016, RTI filed the Q2 2016 Form 10-Q; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

119.    The Q2 2016 10-Q stated, with respect to revenue recognition, that "[b]ased upon that evaluation, our Chief Executive Officer and Chief Financial Officer concluded that the design and operation of our disclosure controls and procedures were effective as of the end of the period covered by this report."

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 119, except (i) he admits that on August 4, 2016, RTI filed the Q2 2016 Form 10-Q; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

120.    The statements referenced in ¶¶117-119 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues

35

with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; (5) Defendants, having expedited shipping and overloaded RTI's commercial customers with orders, bore responsibility for the demand slowdown cited in the Q2 2016 10-Q; (6) there were material weaknesses in the Company's internal control over financial reporting, including with respect to the accuracy of journal entries and the accounting for sales returns; (7) RTI's internal controls and procedures were not effective; and (8) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 120.

121. On October 25, 2016, the Company announced third quarter 2016 financial results in a press release filed with the SEC on Form 8-K. Specifically, the Company reported that "*[w]orldwide revenues were $66.5 million for the third quarter of 2016, which were comparable to revenues for the third quarter of 2015. Domestic revenues were $61 million for the third quarter of 2016, which were also comparable to revenues for the third quarter of 2015*."

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the

allegations in paragraph 121, except (i) he admits that on that on October 25, 2016, RTI filed

with the SEC a Form 8-K with the SEC; and (ii) without waiving any evidentiary objections

with respect thereto, refers to the filing for its true and correct contents.

122. The October 25, 2016 press release further stated that:

*International revenues were $5.6 million for the third quarter of 2016, a slight increase compared to revenues of $5.5 million for the third quarter of 2015. On a constant currency basis, international revenues for the third quarter of 2016 increased 2 percent compared to the third quarter of 2015.*

Direct revenues of $38.1 million increased 14 percent for the third quarter of 2016 compared to $33.2 million for the third quarter of 2015. *Commercial and other revenues of $28.5 million decreased 14 percent for the third quarter of 2016 compared to $33.3 million for the third quarter of 2015*. (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 122, except (i) he admits that on that on October 25, 2016, RTI filed with the SEC a Form 8-K with the SEC; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

123. The statements referenced in ¶¶121-122 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; and (5) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 123.

124. Also on October 25, 2016, Defendants held a conference call with investors and analysts (the "Q3 2016 Earnings Call"). During the Q3 2016 Earnings Call, Defendants Jordheim and Hutchison repeated the same materially false and/or misleading revenue figures set forth in ¶122 above.

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 124, except (i) he admits that on that on October 25, 2016, RTI held a conference call with investors and analysts (the "Q3 2016 Earnings Call"); and (ii) without waiving any evidentiary objections with respect thereto, refers to the transcripts for its true and correct contents.

125. Defendant Hutchison stated that "we saw continued strong performance from our direct business with growth of 14% compared to third quarter last year. ***This growth was offset by declines in our commercial business, primarily due to lower orders from our commercial distributors in our spine and orthofixation product line.***" (Emphasis added).

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 125, except (i) he admits that on that on October 25, 2016, RTI held the Q3 2016 Earnings Call; and (ii) without waiving any evidentiary objections with respect thereto, refers to the transcripts for its true and correct contents

126. The statements referenced in ¶¶124-125 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; (5) Defendants, having expedited shipping and overloaded RTI's commercial customers with orders, bore responsibility for the demand slowdown referred to by Defendant Hutchison; and (6) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 126.

127. An analyst reported by Sadif dated November 4, 2016 stated that "RTI Surgical Inc currently has an overall quality rating significantly above the average of its sector." The same report noted RTI's sector-specific rating was attributable in part to the revenue the Company reported.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 127, and therefore denies them.

128. On November 7, 2016, the Company filed its quarterly report on Form 10-Q for the period ended September 30, 2016 (the "Q3 2016 10-Q"). The Q3 2016 10-Q was signed by Defendants Hutchison and Jordheim and stated, in relevant part:

*Our total revenues of $66.5 million for the three months ended September 30, 2016 were comparable to the three months ended September 30, 2015.* Our direct revenues increased by $4.8 million, or

38

> 14.5%, to $38.1 million, *offset by our global commercial revenues which decreased by $4.9 million, or 16.2%, to $25.3 million. Our global commercial revenue comparisons are impacted due to a significant amount of our revenue being derived from large global commercial stocking distributors, whose timing of orders can vary from quarter to quarter. These ordering patterns can result in significant unit volume variations, which can result in significant variation in quarter over quarter comparisons. In addition, global commercial revenues decreased primarily as a result of lower orders from certain commercial distributors, primarily in the spinal and trauma markets*.

> Global Commercial: *Revenues from global commercial decreased $4.9 million, or 16.2%, to $25.3 million for the three months ended September 30, 2016 compared to $30.2 million for the three months ended September 30, 2015.* **Global** *commercial revenues decreased primarily as a result of lower orders from certain commercial distributors, primarily in the spinal and trauma markets*. (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 128, except he admits (i) that on November 7, 2016, RTI filed with the SEC a quarterly report on Form 10-Q for the quarterly period ended September 30, 2016 (the "Q3 2016 Form 10-Q"); and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

129.   The Q3 2016 10-Q further stated that:

> *Our total revenues decreased by $4.7 million, or 2.3%, to $201.5 million for the nine months ended September 30, 2016 compared to $206.2 million for the nine months ended September 30, 2015.* Our direct revenues increased by $13.9 million, or 13.6%, to $116.3 million, offset by our global commercial revenues which decreased by $17.7 million, or 19.0%, to $75.4 million. Our global commercial revenue comparisons are impacted due to a significant amount of our revenue being derived from large global commercial stocking distributors, whose timing of orders can vary from quarter to quarter. These ordering patterns can result in significant unit volume variations, which can result in significant variation in quarter over quarter comparisons. In addition, global commercial revenues decreased primarily as a result of lower orders from certain commercial distributors, primarily in the spinal, dental and trauma markets.

Global Commercial: ***Revenues from global commercial decreased $17.7 million, or 19.0%, to $75.4 million for the nine months ended September 30, 2016 compared to $93.1 million for the nine months ended September 30, 2015.*** Global commercial revenues decreased primarily as a result of lower orders from certain commercial distributors, primarily in the spinal, dental and trauma markets. (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 129, except he admits that (i) that on November 7, 2016, RTI filed with the SEC the Q3 2016 Form 10-Q; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

130. The Q3 2016 10-Q stated, with respect to internal controls, "our Chief Executive Officer and Chief Financial Officer concluded that the design and operation of our disclosure controls and procedures were effective as of the end of the period covered by this report."

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 130, except he admits that (i) that on November 7, 2016, RTI filed with the SEC the Q3 2016 Form 10-Q; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

131. The statements referenced in ¶¶128-130 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; (5) Defendants, having expedited shipping and overloaded RTI's commercial customers with orders, bore responsibility for the demand slowdown referred to in this Q3 2016 10-Q; and (6) there were material weaknesses in the Company's internal control over financial reporting,

40

including with respect to the accuracy of journal entries and the accounting for sales returns; (7) RTI's internal controls and procedures were not effective; and (8) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 131.

132. On February 23, 2017 the Company announced fourth quarter 2016 financial results in a press release filed with the SEC on Form 8-K. The February 23 press release stated, in pertinent part:

**Fourth Quarter 2016**

*Worldwide revenues were $71.3 million for the fourth quarter of 2016, a decrease of 6 percent, domestic revenues were $64.6 million, a decrease of 9 percent, and international revenues were $6.8 million, an increase of 24 percent from 2015's fourth quarter. The decrease in domestic revenue was primarily due to lower orders in the commercial /other business in 2016 coming off a very strong 2015*; partially offset by strong growth in the domestic direct businesses. The increase in international revenues was mainly driven by growth in Asia, primarily in Spine. (Emphasis added.)

*Direct revenues were $44.5 million for the fourth quarter of 2016, an increase of 22 percent compared to the fourth quarter of 2015*, with particular strength in Spine. RTI's spine business continues to be one of the fastest-growing spine businesses in the U.S., primarily due to increases in surgeon users and distributor relationships. *Commercial/other revenues were $26.8 million for the fourth quarter of 2016.* (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 132, except he admits that (i) that on February 23, 2017, RTI filed with the SEC a Form 8-K; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

133. The press release also stated, in pertinent part:

**Full Year 2016**

*Worldwide revenues were $272.9 million for the full year 2016, a decrease of 3 percent compared to revenues for the full year 2015, mainly due to the same factors impacting fourth quarter 2016 worldwide revenues. Domestic revenues were $247.8 million for the full year 2016, a decrease of 5 percent compared to domestic revenues for the full year*

41

*2015. International revenues were $25.1 million for the full year 2016, an increase of 15 percent compared to international revenues for the full year 2015. On a constant currency basis, international revenues for the full year 2016 increased 15 percent compared to international revenue for the full year 2015.*

Direct revenues were $160.8 million for the full year 2016, an increase of 16 percent compared to direct revenues for the full year 2015. The company experienced double digit growth in the spine, surgical specialties, cardiothoracic, and international businesses. *Commercial/other revenues were $112 million for the full year 2016, a decrease of 22 percent compared to commercial/other revenues for the full year 2015. The decline in commercial/other business is primarily related to significantly high orders in 2015 with lower orders in 2016, however the commercial business showed signs of stabilization during the year.*

In addition, RTI is taking actions to reinvigorate this business by strengthening relationships and investing in innovation. (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 133, except he admits that (i) that on February 23, 2017, RTI filed with the SEC a Form 8-K; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents

134. The statements referenced in ¶¶132-133 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; (5) Defendants, having expedited shipping and overloaded RTI's commercial customers with orders, bore responsibility for the demand slowdown referred to in the press release; and (6) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 134.

135. That same day, February 23, 2017, Defendants held a conference call with investors and analysts (the "Q4 2016 Earnings Call"). During the Q4 2016 Earnings Call, Defendant Jordheim, commenting on RTI's lackluster fourth quarter 2016 and full-year earnings, pledged improvements based on the Company's purportedly ongoing efforts:

The Board and management team have begun to strategically direct investments in the company toward areas where we see the greatest growth potential. This effort has already started to deliver results as evidenced by the strong double-digit growth we are seeing in our direct businesses and **the signs of stabilization we are seeing in our commercial business**. (Emphasis added.)

**RESPONSE:** Defendant Louw denies the allegations in paragraph 135, except he admits that

(i) that on February 23, 2017, RTI held a conference call with investors and analysts and (ii)

without waiving any evidentiary objections with respect thereto, refers to the transcripts of

the call for its true and correct contents.

136. On the same call, Defendant Louw stated that "[d]espite the decline, **we saw signs of stabilization in the commercial/other business during the year as the commercial/other business averaged $28 million over the last four quarters of 2016**."

**RESPONSE:** Defendant Louw denies the allegations in paragraph 136, except he admits that

(i) that on February 23, 2017, RTI held a conference call with investors and analysts; and (ii)

without waiving any evidentiary objections with respect thereto, refers to the transcripts of

the call for its true and correct contents. Defendant Louw further specifically denies making

any materially false or misleading misstatements on this call, and specifically denies any

wrongdoing whatsoever.

137. The statements referenced in ¶¶135-136 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues

43

with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false, and any inferences concerning growth drawn from those figures was also false; (5) Defendants, having expedited shipping and overloaded RTI's commercial customers with orders, bore responsibility for the demand slowdown referred to by Defendant Louw; and (6) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 137.

138. On March 13, 2017, the Company filed a Form 10-K for the year ended December 31, 2016 (the "2016 10-K") with the SEC. The 2016 10-K was signed by Defendants Hutchison and Louw. The 2016 10-K contained signed SOX certifications by Defendant Hutchison and Louw attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 138, except he admits that (i) that on March 13, 2017, RTI filed with the SEC a Form 10-K for the fiscal year ended December 31, 2016 (the "2016 10-K"); and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

139. The 2016 10-K stated, in pertinent part, the following concerning the Company's approach to revenue recognition:

*Revenue Recognition—Revenue is recognized upon shipping, or receipt by the Company's customers of the implant, depending on the Company's distribution agreements with the Company's customers or distributors. Other revenues are recognized when all significant contractual obligations have been satisfied.*

The Company permits returns of implants in accordance with the terms of contractual agreements with customers if the implant is returned in a timely manner, in unopened packaging, and from the normal channels of distribution. *Allowances for returns are provided based upon analysis of the Company's historical patterns of returns matched against the revenues from which they originated.*

44

> ***The Company records estimated implant returns, discounts, rebates and other distribution incentives as a reduction of revenue in the same period revenue is recognized****.* Estimates of implant returns are recorded for anticipated implant returns based on historical distributions and returns information. Estimates of discounts, rebates and other distribution incentives are recorded based on contractual terms, historical experience and trend analysis.
>
> Other revenues consists of service processing, tissue recovery fees, biomedical laboratory fees, recognition of previously deferred revenues, shipping fees, distribution of reproductions of our allografts to distributors for demonstration purposes and restocking fees which is included in revenues. (Emphasis added.)

**RESPONSE:** Defendant Louw denies the allegation in paragraph 139 except he admits that (i) that on March 13, 2017, RTI filed with the SEC 2016 10-K; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

140. As to RTI's internal controls over financial reporting, the 2016 10-K stated that, "as of December 31, 2016, the Company's internal control over financial reporting is effective."

**RESPONSE:** Defendant Louw denies the allegations in paragraph 140, except he admits that (i) that on March 13, 2017, RTI filed with the SEC the 2016 10-K; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

141. The statements referenced in ¶¶138-140 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-

45

(3), Defendants' reported revenue figures were false; (5) there were material weaknesses in the Company's internal control over financial reporting, including with respect to the accuracy of journal entries and the accounting for sales returns; (6) RTI's internal controls and procedures were not effective; and (7) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 141. Defendant Louw further specifically denies making any materially false or misleading misstatements in the 2016 10-K, and specifically denies any wrongdoing whatsoever.

142. On May 3, 2016, the Company filed its quarterly report on Form 10-Q for the period ended March 31, 2017 (the "Q1 2017 10-Q"). The Q1 2017 10-Q was signed by Defendants Farhart and Jordheim and stated, in relevant part:

Total Revenues. ***Our total revenues of $69.9 million for the three months ended March 31, 2017, increased $2.6 million, or 3.8%, compared to $67.4 million for the three months ended March 31, 2016***. Our direct revenues increased by $5.1 million, or 13.3%, to $43.8 million, offset by our global commercial revenues which decreased by $1.7 million, or 6.9%, to $23.6 million. Our global commercial revenue comparisons are impacted due to a significant amount of our revenue being derived from large global commercial stocking distributors, whose timing of orders can vary from quarter to quarter. These ordering patterns can result in significant unit volume variations, which can result in significant variation in quarter over quarter comparisons. In addition, global commercial revenues decreased primarily as a result of lower orders from certain commercial distributors, primarily in the orthopedics and trauma markets.

Global Commercial: ***Revenues from global commercial decreased $1.7 million, or 6.9%, to $23.6 million for the three months ended March 31, 2017, compared to $25.3 million for the three months ended March 31, 2016. Global commercial revenues decreased primarily as a result of lower orders from certain commercial distributors***, primarily in the orthopedics and trauma markets.

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 142, except he admits that (i) that on May 3, 2017, RTI filed with the SEC a quarterly report on Form 10-Q for the quarterly period ended March 31, 2017 (the

"Q1 2017 Form 10-Q"); and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

143.    With respect to internal controls, the Q1 2017 10-Q stated that, "our Chief Executive Officer and Chief Financial Officer concluded that the design and operation of our disclosure controls and procedures were effective as of the end of the period covered by this report."

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 143, except he admits that (i) that on May 3, 2017, RTI filed with the SEC the Q1 2017 Form 10-Q; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

144.    The statements referenced in ¶¶142-143 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; (5) Defendants, having expedited shipping and overloaded RTI's commercial customers with orders, bore responsibility for the demand slowdown cited in the Q1 2017 10-Q; (6) there were material weaknesses in the Company's internal control over financial reporting, including with respect to the accuracy of journal entries and the accounting for sales returns; (7) RTI's internal controls and procedures were not effective; and (8) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 144.

145.    On August 9, 2017, the Company announced second quarter 2017 financial results in a press release filed with the SEC on Form 8-K. Specifically, the Company reported that –

***RTI worldwide revenues were $72.1 million for the second quarter of 2017, an increase of 7 percent.*** Direct revenues were $43.6 million

47

for the second quarter of 2017, an increase of 10 percent compared to the second quarter of 2016, with double-digit growth reported in RTI's spine, surgical specialties and cardiothoracic direct business segments. ***Commercial/other revenues were $28.6 million for the second quarter of 2017, an increase of 2 percent compared to the second quarter of 2016****.* (Emphasis added).

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the

allegations in paragraph 145, except he admits that (i) that on August 9, 2017, RTI filed with

the SEC a Form 8-K; and (ii) without waiving any evidentiary objections with respect thereto,

refers to the filing for its true and correct contents.

146. In the same press release, Defendant Farhat stated that, "***[o]ur Commercial business continues to stabilize***, our direct business delivered another quarter of strong performance and our Spine business continues to grow at above-market rates. ***We are encouraged by our strong second quarter results*** and remain laser-focused on implementing our strategic initiatives and generating value for our employees, customers and shareholders."

**REPSONSE:** To the extent these allegations are directed at Defendant Louw, he denies the

allegations in paragraph 146, except he admits that (i) that on August 9, 2017, RTI filed with

the SEC a Form 8-K; and (ii) without waiving any evidentiary objections with respect thereto,

refers to the filing for its true and correct contents.

147. The statements referenced in ¶¶145-146 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false, as were inferences, such as Defendant Farhat's, that were based on those figures; and (5) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 147.

148.     On August 8, 2017, Defendants held a conference call with investors and analysts (the "Q2 2017 Earnings Call"). During the Q2 2017 Earnings Call, Defendants Jordheim and Farhat repeated the same materially false and/or misleading revenue figures set forth in ¶145, above.

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 148, except he admits that except he admits that (i) that on August 8, 2017, RTI held a conference call with investors and analysts; and (ii) without waiving any evidentiary objections with respect thereto, refers to the transcripts of the call for its true and correct contents.

149.     On the same call, Defendant Farhat stated, that ***"I'm pleased to report that commercial continues to stabilize and has returned to growth, the first time we have reported top line growth in this business in five quarters, and we intend to continue to work on improving its performance."*** (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 149, except he admits that (i) that on August 8, 2017, RTI held a conference call with investors and analysts; and (ii) without waiving any evidentiary objections with respect thereto, refers to the transcripts of the call for its true and correct contents.

150.     Likewise, Defendant Jordheim stated that ***"[o]ur commercial business continues to stabilize and grew 4% in the second quarter. We are starting to see the results of our cost reduction initiatives."*** (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 150, except he admits that (i) that on August 8, 2017, RTI held a conference call with investors and analysts; and (ii) without waiving any evidentiary

49

objections with respect thereto, refers to the transcripts of the call for its true and correct contents.

151.    Defendant Farhat further stated that, "***I think you have seen consistently that our direct channel is working in every part of the business.***" (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 151, except he admits that (i) that on August 8, 2017, RTI held a conference call with investors and analysts; and (ii) without waiving any evidentiary objections with respect thereto, refers to the transcripts of the call for its true and correct contents.

152.    The statements referenced in ¶¶148-151 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; (5) revenue in the direct division had been inflated in July 2017 through an improper $30,000 adjustment; and (6) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 152.

153.    On August 9, 2017, the Company filed its quarterly report on Form 10-Q for the period ended June 30, 2017 (the "Q2 2017 10-Q"). The Q2 2017 10-Q was signed by Defendants Farhart and Jordheim and stated, in relevant part:

Total Revenues. ***Our total revenues of $72.1 million for the three months ended June 30, 2017, increased $4.5 million, or 6.7%, compared to $67.6 million for the three months ended June 30, 2016***. Our direct revenues increased by $4.0 million, or 10.0%, to $43.6 million, and our global commercial revenues increased by $1.1 million, or 4.3%,

50

to $25.8 million. Our global commercial revenue comparisons are impacted due to a significant amount of our revenue being derived from large global commercial stocking distributors, whose timing of orders can vary from quarter to quarter. These ordering patterns can result in significant unit volume variations, which can result in significant variation in quarter over quarter comparisons. *In addition, global commercial revenues increased primarily as a result of higher orders from certain commercial distributors, primarily in the dental and trauma markets.* (Emphasis added.)

Global Commercial: Revenues from global commercial increased $1.1 million, or 4.3%, to $25.8 million for the three months ended June 30, 2017, compared to $24.8 million for the three months ended June 30, 2016. *Global commercial revenues increased primarily as a result of higher orders from certain commercial distributors, primarily in the dental and trauma markets.*

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 153, except he admits that except he admits that (i) that on August 9, 2017, RTI filed with the SEC a quarterly report on Form 10-Q for the quarterly period ended June 30, 2017 (the "Q2 2017 Form 10-Q"); and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

154.    The Q2 2017 10-Q further stated that—

*Our total revenues of $142.1 million for the six months ended June 30, 2017, increased $7.1 million, or 5.3%, compared to $135.0 million for the six months ended June 30, 2016.* **Our direct revenues increased by $9.1 million, or 11.6%, to $87.4 million, and** *our global commercial revenues decreased by $681,000, or 1.4%, to $49.4 million.* Our global commercial revenue comparisons are impacted due to a significant amount of our revenue being derived from large global commercial stocking distributors, whose timing of orders can vary from quarter to quarter. These ordering patterns can result in significant unit volume variations, which can result in significant variation in quarter over quarter comparisons. In addition, *global commercial revenues decreased primarily as a result of lower orders from certain commercial distributors, primarily in the orthopedics and trauma markets.* (Emphasis added.)

51

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 154, except he admits that (i) that on August 9, 2017, RTI filed with the SEC the Q2 2017 Form 10-Q; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

155. With respect to internal controls, the Q2 2017 10-Q stated that "our Chief Executive Officer and Chief Financial Officer concluded that the design and operation of our disclosure controls and procedures were effective as of the end of the period covered by this report."

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 155, except he admits that (i) that on August 9, 2017, RTI filed with the Q2 2017 Form 10-Q; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

156. The statements referenced in ¶¶153-155 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; (5) Defendants, having expedited shipping and overloaded RTI's commercial customers with orders, bore responsibility for the demand slowdown cited in the Q2 2017 10-Q; (6) there were material weaknesses in the Company's internal control over financial reporting, including with respect to the accuracy of journal entries and the accounting for sales returns; (7) RTI's internal controls and procedures were not effective; and (8) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 156.

157. On August 8, an analyst from Stephens favorably noted the Company's "encouraging 2Q17 operating results" and echoed Defendants' claim that "the commercial business exhibited signs of stabilization."

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 157, and therefore denies them.

158. Similarly, an analyst report from Raymond James dated August 8 repeated Defendants' claim that "[t]he Commercial biz continued trends towards stabilization, following one-time orders in 2015 that did not repeat in 2016." The same report noted that "***RTI noted higher ordering volumes from dental and trauma distributors***." (Emphasis added.)

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 158, and therefore denies them.

159. November 2, 2017 the Company announced third quarter 2016 financial results in a press release filed with the SEC on Form 8-K. The Company reported that "***RTI generated $66.7 million in revenue, driven by growth in the company's spine, commercial and international businesses. Earnings for the third quarter totaled $16.5 million ....***"

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 159, except he admits that (i) that on November 2, 2017, RTI filed with the SEC a Form 8-K; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

160. The November 2 press release further stated that "***[t]hird quarter revenues were driven by growth in*** spine, ***commercial*** and international, partially offset by a $1.6 million reduction from the sale of substantially all the assets of the Cardiothoracic closure business."

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 160, except he admits that (i) that on November 2, 2017, RTI filed with the SEC a Form 8-K; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

161. The statements referenced in ¶¶159-160 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; and (5) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 161.

162. An analyst from Stephens reacted positively to this news, stating that "[w]e reiterate our E/V investment rating and 12-month, $5 price target on RTIX's shares following the Company's reporting 3Q17 operating results and tightening CY17 guidance. RTIX continues to make considerable strides to lay a firm foundation for sustainable and profitable growth entering CY18."

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 162, and therefore denies them.

163. On November 3, 2017, the Company filed its quarterly report on Form 10-Q for the period ended September 30, 2017 (the "Q3 2017 10-Q"). The Q3 2017 10-Q was signed by Defendants Farhart and Singer and stated, in relevant part:

Total Revenues: ***Our total revenues of $208.7 million for the nine months ended September 30, 2017, increased $7.2 million, or 3.6%, compared to $201.5 million for the nine months ended September 30, 2016***. Our direct revenues increased by $8.3 million, or 7.2%, to $124.6 million due to increased distributions, offset primarily as a result of an estimated $1.2 million loss in revenue due to a hurricane in Florida, and ***our global commercial revenues increased by $829,000, or 1.1%, to $76.2 million, primarily as a result of higher orders from certain commercial distributors, primarily in the dental and trauma markets***. (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 163, except he admits that on (i) that on November 3, 2017, RTI

54

filed with the SEC a quarterly report on Form 10-Q for the quarterly period ended September 30, 2017 (the "Q3 2017 Form 10-Q"); and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

164. The Q3 2017 10-Q also stated that "our Chief Executive Officer and Chief Financial Officer concluded that the design and operation of our disclosure controls and procedures were effective as of the end of the period covered by this report."

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 164, except he admits that (i) on November 3, 2017, RTI filed with the SEC the Q3 2017 Form 10-Q; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

165. The statements referenced in ¶¶163-164 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; (5) there were material weaknesses in the Company's internal control over financial reporting, including with respect to the accuracy of journal entries and the accounting for sales returns; (6) RTI's internal controls and procedures were not effective; and (7) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 165.

166. On March 2, 2018, the Company filed a Form 10-K for the year ended December 31, 2017 (the "2017 10-K") with the SEC. The 2017 10-K was signed by Defendants Farhat and Singer. The 2017 10-K contained signed SOX certifications by Defendant Farhat and Singer attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

55

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 166, except he admits that (i) on March 2, 2018, RTI filed with the SEC a Form 10-K for the fiscal year ended December 31, 2017 (the "2017 10-K"); and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

167. The 2017 10-K stated, in pertinent part, the following concerning the Company's approach to revenue recognition:

> ***Revenue Recognition—Revenue is recognized upon shipping, or receipt by the Company's customers of the implant, depending on the Company's distribution agreements with the Company's customers or distributors. Other revenues are recognized when all significant contractual obligations have been satisfied.***
>
> The Company permits returns of implants in accordance with the terms of contractual agreements with customers if the implant is returned in a timely manner, in unopened packaging, and from the normal channels of distribution. ***Allowances for returns are provided based upon analysis of the Company's historical patterns of returns matched against the revenues from which they originated***.
>
> ***The Company records estimated implant returns, discounts, rebates and other distribution incentives as a reduction of revenue in the same period revenue is recognized.*** Estimates of implant returns are recorded for anticipated implant returns based on historical distributions and returns information. Estimates of discounts, rebates and other distribution incentives are recorded based on contractual terms, historical experience and trend analysis.
>
> Other revenues consists of service processing, tissue recovery fees, biomedical laboratory fees, recognition of previously deferred revenues, shipping fees, distribution of reproductions of our allografts to distributors for demonstration purposes and restocking fees which is included in revenues. (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 167, except he admits that (i) on March 2, 2018, RTI filed the 2017

10-K; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

168. The 2017 10-K also stated that:

> **Total Revenues: *Our total revenues increased $6.7 million, or 2.5%, to $279.6 million for the year ended December 31, 2017 compared to $272.9 million for the year ended December 31, 2016***. Our direct revenues increased by $5.3 million, or 3.3%, to $166.1 million and ***our OEM revenues increased by $3.9 million, or 3.9%, to $103.0 million***. (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 168, except he admits that (i) on March 2, 2018, RTI filed the 2017 10-K; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

169. The 2017 10-K stated the following concerning revenue from contracts with customers:

> ***Revenue from Contracts with Customers*** — In May 2014, the FASB, issued a new revenue recognition standard which amends revenue recognition principles and provides a single, comprehensive set of criteria for revenue recognition within and across all industries. The new standard provides a five-step framework whereby revenue is recognized when control of promised goods or services are transferred to a customer at an amount that reflects the consideration to which the entity expects to be entitled in exchange for those goods or services. The standard also requires enhanced disclosures pertaining to revenue recognition in both interim and annual periods. In August 2015, the FASB deferred the effective date of the new revenue standard from January 1, 2017 to January 1, 2018. In March 2016, the FASB issued amendments to clarify the implementation guidance on principal versus agent considerations. In April 2016, the FASB issued amendments to clarify the guidance on accounting for licenses of intellectual property and identifying performance obligations. In May 2016, the FASB issued amendments related to collectability, non-cash consideration, the presentation of sales and other similar taxes collected from customers and transition. The standard allows for adoption using a full retrospective method or a modified retrospective method. ***On January 1, 2018, the Company adopted this standard using the modified retrospective method. The Company's implementation approach***

***included performing a detailed review of its agreements. The Company has reviewed all types of customer contracts and has gone through the five step process outlined in the new revenue recognition standard for each type of contract***. The new five step process required by the new revenue recognition standard provides results substantially consistent with the Company's current revenue recognition policies. In addition, the Company designed internal controls to enable the preparation of financial information. The Company is in the process of finalizing its conclusions on key accounting assessments related to the new standard, including its assessment that the impact of accounting for costs incurred to obtain a contract.

***The Company identified two contracts which previously resulted in revenue recognition occurring at the time of shipment; however, under the new revenue recognition standard, the Company is required to recognize revenue over time***. The Company currently estimates the impact of adopting the new revenue standard on the two contracts will result in a $1,800 to $2,200 reduction in accumulated deficit, the cumulative effect adjustment under the modified retrospective approach, a $2,500 to $3,000 increase in accounts receivable, and a $700 to $800 decrease in deferred tax assets. The Company also identified a contract that contains significant upfront payments; however, the Company has not yet finalized its assessment of the contract. Except for the three contracts discussed above, the Company does not anticipate the finalization of this assessment will result in a material impact to the Company's financial position, results of operations, and disclosures.

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 169, except he admits that (i) on March 2, 2018, RTI filed the 2017 10-K; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

170. As to RTI's internal controls over financial reporting, the 2017 10-K stated that, "as of December 31, 2017, the Company's internal control over financial reporting is effective."

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 170, except he admits that (i) on March 2, 2018, RTI filed the 2017

10-K; and (ii) without waiving any evidentiary objections with respect thereto, refers to the

filing for its true and correct contents.

171.    The statements referenced in ¶¶166-170 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; (5) there were material weaknesses in the Company's internal control over financial reporting, including with respect to the accuracy of journal entries and the accounting for sales returns; (6) RTI's internal controls and procedures were not effective; and (7) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 171.

172.    On May 3, 2018 the Company announced first quarter 2018 financial results in a press release filed with the SEC on Form 8-K. Specifically, the Company reported that –

> ***RTI's worldwide revenues for the first quarter of 2018 were $69.9 million, comparable with the prior year first quarter. First quarter revenues were driven by growth in the OEM and International lines of business***, which were partially offset by declines in Sports and Spine and a $3.2 million reduction from the sale of substantially all the assets of the cardiothoracic closure business completed in August 2017. Gross profit for the first quarter of 2018 was $33.7 million, or 48.2% of revenues, compared to $35.8 million, or 51.2% of revenues, in the first quarter of 2017. Gross profit for the first quarter of 2018 was impacted by an inventory charge of $1.0 million from the write-off of inventory related to our international restructuring and $0.2 million due to the purchase accounting step-up of Zyga inventory. (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the

allegations in paragraph 172, except he admits that (i) on May 3, 2018, RTI filed with the SEC

a Form 8-K; and (ii) without waiving any evidentiary objections with respect thereto, refers

to the filing for its true and correct contents.

173. The statements referenced in ¶172 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; and (5) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 173.

174. On May 3, 2018, Defendants held a conference call with investors and analysts (the "Q1 2018 Earnings Call"). During the Q1 2018 Earnings Call, Defendants Farhat and Singer repeated the same materially false and/or misleading revenue figures set forth in ¶172 above.

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the

allegations in paragraph 174, except he admits that (i) on May 3, 2018, RTI held a conference

call with investors and analysts; and (ii) without waiving any evidentiary objections with

respect thereto, refers to the transcript of the call for its true and correct contents.

175. On the Q1 2018 Earnings Call, Defendant Farhat claimed [d]uring the quarter, ***we delivered revenue of approximately $69.9 million, which was driven by strong performance in our OEM and International franchises ....***" (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the

allegations in paragraph 175, except he admits that (i) on May 3, 2018, RTI held a conference

call with investors and analysts; and (ii) without waiving any evidentiary objections with

respect thereto, refers to the transcript of the call for its true and correct contents.

176. The statements referenced in ¶174-175 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false, including the revenue cited in order to describe OEM as "strong"; and (5) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 176.

177. On May 4, 2018, the Company filed its quarterly report on Form 10-Q for the period ended March 31, 2018 (the "Q1 2018 10-Q"). The Q1 2018 10-Q was signed by Defendants Farhart and Singer and stated, in relevant part:

Total revenues - ***Our total revenues of $69.9 million for the three months ended March 31, 2018 was comparable to the three months ended March 31, 2017***. Excluding cardiothoracic revenues for the three months ended March 31, 2017, our total revenues increased $3.1 million, or 4.6%, primarily due to timing of delivery to certain OEM distributors, primarily in the dental and trauma markets.

OEM - ***Revenues from OEM increased $5.0 million, or 19.8%, to $30.1 million for the three months ended March 31, 2018***, compared to $25.1 million for the three months ended March 31, 2017. ***OEM revenues increased primarily as a result of higher orders and due to timing of delivery to certain OEM distributors***, primarily in the dental and trauma markets. (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the

allegations in paragraph 177, except he admits that (i) on May 4, 2018, RTI filed with the SEC

a quarterly report on Form 10-Q for the quarterly period ended March 31, 2018 (the "Q1

61

2018 Form 10-Q"); and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

178. Finally, the Q1 2018 10-Q stated that "our Chief Executive Officer and Chief Financial Officer concluded that the design and operation of our disclosure controls and procedures were effective as of the end of the period covered by this report."

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 178, except he admits that (i) on May 4, 2018, RTI filed the Q1 2018 Form 10-Q; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

179. The statements referenced in ¶¶177-178 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false, including the alleged drivers of OEM growth cited in the Q1 2018 10-Q; (5) there were material weaknesses in the Company's internal control over financial reporting, including with respect to the accuracy of journal entries and the accounting for sales returns; (6) RTI's internal controls and procedures were not effective; and (7) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 179.

180. On August 2, 2018, the Company announced second quarter 2018 financial results in a press release filed with the SEC on Form 8-K. Specifically, the Company reported that "***RTI's worldwide revenues for the second quarter of 2018 were $70.7 million***, down slightly compared with $72.1 million during the same period for the prior year. Excluding a $3.7 million reduction from the sale of substantially all the assets of the cardiothoracic closure business

62

completed in August 2017, *our total revenues increased $2.2 million, or 3.3%.*"

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 180, except he admits that (i) on August 2, 2018, RTI filed with the SEC a Form 8-K; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

181. The statements referenced in ¶180 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false, as is data derived from those figures; and (5) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 181.

182. On August 3, 2018, the Company filed its quarterly report on Form 10-Q for the period ended June 30, 2018 (the "Q2 2018 10-Q"). The Q2 2018 10-Q was signed by Defendants Farhart and Singer and stated, in relevant part:

**Total revenues -** *Our total revenues decreased $1.4 million, or 2.0%, to $70.7 million for the three months ended June 30, 2018, compared to $72.1 million for the three months ended June 30, 2017.* Excluding cardiothoracic revenues for the three months ended June 30, 2017, our total revenues increased $2.2 million, or 3.3%, primarily due to timing of delivery to certain OEM distributors, primarily in the dental and trauma markets.

**OEM -** *Revenues from OEM increased $3.2 million, or 11.4%, to $31.2 million for the three months ended June 30, 2018, compared to $28.0 million for the three months ended June 30, 2017. OEM revenues increased primarily as a result of higher orders and due*

63

***to timing of delivery to certain OEM distributors, primarily in the dental and trauma markets.*** (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 182, except he admits that on (i) August 3, 2018, RTI filed with the SEC a quarterly report on Form 10-Q for the quarterly period ended June 30, 2018 (the "Q2 2018 Form 10-Q"); and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

183. The Q2 2018 10-Q further stated, in relevant part:

Total revenues - ***Our total revenues decreased $1.5 million, or 1.0%, to $140.6 million for the six months ended June 30, 2018, compared to $142.1 million for the six months ended June 30, 2017.*** Excluding cardiothoracic revenues for the six months ended June 30, 2017, our total revenues increased $5.3 million, or 3.9%, primarily due to timing of delivery to certain OEM distributors, primarily in the dental and trauma markets. (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 183, except he admits that on (i) August 3, 2018, RTI filed with the SEC the Q2 2018 Form 10-Q; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

184. Finally, the Q2 2018 10-Q stated, "our Chief Executive Officer and Chief Financial Officer concluded that the design and operation of our disclosure controls and procedures were effective as of the end of the period covered by this report."

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 184, except he admits that on (i) August 3, 2018, RTI filed with the SEC the Q2 2018 Form 10-Q; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

185. The statements referenced in ¶¶182-184 above were materially false and/or misleading because they misrepresented and failed to disclose the following

64

adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; (5) there were material weaknesses in the Company's internal control over financial reporting, including with respect to the accuracy of journal entries and the accounting for sales returns; (6) RTI's internal controls and procedures were not effective; and (7) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 185.

186.    On November 1, 2018, the Company announced third quarter 2018 financial results in a press release filed with the SEC on Form 8-K. Specifically, the Company reported that –

*RTI's worldwide revenues for the third quarter of 2018 were $69.1 million, compared with $66.7 million during the same period in the prior year*. Excluding a $1.3 million reduction from the sale of substantially all the assets of the Cardiothoracic Closure business completed in August 2017, *total revenues increased $3.7 million, or 5.7%, driven by strong performance in both the spine and OEM franchises*. Gross profit for the third quarter of 2018 was $37.7 million, or 54.5% of revenues, a significant increase compared to $33.5 million, or 50.3% of revenues, in the third quarter of 2017. (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 186, except he admits that (i) on November 1, 2018, RTI filed with the SEC a Form 8-K; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

187.    The November 1 press release further stated that:

Our OEM franchise continued its strong performance this quarter. Our team has done a tremendous job of getting closer to our customers, better understanding their needs and the direction of the market and

65

focusing our operations accordingly to drive growth. ***The changes we have implemented are really paying off and our credit to all involved.*** (Emphasis added).

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 187, except he admits that (i) on November 1, 2018, RTI filed with the SEC a Form 8-K; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

188. The statements referenced in ¶¶186-187 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; (5) RTI's OEM revenue was, in part, attributable to fraud in addition to any non-fraudulent employee efforts; and (6) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 188.

189. On November 1, 2018, Defendants held a conference call with investors and analysts (the "Q3 2018 Earnings Call"). During the Q3 2018 Earnings Call, Defendants Singer and Farhat repeated the same materially false and/or misleading revenue figures set forth in ¶186 above.

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 189, except he admits that (i) on November 1, 2018, RTI held a conference call with investors; and (ii) without waiving any evidentiary objections with respect thereto, refers to the transcripts of the call for its true and correct contents.

190. On the same call, Defendant Farhat stated that ***"[w]e returned the OEM franchise to growth*** and made progress on our current spine portfolio by

launching Fortilink-TS and -L with TETRAfuse technology, which recently won a 2018 Spine Technology Award from Orthopedics this week...***And with these initiatives now ingrained in our corporate culture, we are producing improved operational and financial performance***, and we are increasing our focus on accelerating near-term growth." (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 190, except he admits that (i) on November 1, 2018, RTI held a conference call with investors; and (ii) without waiving any evidentiary objections with respect thereto, refers to the transcripts of the call for its true and correct contents.

191. The statements referenced in ¶¶189-190 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; (5) RTI's OEM revenue was, in part, attributable to fraud in addition to any non-fraudulent "corporate initiative"; and (6) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 191.

192. On November 7, 2018, the Company filed its quarterly report on Form 10-Q for the period ended September 30, 2018 (the "Q3 2018 10-Q"). The Q3 2018 10-Q was signed by Defendants Farhart and Singer and stated, "[t]otal revenues - ***Our total revenues increased $2.4 million, or 3.6%, to $69.1 million for the three months ended September 30, 2018***, compared to $66.7 million for the three months ended September 30, 2017." The Q3 2018 10-Q also stated as follows:

> **OEM - *Revenues from OEM increased $1.3 million, or 4.6%, to $30.1 million for the three months ended September 30, 2018, compared to $28.8 million for the three months ended September 30, 2017. OEM revenues increased primarily as a result of higher orders and***

> ***due to timing of delivery to certain OEM distributors, primarily in
> the dental and trauma markets.*** (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 192, except he admits that (i) on November 7, 2018, RTI filed with the SEC a quarterly report on Form 10-Q for the quarterly period ended September 30, 2018 (the "Q3 2018 Form 10-Q"); and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

193.   Defendants further stated, in regard to a new accounting standard, ASC 606, that:

> At September 30, 2018, we had 57 days of revenues outstanding in trade accounts receivable, an increase of 11 days compared to December 31, 2017. The increase is driven by the longer period receivables remain outstanding for contracts with customers where inventory is exclusively built with no alternative use to us, and where revenue is recognized over time under ASC 606. ***Whereas previously, revenue and receivables were recorded at the time of shipment, they are now recorded over time.*** The customer, however, is only billed at the time of shipment.

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 193, except he admits that (i) on November 7, 2018, RTI filed the Q3 2018 Form 10-Q; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

194.   Finally, Defendants stated in the Q3 2018 10-Q that "our Chief Executive Officer and Chief Financial Officer concluded that the design and operation of our disclosure controls and procedures were effective as of the end of the period covered by this report."

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 194, except he admits that (i) on November 7, 2018, RTI filed the Q3 2018 Form 10-Q; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

195. The statements referenced in ¶¶192-194 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; (5) there were material weaknesses in the Company's internal control over financial reporting, including with respect to the accuracy of journal entries and the accounting for sales returns; (6) RTI's internal controls and procedures were not effective; and (7) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendants deny the allegations in paragraph 195.

196. February 28, 2019, Defendants held a conference call with investors and analysts (the "Q4 2018 Earnings Call"). During the Q4 2018 Earnings Call, Defendant Singer made the following statements concerning the Paradigm acquisition:

[W]ithin the context of the SEC rules, we've been very, very actively engaged with the Paradigm team. I mean this has really been a partnership with the Paradigm leadership and ownership from the outset, and kind of given that, they're going to be significant shareholders going forward. ***Everybody is very aligned on driving towards a successful integration and closing the deal with momentum****.*

And so, we've had a comprehensive integration team on both sides working on it on a consistent basis. ***So, when we close this transaction, we'll hit the ground running****,* I mean, some of it is simple and some of it is complicated. We got everybody signed up for benefits and on payroll, we got everybody with RTI e-mail addresses, all of the things that kind of get in the way of people being effective in their roles, everybody is clear about what their role is going to be going forward, and we've got a solid design of the commercial infrastructure, both domestically and internationally going forward. ***And so, we've done a ton of work and have had tremendous co-operation and collaboration. And so, we feel very good about where we're positioned at the outset of the close****.* (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 196, except he admits that (i) on February 28, 2019, RTI held a conference call with investors and analysts; and (ii) without waiving any evidentiary objections with respect thereto, refers to the transcripts of the call for its true and correct contents.

197. The statements referenced in ¶196 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) consistent with RTI's deficient internal controls, the Paradigm transaction was rife was serious errors relating to asset valuation and purchase accounting; and (2) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 197.

198. On March 5, 2019, the Company filed a Form 10-K for the year ended December 31, 2018 (the "2018 10-K") with the SEC. The 2018 10-K was signed by Defendants Farhat and Singer. The 2018 10-K contained signed SOX certifications by Defendant Farhat and Singer attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 198, except he admits that (i) on March 5, 2019, RTI filed with the SEC a Form 10-K for the fiscal year ended December 31, 2018 (the "2018 10-K"); and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

199. The 2018 10-K stated, in pertinent part, the following concerning the Company's approach to revenue recognition:

*Revenue Recognition—* ***We recognize revenue upon shipping, or receipt by our customers of our products and implants, depending on our distribution agreements with our customers or distributors****.* Our performance obligations consist mainly of transferring control of

implants identified in our contracts. We typically transfer control at a point in time upon shipment or delivery of the implants for direct sales, or upon implantation for sales of consigned inventory. Our customer is able to direct the use of, and obtain substantially all of the benefits from, the implant at the time the implant is shipped, delivered, or implanted, respectively, based on the terms of the contract. For performance obligations related to our contracts with exclusively built inventory clauses, we typically satisfy our performance obligations evenly over the contract term as inventory is built. Such exclusively manufactured inventory has no alternative use and we have an enforceable right to payment for performance to date. We use the input method to measure the manufacturing activities completed to date, which depicts the progress of our performance obligation of transferring control of exclusively built inventory. For the contracts with upfront and annual exclusivity fees, revenue related to those fees is recognized over the contract term following a consistent method of measuring progress towards satisfaction of the performance obligation. We use the method and measure of progress that best depicts the transfer of control to the customer of the goods or services to date relative to the remaining goods or services promised under the contract.

The Company permits returns of implants in accordance with the terms of contractual agreements with customers if the implant is returned in a timely manner, in unopened packaging, and from the normal channels of distribution. ***Allowances for returns are provided based upon analysis of the Company's historical patterns of returns matched against the revenues from which they originated***.

***The Company records estimated implant returns, discounts, rebates and other distribution incentives as a reduction of revenue in the same period revenue is recognized***. Estimates of implant returns are recorded for anticipated implant returns based on historical distributions and returns information. Estimates of discounts, rebates and other distribution incentives are recorded based on contractual terms, historical experience and trend analysis.

Other revenues consist of service processing, tissue recovery fees, biomedical laboratory fees, recognition of previously deferred revenues, shipping fees, distribution of reproductions of our allografts to distributors for demonstration purposes and restocking fees which is included in revenues. (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the

allegations in paragraph 199, except he admits that (i) on March 5, 2019, RTI filed with the

71

SEC the 2018 10-K; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

200. The 2018 10-K stated, in pertinent part, the following concerning revenue from contracts with customers:

***Revenue from Contracts with Customers—On January 1, 2018, the Company adopted a new accounting standard issued by the FASB on revenue recognition using the modified retrospective method***. This new accounting standard outlines a single comprehensive model to use in accounting for revenue arising from contracts with customers. This standard supersedes existing revenue recognition requirements and eliminates most industry-specific guidance from GAAP. The core principle of the new accounting standard is to recognize revenue to depict the transfer of promised goods or services to customers in an amount that reflects the consideration to which the entity expects to be entitled in exchange for those goods or services. In addition, the adoption of this new accounting standard resulted in increased disclosure, including qualitative and quantitative disclosures about the nature, amount, timing and uncertainty of revenue and cash flows arising from contracts with customers. ***The new accounting standard was applied to all contracts, apart from contracts for which all or substantially all revenue was recognized before January 1, 2018***. Additionally, the Company elected to account for shipping and handling activities as a fulfillment cost rather than a separate performance obligation.

The Company identified three contracts which previously resulted in revenue recognition occurring at the time of shipment; however, under the new revenue recognition standard, the Company is required to recognize revenue over time. The assessment of our January 1, 2018, consolidated balance sheet under ASC Topic 606 resulted in a cumulative-effect adjustment to opening retained earnings, unbilled accounts receivable and costs incurred for inventory. (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 200, except he admits that (i) on March 5, 2019, RTI filed with the SEC the 2018 10-K; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

201. The 2018 10-K stated the following regarding its revenues from OEM:

72

> ***OEM—Revenues from OEM increased $10.0 million, or 9.0%, to $120.7 million for the year ended December 31, 2018 compared to $110.7 million for the year ended December 31, 2017.*** OEM revenues increased primarily as a result of higher orders and due to timing of delivery to certain OEM distributors, primarily in the dental and trauma markets. (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 201, except he admits that (i) on March 5, 2019, RTI filed with the SEC the 2018 10-K; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

202.    As to RTI's internal controls over financial reporting, the 2018 10-K stated that, "as of December 31, 2018, the Company's internal control over financial reporting is effective."

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 202, except he admits that (i) on March 5, 2019, RTI filed with the SEC the 2018 10-K; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

203.    The statements referenced in ¶¶198-202 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; (5) there were material weaknesses in the Company's internal control over financial reporting, including with respect to the accuracy of journal entries and the accounting for sales returns; (6) RTI's internal controls and procedures were not effective; and (7) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

73

**RESPONSE:** Defendant Louw denies the allegations in paragraph 203.

204. On May 2, 2019, Defendants held a conference call with investors and analysts (the "Q1 2019 Earnings Call"). During the Q1 2019 Earnings Call, Defendant Singer stated that:

*RTI's worldwide revenue for the first quarter of 2019 was $69.7 million compared with $69.9 million during the same period for the prior year.* Driving 2019 revenues is approximately $0.7 million of net growth within Spine and $300 thousand of growth in Sports offset by declines in OEM. *The majority of the decline in OEM is due to $1.1 million of revenue booked in the first quarter of 2018 which was shifted from the second quarter if you recall our discussions of last year.*

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 204, except he admits that (i) on May 2, 2019, RTI held a conference call with investors and analysts; and (ii) without waiving any evidentiary objections with respect thereto, refers to the transcripts of the call for its true and correct contents.

205. The statements referenced in ¶204 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false, as are inferences based on Defendants' false revenues; and (5) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 205.

206. On May 7, 2019, the Company filed its quarterly report on Form 10-Q for the period ended March 31, 2019 (the "Q1 2019 10-Q"). The Q1 2019 10-Q was signed by Defendants Farhart and Singer and stated –

74

> **Total Revenues – *Our total revenues decreased $149,000, or 0.2%, to $69.7 million for the three months ended March 31, 2019, compared to $69.9 million for the three months ended March 31, 2018***, due to the suspension of the map3® implant and timing of delivery to certain OEM distributors, primarily in the dental market, partially offset by increased distributions of our legacy spine hardware implants and due to the introduction of our coflex® Interlaminar Stabilization® implants, acquired through the acquisition of Paradigm.
>
> ***Revenues from OEM decreased $1.1 million, or 3.7%, to $29.0 million for the three months ended March 31, 2019***, compared to $30.1 million for the three months ended March 31, 2018. ***OEM revenues decreased primarily due to timing of delivery to certain OEM distributors, primarily in the dental market***. (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 206, except he admits that (i) on May 7, 2019, RTI filed with the SEC a quarterly report on Form 10-Q for the quarterly period ended March 31, 2019 (the "Q1 2019 Form 10-Q"); and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

207. The Q1 2019 10-Q also stated that "our Chief Executive Officer and Chief Financial Officer concluded that the design and operation of our disclosure controls and procedures were effective as of the end of the period covered by this report."

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 207, except that he admits that (i) on May 7, 2019, RTI filed the Q1 2019 Form 10-Q; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

208. The statements referenced in ¶¶206-207 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues

75

with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; (5) there were material weaknesses in the Company's internal control over financial reporting, including with respect to the accuracy of journal entries and the accounting for sales returns; (6) RTI's internal controls and procedures were not effective; and (7) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 208.

209. On August 5, 2019, the Company filed its quarterly report on Form 10-Q for the period ended June 30, 2019 (the "Q2 2019 10-Q"). The Q2 2019 10-Q was signed by Defendants Farhart and Singer and stated, among other things, that:

> **OEM - *Revenues from OEM increased $1.3 million, or 4.2%, to $32.5 million for the three months ended June 30, 2019, compared to $31.2 million for the three months ended June 30, 2018. OEM revenues increased primarily due to increased demand from certain OEM distributors***, primarily in our dermis based implants. (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 209, except he admits that (i) on August 5, 2019, RTI filed with the SEC a quarterly report on Form 10-Q for the quarterly period ended June 30, 2019 (the "Q2 2019 Form 10-Q"); and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

210. In the Q2 2019 10-Q, Defendants stated that "our Chief Executive Officer and Chief Financial Officer concluded that the design and operation of our disclosure controls and procedures were effective as of the end of the period covered by this report."

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 210, except he admits that (i) on August 5, 2019, RTI filed with the

SEC the Q2 2019 Form 10-Q; and (ii) without waiving any evidentiary objections with

respect thereto, refers to the filing for its true and correct contents.

211.     The statements referenced in ¶¶209-210 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; (5) there were material weaknesses in the Company's internal control over financial reporting, including with respect to the accuracy of journal entries and the accounting for sales returns; (6) RTI's internal controls and procedures were not effective; and (7) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 211.

212.     On October 31, 2019, Defendants held a conference call with investors and analysts (the "Q3 2019 Earnings Call"). During the Q3 2019 Earnings Call, Defendant Singer was queried by an analyst regarding the "relatively large range" RTI used for its fourth quarter 2019 guidance. Singer responded by alluding to the unpredictability of revenue due to Defendants' own accounting manipulation scheme:

Yeah, so there is a number of factors that play into it. Look, we were -- our forecast accuracy in the third quarter was obviously horrible .... I would say, stabilization and impact of new launches in established therapies is built into the guidance range. ***We do and have had some products back order and so if we stabilize the supply side, from a donor and donor quality perspective that will impact the range and then there's always a certain element of delivery window with the OEM customers that come into play at the end of the quarter.*** So those are the factors that go into it. I don't know if that's helpful or not. (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the

allegations in paragraph 212, except he admits that on (i) October 31, 2019, RTI held a

conference call with investors; and (ii) without waiving any evidentiary objections with respect thereto, refers to the transcripts of the call for its true and correct contents.

213. On November 7, 2019, the Company filed its quarterly report on Form 10-Q for the period ended September 31, 2019 (the "Q3 2019 10-Q"). The Q3 2019 10-Q was signed by Defendants Farhart and Singer and stated, as follows: OEM - ***Revenues from OEM increased \$2.2 million, or 7.5%, to \$32.3 million for the three months ended September 30, 2019, compared to \$30.1 million for the three months ended September 30, 2018***. OEM revenues increased primarily due to increased demand from certain OEM distributors, primarily in our acellular dermal matrix implants. (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 213, except he admits that (i) on November 7, 2019, RTI filed with the SEC a quarterly report on Form 10-Q for the quarterly period ended September 30, 2019 (the "Q3 2019 Form 10-Q"); and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

214. In the Q3 2019 10-Q, Defendants further stated as follows:

OEM - ***Revenues from OEM increased \$2.4 million or 2.7% to \$93.8 million for the nine months ended September 30, 2019, compared to \$91.4 million for the nine months ended September 30, 2018****.* OEM revenues increased primarily due to increased demand from certain OEM distributors, primarily in our acellular dermal matrix implants. (Emphasis added.)

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 214, except he admits that (i) on November 7, 2019, RTI filed with the SEC the Q3 2019 Form 10-Q; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

215. Finally, Defendants stated that "our Chief Executive Officer and Chief Financial Officer concluded that the design and operation of our disclosure controls and procedures were effective as of the end of the period covered by this report."

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 215, except he admits that (i) on November 7, 2019, RTI filed with the SEC the Q3 2019 Form 10-Q; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

216. The statements referenced in ¶¶213-215 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company inappropriately recognized revenues with respect to certain contractual arrangements, including other equipment manufacturer customers; (2) revenue was improperly recognized because certain customer orders, primarily for OEM customers, were shipped early to customers without obtaining authorized approval; (3) unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter; (4) as a result of (1)-(3), Defendants' reported revenue figures were false; (5) there were material weaknesses in the Company's internal control over financial reporting, including with respect to the accuracy of journal entries and the accounting for sales returns; (6) RTI's internal controls and procedures were not effective; and (7) as a result of the foregoing, RTI was reasonably likely to restate its financial statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 216.

### The Truth Slowly Emerges

217. On March 16, 2020, after the market closed, RTI announced in a press release that it would file a Form 12b-25 with SEC due to its inability to timely file its Form 10-K for the fiscal year ended December 31, 2019. RTI further disclosed that the cause of the delay was that its Audit Committee was investigating the Company's revenue recognition practices. The press release stated, in relevant part:

DEERFIELD, Ill., March 16, 2020 (GLOBE NEWSWIRE) – RTI Surgical Holdings, Inc. (RTIX), a global surgical implant company, announced it will file a Form 12b-25 Notification of Late Filing with the Securities and Exchange Commission (the "SEC") to provide a 15 calendar day extension within which to file its Form 10-K for the fiscal year ended December 31, 2019.

The Audit Committee (the "Audit Committee") of the Company's Board of Directors, with the assistance of independent legal and forensic accounting advisors, *is in the process of conducting an internal investigation of current and prior period matters relating to the Company's revenue recognition practices regarding the timing of revenue with respect to certain contractual arrangements, primarily with OEM customers, including the accounting treatment, financial reporting and internal controls related to such arrangements.* The Audit Committee investigation was precipitated by an ongoing SEC investigation related to the periods 2014 through 2016. The Company will not be in a position to file its Form 10-K until the Audit Committee concludes its investigation and the Company and its independent auditor assess the results of that investigation. The Company is working to complete its analysis and file its Form 10-K for the year ended December 31, 2019 within the extension period (through March 31, 2020), but no assurance can be given that it will be able to do so.

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 217, except he admits that (i) on March 16, 2020, after the market closed, RTI issued a press release; and (ii) without waiving any evidentiary objections with respect thereto, refers to the press release for its true and correct contents.

218. On this news, RTI's shares fell $0.76 per share or over 27.6% to close at $1.99 per share on March 18, 2020, thereby damaging investors:



**RESPONSE:** Defendant Louw denies the allegations in paragraph 218, and refers to the historical stock price for its contents.

219. On March 20, 2020, the Company filed a current report on a Form 8-K with the SEC announcing that it had received a letter from the Listing Qualifications Department of the Nasdaq Stock Market LLC, indicating that the Company was not in compliance with the timely filing requirement for continued listing under Nasdaq Listing Rule 5250(c)(1). In the same report, the Company announced that its Vice President of Financial Planning and Analysis, Defendant Louw who had recently been promoted to CFO in January 2020, would end his employment with RTI by April 8, 2020.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 219, except he admits that (i) on March 20, 2020, the Company filed a Form 8-K; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents. Defendant Louw also specifically denies that he was promoted to CFO in January 2020, as it was contingent and effective upon RTI's successful completion of the proposed sale of RTI's OEM business, which did not occur before Defendant Louw's employment with RTI ended on April 8, 2020.

220. When the market learned of this materialization of the risk concealed by Defendants' deceptive accounting practices, shares fell $0.44 per share, or 19.6%, to close at $1.80 on March 23, 2020, the next trading day:



**RESPONSE:** Defendant Louw denies the allegations in paragraph 220, and refers to the

historical stock price for its contents.

221. More than a month later, RTI disclosed that it agreed to provide Defendant Louw with a separation payment in the amount of $195,294.00 and that the Company would also retain Defendant Louw as a "consultant" pursuant to the following terms:

Mr. Louw agreed to provide certain services to RTI Surgical as a consultant from April 9, 2020 until the earlier of: (i) the consummation of the sale of the Company's OEM business pursuant to the Purchase Agreement; and (ii) the termination of such agreement. In exchange for such consultant services, RTI Surgical agreed to pay to Mr. Louw the following compensation: (i) $23,741 per month; (ii) reimbursement for reasonable and documented out-of-pocked expenses incurred by Mr. Louw in connection with performance of such services; and (iii) reimbursement of actual travel expenses in accordance with RTI's travel policy at the time of travel. Either party may terminate the Consultant Agreement at any time, with or without cause, by providing the other party 30 days' advance written notice.

**RESPONSE:** Defendant Louw admits the allegations in paragraph 221.

222. On March 30, 2020, before the market opened, RTI announced that on March 28, the Company had received a letter from Montagu stating that RTI was in breach of Section 7.5(a) of the Purchase Agreement relating to the OEM sale, as a result of failing to file a proxy statement with the SEC within forty-five calendar days.

**RESPONSE:** Defendant Louw admits that RTI made the announcement on March 30, 2020,

as described in paragraph 222.

223. In the same report, the Company announced that it had postponed a special meeting of shareholders, which was set to vote on various proposals necessary to close the sale of the OEM business, and the Company's annual meeting of shareholders, which had been scheduled for May 13, 2020.

**RESPONSE:** Defendant Louw admits the allegations in paragraph 223.

224. In response to this latest materialization of the risks created by Defendants' accounting-related misconduct, RTI shares fell, with trading volume heavy, $0.20 per share, or 11%, to close at $1.68 on March 30, 2020.

82



**RESPONSE:** Defendant Louw denies the allegations in paragraph 224, and refers to the

historical stock price and trading volume for its contents.

225. On April 9, 2020, in a Form 8-K filed with the SEC, RTI disclosed certain findings from the Audit Committee's ongoing investigation, including that certain financial statements would be restated. Specifically, the Company stated:

On April 7, 2020, the Audit Committee of the Board of Directors concluded that the Company will restate its previously issued audited financial statements for the years ended December 31, 2014, 2015, 2016, 2017 and 2018 and its unaudited financial statements for the quarterly periods for 2016-2018 and the nine months ended September 30, 2019 (the "Relevant Periods"). Accordingly, investors should no longer rely upon the Company's previously released financial statements as of and for the years ended December 31, 2018, 2017, 2016, 2015, and 2014, and the reports on the financial statements and internal control over financial reporting of the Company's independent registered public accounting firm thereon; or the quarterly financial statements and other financial data released related to the Relevant Periods.

*The Company has concluded that revenue for certain invoices should have been recognized at a later date than when originally recognized.* In response to binding purchase orders from certain OEM customers, *goods were shipped and received by the customers before requested delivery dates and agreed-upon delivery windows.* In many instances, the OEM customers requested or approved the early shipments, but the Company has determined that on other occasions *the goods were delivered early without obtaining the customers' affirmative approval. In addition, the Company has concluded that in July 2017, an adjustment was improperly made to a product return provision in the Direct Division.* Accordingly, the Company will revise its

financial statements to correct these errors and any others as it finalizes the Investigation. The Company and the Audit Committee of the Board of Directors have discussed these matters with Deloitte & Touche LLP, the Company's independent registered public accounting firm.

**RESPONSE:** To the extent these allegations are directed at Defendant Louw, he denies the allegations in paragraph 225, except he admits that(i) on April 9, 2020, RTI filed with the SEC a Form 8-K; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

226. On June 8, 2020, the Company filed a Form 10-K/A for the year ended December 31, 2018 (the "2018 Amended 10-K") with the SEC to restate its financial results for prior periods because, among other things, "revenue for certain invoices should have been recorded at a later date than when originally recognized" and "adjustments [had been] improperly or erroneously made to manual journal entry accrual/reserve accounts." Specifically, regarding the background for the restatement, the report stated:

Based on the results of the Investigation, ***the Company has concluded that revenue for certain invoices should have been recognized at a later date than when originally recognized. In response to binding purchase orders from certain OEM customers, goods were shipped and received by the customers before requested delivery dates and agreed-upon delivery windows.*** In many instances the OEM customers requested or approved the early shipments, but the Company has determined that on other occasions ***the goods were delivered early without obtaining the customers' affirmative approval. Some of those unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter.***

The revenue for those shipments is being restated, as well as for other orders that shipped earlier than the purchase order due date in the system for which the Company could not locate evidence that the OEM customers had requested or approved the shipments. ***In addition, the Investigation found that in July 2017 a $30,000 adjustment was improperly made to a product return provision in the Direct Division that increased the Direct Division's revenue in the prior quarter***. The July 2017 adjustment prompted additional investigative steps. The Company has concluded that in the periods of the fourth quarter of 2015 through the fourth quarter of 2018 certain adjustments were improperly or erroneously made to manual journal entry accrual/reserve accounts, including a July 2017 adjustment to a product

return provision in the Direct Division. Accordingly, the Company has restated its financial statements to correct these errors.

In addition to the correction of the errors discussed above, the Company has also made other immaterial corrections in all periods presented. Such immaterial corrections reflected in the restated periods and, together with the other corrections described above, are referred to herein as "Current and Prior Period Adjustments." ***The corrections are included in these financial statements contained herein, which we refer to herein collectively as the "Restatement"***.

**RESPONSE:** Defendant Louw states that he was not an officer, employee or consultant of the Company on June 8, 2020 and lacks sufficient knowledge and information to form a belief as to the truth or falsity of the allegations in paragraph 226, and therefore denies them. In this denial, Defendant Louw (i) does admit that the Company filed its restated financial statement on June 8, 2020; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

227. The 2018 Amended 10-K detailed the restatement as follows:

a. <u>Revenue</u> – As noted above, the Company has concluded that in some instances revenue for certain invoices should have been recognized at a later date than when originally recognized. Under both ASC 605 and ASC 606, revenue on sales to OEM customers is typically recognized at a point in time upon shipment. The Company identified revenue from certain customer orders that was shipped early to customers without obtaining authorized approval, and thus was recognized in an incorrect period. There were also instances in which the Company could not locate evidence that the OEM customers had requested or approved the shipments. Correction of these errors, when including the rollover effect from the immediately preceding periods, decreased revenue by $0.5 million in 2018, increased revenue by $0.8 million in 2017, and increased revenue by $3.1 million in 2016.

b. <u>Costs of processing and distribution</u> – Primarily as a result of the error corrections noted above, when including the rollover effect from the immediately preceding periods, costs of processing and distribution decreased by less than $0.1 million in 2018, increased by $0.2 million in 2017, and increased by $2.1 million in 2016.

c. <u>Operating expenses</u> – The Company corrected certain errors noted above, separate from the Investigation which increased operating expenses by $1.3 million, less than $0.1 million and $0.6 million, as of December 31, 2018, 2017, and 2016, respectively.

d. <u>Accounts receivable</u> – Primarily as a result of the error corrections noted above relating to the timing of revenue recognition, accounts receivable decreased by $0.3 million, increased by $0.1 million, and decreased by $0.6 million, as of December 31, 2018, 2017, and 2016, respectively.

e. <u>Inventories - net</u> – Primarily as a result of the error corrections noted above relating to the timing of revenue recognition, inventories - net increased by $0.2 million, less than $0.1 million, and $0.3 million as of December 31, 2018, 2017, and 2016, respectively.

f. <u>Prepaid and other current assets</u> – The Company corrected certain errors noted above, separate from the investigation, which decreased prepaid and other current assets by $0.4 million, increased by $0.3 million, and decreased by less than $0.1 million, as of December 31, 2018, 2017, and 2016, respectively.

g. <u>Property, plant and equipment – net</u> – The Company corrected certain errors noted above, separate from the investigation, which increased property, plant and equipment – net by $0.1 million, as of December 31, 2016.

h. <u>Deferred tax assets</u> – The Company corrected certain errors noted above, relating to the tax effects of changes to the timing of revenue recognition, which increased deferred tax assets by $0.3 million, decreased by $0.1 million, and increased by $0.1 million as of December 31, 2018, 2017, and 2016, respectively.

i. <u>Other intangible assets – net</u> – The Company corrected certain errors, separate from the investigation, which decreased net other intangible assets – net by $0.8 million and $0.5 million as of December 31, 2018 and 2017, respectively, and increased other intangible assets – net by less than $0.1 million as of December 31, 2016.

j. <u>Accounts payable</u> – The Company corrected certain errors, separate from the investigation, which decreased accounts payable by $0.1 million as of December 31, 2018 and 2017, and by less than $0.1 million as of December 31, 2016.

k. <u>Accrued expenses</u> – The Company corrected certain errors noted above, separate from the investigation, which increased accrued expenses by $1.2 million, $0.1 million, and $0.4 million, as of December 31, 2018, 2017, and 2016, respectively.

l. <u>Other long-term liabilities</u> – As a result of the impact of the error corrections noted above, separate from the investigation, long-term liabilities increased $0.4 million as of December 31, 2016.

m. <u>Payments for treasury stock</u> – The Company corrected certain errors, separate from the investigation, which reclassified operating cash flows to financing cash flows for purchases of treasury stock by $0.5 million and $3.3 million as of December 31, 2018 and 2017, respectively.

**RESPONSE:** Defendant Louw states that he was not an officer, employee or consultant of the Company on June 8, 2020 and lacks sufficient knowledge and information to form a belief as to the truth or falsity of the allegations in paragraph 227, and therefore denies them. In this denial, Defendant Louw (i) does admit that the Company filed its restated financial statement on June 8, 2020; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

228. The 2018 Amended 10-K contained restatements of line items for the financial statements for the relevant periods. As to the Company's restatement for revenue, the report provided, in relevant part:

| Year Ended December 31, 2017 | As Previously Reported | Adjustments | As Restated |
|---|---|---|---|
| Revenues | $ 279,563 | $ 786 | $ 280,349 |
| Costs of processing and distribution | 137,042 | 235 | 137,277 |
| Gross profit | 142,521 | 551 | 143,072 |
| Marketing, general and administrative | 115,103 | (94) | 115,009 |
| Research and development | 13,375 | (60) | 13,315 |
| Severance and restructuring costs | 12,173 | (157) | 12,016 |
| Executive transition costs | 2,781 | 37 | 2,818 |
| Asset impairment and abandonments | 3,739 | 295 | 4,034 |
| Total operating expenses | 113,711 | 21 | 113,732 |
| Operating income | 28,810 | 530 | 29,340 |
| Income before income tax (provision) | 25,725 | 530 | 26,255 |
| Income tax (provision) | (19,453) | 104 | (19,349) |
| Net income | 6,272 | 634 | 6,906 |
| Net income applicable to common shares | $ 2,549 | $ 634 | $ 3,183 |
| Comprehensive income | $ 4,536 | $ 634 | $ 5,170 |
| Net income per common share - basic | $ 0.04 | $ 0.01 | $ 0.05 |
| Net income per common share - diluted | $ 0.04 | $ 0.01 | $ 0.05 |

| Year Ended December 31, 2016 | As Previously Reported | Adjustments | As Restated |
|---|---|---|---|
| Revenues | $ 272,865 | $ 3,119 | $ 275,984 |
| Costs of processing and distribution | 140,516 | 2,141 | 142,657 |
| Gross profit | 132,349 | 978 | 133,327 |
| Marketing, general and administrative | 116,125 | 541 | 116,666 |
| Research and development | 16,090 | 207 | 16,297 |
| Asset impairment and abandonments | 5,435 | (194) | 5,241 |
| Total operating expenses | 148,030 | 554 | 148,584 |
| Operating (loss) | (15,681) | 424 | (15,257) |
| Foreign exchange (loss) gain | (132) | 3 | (129) |
| Total other expense – net | (1,779) | 3 | (1,776) |
| (Loss) before income tax benefit | (17,460) | 427 | (17,033) |
| Income tax benefit | 3,061 | 167 | 3,228 |
| Net (loss) | (14,399) | 594 | (13,805) |
| Net (loss) applicable to common shares | $ (17,907) | $ 594 | $ (17,313) |
| Comprehensive (loss) | $ (19,181) | $ 594 | $ (18,587) |
| Net (loss) per common share – basic | $ (0.31) | $ 0.01 | $ (0.30) |
| Net (loss) per common share – diluted | $ (0.31) | $ 0.01 | $ (0.30) |

**RESPONSE:** Defendant Louw states that he was not an officer, employee or consultant of the Company on June 8, 2020 and lacks sufficient knowledge and information to form a belief as to the truth or falsity of the allegations in paragraph 228, and therefore denies them. In this denial, Defendant Louw (i) does admit that the Company filed its restated financial statement on June 8, 2020; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

229. In addition, the 2018 Amended 10-K identified material weaknesses in RTI's internal controls over financial reporting. Specifically, the report stated, in relevant part:

Based on this evaluation of our disclosure controls and procedures, our CEO and CFO have concluded that *our disclosure controls and procedures were not effective as of December 31, 2018* because of certain material weaknesses in our internal control over financial reporting, as further described below.

Management, including our CEO and CFO, assessed the Company's internal control over financial reporting and concluded that they were not effective as of December 31, 2018 ("Evaluation Date"). In making this assessment, management used the criteria set forth by the COSO framework. Based on evaluation under these criteria, management determined, based upon the existence of the material weaknesses described below, that we did not maintain effective internal control over financial reporting as of the Evaluation Date.

We did not maintain an effective control environment based on the criteria established in the COSO framework. We have identified deficiencies in the principles associated with the control environment of the COSO framework. Specifically, these control deficiencies constitute material weaknesses, either individually or in the aggregate, relating to: (i) appropriate organizational structure, reporting lines, and authority and responsibilities in pursuit of objectives; (ii) our commitment to attract, develop, and retain competent individuals; and (iii) holding individuals accountable for their internal control related responsibilities. As disclosed in the consolidated financial statements included in Item 8. "Financial Statements and Supplementary Data", these material weaknesses contributed to accounting errors. ***We did not maintain an effective control environment to enable the identification and mitigation of risks of accounting errors based on the contributing factors to material weakness in the control environment, including: The tone from executive management was insufficient to create the proper environment for effective internal control over financial reporting and to ensure that: (i) there were adequate processes for oversight; (ii) there was accountability for the performance of internal control over financial reporting responsibilities; (iii) personnel with key positions had the appropriate training to carry out their responsibilities; and (iv) corrective activities were appropriately applied, prioritized, and implemented in a timely manner***....

We did not design and implement effective control activities based on the criteria established in the COSO framework. We have identified deficiencies in the principles associated with the control activities component of the COSO framework. Specifically, these control deficiencies constitute material weaknesses, either individually or in the aggregate, relating to: (i) selecting and developing control activities and information technology that contribute to the mitigation of risks and support achievement of objectives; and (ii) deploying control activities through policies that establish what is expected and procedures that put policies into action.

The following were contributing factors to the material weaknesses in control activities:

- Lack of consistently established controls to segregate the function of recording and approving journal entries, as well as preparation and review of reconciliations with appropriate supporting documentation

- Inconsistent documentation and retention of support for the review and approval of manual journal entries.

- Inconsistent documentation and application of accounting policies and/or practice for the sales returns reserve and certain accrual accounts.

- Insufficient resources within the accounting and financial reporting department to review the accounting for non-recurring complex purchase accounting, contingent payment and segment reporting transactions.

- Insufficient design and operation of certain control activities to respond to potential risk of material misstatements in the area of revenue recognition. In particular: (i) no controls requiring customer approval for early shipments outside of agreed upon shipping terms; (ii) no controls requiring centralized retention of proof of customer approval or request related to shipping outside of agreed terms; (iii) no formal process for offering or approving discounts to customers for early shipments; and (iv) no formal controls to ensure appropriate cut-off of direct revenue to customers at period ends in line with shipping terms.

Deficiencies in control activities contributed to material accounting errors identified and corrected in 2018 and prior years. These design deficiencies in control activities contributed to the potential for there to have been material accounting errors in substantially all financial statement account balances and disclosures.

**RESPONSE:** Defendant Louw states that he was not an officer, employee or consultant of the Company on June 8, 2020 and lacks sufficient knowledge and information to form a belief as to the truth or falsity of the allegations in paragraph 229, and therefore denies them. In this denial, Defendant Louw (i) does admit that the Company filed its restated financial statement on June 8, 2020, and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

230. The 2018 Amended 10-K also identified deficiencies in the Company's risk assessment and monitoring activities. Specifically, the report stated, in relevant part:

We did not design and implement an effective risk assessment based on the criteria established in the COSO framework. We have identified deficiencies in the principles associated with the risk assessment component of the COSO framework. Specifically, these control deficiencies constitute material weaknesses, either individually or in the aggregate, relating to: (i) identifying, assessing, and communicating appropriate objectives; (ii) identifying and analyzing risks to achieve

these objectives; (iii) considering the potential for fraud in assessing risks; and (iv) identifying and assessing changes in the business that could impact our system of internal controls.

***A contributing factor to material weaknesses in the risk assessment included the fact that the Company's formal SOX compliance program did not have sufficient scope and focus on the key financial reporting risks.***

We did not design and implement effective monitoring activities based on the criteria established in the COSO framework. We have identified deficiencies in the principles associated with the monitoring component of the COSO framework.

Specifically, these control deficiencies constitute material weaknesses, either individually or in the aggregate, relating to: (i) selecting, developing, and performing ongoing evaluation to ascertain whether the components of internal controls are present and functioning; and (ii) evaluating and communicating internal control deficiencies in a timely manner to those parties responsible for taking corrective action.

***The following were contributing factors to the material weaknesses in monitoring activities:***

- Management did not properly evaluate the function and operating effectiveness of certain internal control activities, limiting its ability to detect and communicate deficiencies.

- Internal audit activities were insufficient to keep pace with the size and complexity of our business structure and organization, which limited our ability to effectively monitor internal controls.

- The Company's formal SOX compliance program did not have sufficient scope and focus on the key financial reporting risks.

- The Company did not have sufficient talent and resources with sufficient expertise to evaluate the risks and controls.

- The Company did not have sufficient oversight and supervision of the internal control evaluation process.

**RESPONSE:** Defendant Louw states that he was not an officer, employee or consultant of the Company on June 8, 2020 and lacks sufficient knowledge and information to form a belief as to the truth or falsity of the allegations in paragraph 230, and therefore denies them. In this

91

denial, Defendant Louw (i) does admit that the Company filed its restated financial statement on June 8, 2020; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

231. On that same day, June 8, 2020, RTI filed its annual report on Form 10-K for the period ended December 31, 2019 (the "2019 10-K"). The 2019 10-K summarized Defendants' errors in the quarterly financial statements issued in fiscal year 2019 as follows:

a. Revenue – *As noted above, the Company has concluded that in some instances revenue for certain invoices should have been recognized at a later date than when originally recognized. The Company identified revenue from certain customer orders that were shipped early to customers without obtaining authorized approval, and thus was recognized in an incorrect period. There were also instances in which the Company could not locate evidence that the OEM customers had requested or approved the shipments and therefore concluded revenue related to these shipments were an error. Correction* of these errors, when including the rollover effect from the immediately preceding periods, increased revenue by $0.3 million in the quarter ended March 31, 2019, decreased by $0.8 million in the quarter ended June 30, 2019 and increased by $0.6 million in the quarter ended September 30, 2019.

b. Costs of processing and distribution – Based on the corrections to the above revenue errors, when including the rollover effect from the immediately preceding periods, costs of processing and distribution increased by $0.1 million in the quarter ended March 31, 2019, decreased by $0.2 million in the quarter ended June 30, 2019 and increased by $0.1 million in the quarter ended September 30, 2019.

c. Accounts receivable – As a result of the errors corrections above, accounts receivable increased by $0.4 million in the quarter ended March 31, 2019, decreased by $0.3 million in the quarter ended June 30, 2019 and increased $0.3 million in the quarter ended September 30, 2019.

d. Inventories, net – As a result of the errors corrections above, net inventories decreased by $0.1 million in the quarter ended March 31, 2019, increased by $0.1 million in the quarter ended June 30, 2019 and increased by less than $0.1 million in the quarter ended September 30, 2019.

e. Deferred tax assets – As a result of the income tax impact of the errors corrections above, deferred tax assets decreased by $0.6 million in the quarter ended March 31, 2019, decreased by $0.5 million in the quarter

ended June 30, 2019, and decreased by $0.6 million in the quarter ended September 30, 2019.

**RESPONSE:** Defendant Louw states that he was not an officer, employee or consultant of the Company on June 8, 2020 and lacks sufficient knowledge and information to form a belief as to the truth or falsity of the allegations in paragraph 231, and therefore denies them. In this denial, Defendant Louw (i) does admit that the Company filed its Form 10-K for the period ended December 31, 2019 (the "2019 10-K"); and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

232.    In addition to itemizing the errors in the quarterly financial statements issued in fiscal year 2019, the 2019 10-K stated that "[a]dditional errors were made in connection with the recording of the acquisition of Paradigm Spine, LLC in 2019." The report summarized these errors as follows:

a.    Costs of processing and distribution – Based on the corrections to the inventory valuation and Paradigm purchase accounting, costs of processing and distribution increased by $0.3 million in the quarter ended March 31, 2019, decreased by $1.9 million in the quarter ended June 30, 2019, and by $1.2 million in the quarter ended September 30, 2019.

b.    Marketing, general and administrative – Based on the corrections to the amortization related to the other intangible assets' valuation and Paradigm purchase accounting, marketing, general and administrative expenses increased by $0.7 million in the quarter ended March 31, 2019 and increased $2.1 million in each of the quarters ended June 30, and September 30, 2019.

c.    Current inventories, net – Based on the corrections to the inventory valuation and Paradigm purchase accounting, net current inventories increased by $1.2 million in quarter ended March 31, 2019, and decreased by $12.6 million in the quarters ended June 30, and September 30, 2019.

d.    Non-current inventories, net – Based on the corrections to the inventory valuation and Paradigm purchase accounting, net non-current inventories increased by $10.3 million in quarter ended March 31, 2019, decreased $11.2 million in the quarter ended June 30, 2019, and decreased by $10.0 million in the quarter ended September 30, 2019.

e.    Deferred tax assets – Based on the corrections to the Paradigm purchase accounting deferred tax assets increased by $0.2 million in quarter ended

93

March 31, 2019, increased by $0.3 million in the quarter ended June 30, 2019, and increased by $0.5 million in the quarter ended September 30, 2019.

f. Goodwill – Based on the corrections to the Paradigm purchase accounting, goodwill decreased by $113.5 million in quarter ended March 31, 2019, decreased $76.4 million in the quarter ended June 30, 2019, and decreased by $41.7 million in the quarter ended September 30, 2019.

g. Other intangible assets - net – Based on the corrections to the Paradigm purchase accounting, net other intangible assets increased by $78.3 million in the quarter ended March 31, 2019, increased $76.2 million in the quarter ended June 30, 2019, and increased $74.1 million in the quarter ended September 30, 2019.

h. Acquisition contingencies – Based on the corrections to the contingent liability valuation and Paradigm purchase accounting, acquisition contingencies decreased by $22.8 million in each of the quarters ended March 31, and June 30, 2019 and increased $11.9 million in the quarter ended September 30, 2019.

**RESPONSE:** Defendant Louw states that he was not an officer, employee or consultant of the Company on June 8, 2020 and lacks sufficient knowledge and information to form a belief as to the truth or falsity of the allegations in paragraph 232, and therefore denies them. In this denial, Defendant Louw (i) does admit that the Company filed the 2019 10-K; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

233. The 2019 10-K also identified certain purportedly "immaterial corrections in all periods presented." Defendants summarized these errors as follows:

a. Marketing, general and administrative – The Company corrected certain errors which decreased marketing, general and administrative expenses by $0.5 million in the quarter ended March 31, 2019 and less than $0.1 million in each of the quarters ended June 30, and September 30, 2019.

b. Accounts receivable – The Company corrected certain errors which decreased accounts receivable by $0.4 million for the quarter ended March 31, 2019, and by $0.3 million for the quarters ended June 30, and September 30, 2019.

94

c. <u>Prepaid and other current assets</u> – The Company corrected certain errors which decreased prepaid and other current assets by $0.5 million for each of the quarters ended March 31, and June 30, 2019, and September 30, 2019.

d. <u>Deferred tax assets - net</u> – The Company corrected certain errors which increased net deferred tax assets by $0.7 million for the quarters ended March 31, June 30, and September 30, 2019.

e. <u>Property, plant & equipment</u> – The Company corrected certain errors which increased property, plant & equipment by $0.3 million for the quarters ended March 31, June 30, and September 30, 2019.

f. <u>Other intangible assets - net</u> – The Company corrected certain errors which decreased net other intangible assets by $0.8 million for each of the quarters ended March 31, June 30, and September 30, 2019.

g. <u>Other assets - net</u> – The Company corrected certain errors which decreased net other assets by $0.3 million for the quarters ended March 31, June 30, and September 30, 2019.

h. <u>Accounts payable</u> – The Company corrected certain errors which decreased accounts payable by $0.2 million for the quarters ended March 31, June 30, and September 30, 2019.

i. <u>Accrued expenses</u> – The Company corrected certain errors which increased accrued expenses by $0.6 million for the quarters ended March 31, June 30, and September 30, 2019.

j. <u>Payments for treasury stock</u> – The Company corrected certain errors which reclassified operating cash flows to financing cash flows for purchases of treasury stock by $0.1 million, $0.2 million, and $0.2 million for the quarters ended March 31, June 30, and September 30, 2019, respectively.

**RESPONSE:** Defendant Louw states that he was not an officer, employee or consultant of the

Company on June 8, 2020 and lacks sufficient knowledge and information to form a belief as

to the truth or falsity of the allegations in paragraph 233, and therefore denies them. In this

denial, Defendant Louw (i) does admit that the Company filed the 2019 10-K; and (ii) without

waiving any evidentiary objections with respect thereto, refers to the filing for its true and

correct contents.

95

234. Furthermore, the 2019 10-K stated that RTI's "disclosure controls and procedures were not effective as of December 31, 2019 because of certain material weaknesses in [its] internal control over financial reporting" substantially similar to those identified in the 2018 Amended 10K. The report also stated that "[r]emediation of the identified material weaknesses and strengthening [the Company's] internal control environment will require a substantial effort throughout 2020 and beyond, as necessary."

**RESPONSE:** Defendant Louw states that he was not an officer, employee or consultant of the Company on June 8, 2020 and lacks sufficient knowledge and information to form a belief as to the truth or falsity of the allegations in paragraph 234, and therefore denies them. In this denial, Defendant Louw (i) does admit that the Company filed the 2019 10-K; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

235. As a direct result of the restatement, RTI and Montagu amended their OEM acquisition terms, extending the closing date of the deal to August 31, 2020. In addition, the parties agreed to lower the OEM purchase price by approximately $40 million while eliminating an ownership stake in the go-forward OEM business for RTI worth approximately $10 million.

**RESPONSE:** Defendant Louw states that he was not an officer, employee or consultant of the Company on June 8, 2020 and lacks sufficient knowledge and information to form a belief as to the truth or falsity of the allegations in paragraph 235, and therefore denies them. In this denial, Defendant Louw (i) does admit that the Company filed the 2019 10-K; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

236. On June 29, 2020, RTI filed its quarterly report for the period ended March 31, 2020 with the SEC. With respect to the Audit Committee's investigation concerning revenue recognition, the Company admitted that:

Based on the results of the Investigation, the Company concluded ***that revenue for certain invoices should have been recognized at a later date than when originally recognized***. In response to binding purchase orders from certain OEM customers, ***goods were shipped and received***

*by the customers before requested delivery dates and agreed-upon delivery windows*. In many instances the OEM customers requested or approved the early shipments, but *the Company determined that on other occasions the goods were delivered early without obtaining the customers' affirmative approval. Some of those unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter*.

**RESPONSE:** Defendant Louw states that he was not an officer, employee or consultant of the Company on June 29, 2020 and lacks sufficient knowledge and information to form a belief as to the truth or falsity of the allegations in paragraph 236 and therefore denies them. In this denial, Defendant Louw (i) does admit that the Company filed with the SEC a quarterly report Form 10-Q for the quarterly period ended March 31, 2020 (the "Q1 2020 Form 10-Q"); and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

237. In the Company's quarterly report for the period ended June 30, 2020 filed with the SEC on August 12, 2020, RTI admitted that the material weaknesses which gave rise to the Company's restatement still "have not been remediated as of June 30, 2020."

**RESPONSE:** Defendant Louw states that he was not an officer, employee or consultant of the Company on June 29, 2020 and lacks sufficient knowledge and information to form a belief as to the truth or falsity of the allegations in paragraph 237 and therefore denies them. In this denial, Defendant Louw (i) does admit that the Company filed with the SEC the Q1 2020 Form 10-Q; and (ii) without waiving any evidentiary objections with respect thereto, refers to the filing for its true and correct contents.

## ADDITIONAL ALLEGATIONS SUPPORTING SCIENTER

238. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

97

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as

to truth of the allegations in paragraph 238, and therefore denies them.

239. Defendants' material misstatements and omissions, as alleged above, were made intentionally, knowingly, and/or with deliberate recklessness, and had the purpose and effect of concealing the adverse truth about RTI's true financial results, performance, and internal controls from the investing public, consequently buoying and artificially inflating the trading price of RTI common stock. In addition to the foregoing, the following facts, when viewed in their *totality*, demonstrate a strong inference that Defendants' false statements and material omissions were made with actual knowledge of their falsity or with deliberate recklessness, *i.e.*, *scienter*.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 239.

240. The revenue that RTI improperly recognized and reported was from contractual arrangements which were primarily with its core OEM business. The OEM business was increasingly important to RTI's financial results as the Class Period progressed, particularly as part the OEM business's two-year transformation effort that culminated in its growth offsetting the underperformance of RTI's spine business in Q3 2019.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 240.

241. That the OEM business was integral to RTI's success and growth during the Class Period was exemplified by it accounting for the largest portion of the Company's overall revenue and by it being a regular and important focus and discussion by the Individual Defendants with analysts and the market during earnings conference calls and in press releases and SEC filings. Given the importance of the OEM business, the Individual Defendants were necessarily keenly attentive to the contractual arrangements with the OEM business, particularly with respect to when goods were shipped and thus could be included in RTI's revenue. Indeed, Defendant Farhat explicitly touted the OEM business as "serving [] leading medical technology companies under long-term high margin contracts" and when asked about RTI's guidance, Defendant Singer noted that "there's always a certain element of delivery window with the OEM customers that come into play at the end of the quarter" during RTI's October 31, 2019 Q3 2019 earnings call.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 241, except he admits that

(i) RTI held an investor earnings call on October 31, 2019; and (ii) without waiving any

evidentiary objections with respect thereto, refers to the transcripts of the call for its true

and correct contents.

242. Accurate recognizing and accounting of revenue for RTI was straightforward. Goods should have been recorded as revenue in the quarter that they were shipped to customers, and goods should have been shipped in the quarter that customers requested delivery dates and had agreed-upon delivery windows. Based on customer contracts and invoices, the information of when goods were supposed to be shipped to customers was available to and capable of being readily discovered by the Individual Defendants. Thus, the inflated, prematurely, or improperly-recognized revenue was known or readily apparent to the Individual Defendants. As RTI now concedes, revenue for certain invoices should have been recognized at a later date than when originally recognized and goods were shipped and received by certain OEM customers before requested delivery dates and agreed-upon delivery windows.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 242.

243. Moreover, the improper revenue recognition required affirmative, coordinated acts of regularly shipping goods to customers prematurely. Therefore, the improper conduct required large-scale, consistent coordination between distinct personnel who managed customer orders, managed shipping logistics, amassed operational data for the accounting department, and completed the financials. Defendants' conduct goes well beyond a solitary accounting error. It was a coordinated scheme to assess financials before the period end; identify perceived shortfalls; identify orders that, if shipped early, could remediate or mitigate those shortfalls; implement the premature shipments; and update the accounting to incorporate revenue from the premature shipment—all on a repetitive, ongoing basis spanning across multiple financial reporting periods and fiscal years. The sheer scope of this conduct indicates RTI's knowledge or deliberate recklessness.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 243.

244. Furthermore, during the Class Period, Defendants were required to adopt a new accounting standard which required them to undertake an in-depth, retrospective examination of their contracts, including the ones later identified as highly problematic. Defendants claimed to have completed this analysis prior to January 1, 2018.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 244, except he admits that

RTI adopted a new accounting standard during the Class Period.

99

245.    The Individual Defendants' focus on, and prioritization of, hitting RTI's quarterly revenue targets over accurate accounting and truthful financial reporting and disclosures as members of the Company's executive management set a "tone at the top" and cultural environment in which internal controls were materially weak and deficient and failed to prevent or detect the improper recognition of revenue. As RTI now admits, "[t]he **tone from executive management was insufficient**," which led to little or no "adequate processes for **oversight**," little or no "**accountability** for the performance of internal control over financial reporting responsibilities," few or no personnel in "key positions" with "the appropriate **training** to carry out their responsibilities," and "**corrective activities** were [not] appropriately **applied, prioritized, and implemented** in a timely manner." As a result, investors received materially misleading financial results and information from Defendants during the Class Period that ultimately had to be restated.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 245.

246.    In addition to RTI's explicit admissions about its executive management's "tone at the top," the Company terminated Defendant Louw just days after the revelations of the accounting scandal at RTI. Defendant Louw had been a part of RTI's finance team since June 2003 in various roles including Vice President of Financial Planning and Analysis and a promotion to CFO in January 2020, contingent and effective upon RTI's proposed sale of its OEM business. His removal as proposed CFO in close proximity to the revelation of the improper revenue recognition is a powerful indicator that he was at least partly responsible for RTI's false accounting and related misconduct. Indeed, there is no other proffered or rational explanation for the sudden departure of a financial executive who had previously been announced as the putative CEO. That departure, therefore, further supports a strong inference of his scienter.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 246, except he admits that he was employed by RTI since June 2003 in various roles, including Vice President of Financial Planning and Analysis, and was promoted to CFO, effective January 2020, contingent and effective upon RTI's successful completion of the proposed sale of RTI's OEM business. Defendant Louw asserts that he was employed by RTI until April 8, 2020, which was before the contingency occurred, and was retained in consultant role by RTI thereafter.

247.    The Individual Defendants designed, maintained, and implemented so-called internal controls that, by RTI's own admission, were – and remain – materially deficient. The Individual Defendants were able to exploit such ineffective and deficient internal controls, thereby enabling the improper recognition of

revenue that was not supposed to be earned until a later quarter, thereby overstating the Company's reported financial performance metrics, including revenue, net income, and earnings per share. By their design, RTI's internal controls during the relevant time period lacked appropriate transparency and the open flow of communication and dissemination of relevant and pertinent information from senior management — particularly with respect to the contractual arrangements in the OEM business. The internal controls also lacked processes, controls, adequate mechanisms, and oversight to ensure accountability for the performance of internal control over financial reporting responsibilities, to ensure that key personnel had adequate training to fulfill their financial reporting responsibilities, or to ensure that corrective actions were appropriately applied, prioritized and implemented in a timely manner.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 247.

248. Owing to the deficient internal control practices and processes the Individual Defendants designed, implemented and maintained, there was no adequate management oversight of accounting or financial reporting activities in implementing accounting practices to conform to GAAP. There was a lack of management oversight regarding completeness and accuracy of data that was material to financial reporting. There was a lack of robust, documented accounting policies. Beyond these admissions, RTI has further recently admitted that its procedures were insufficiently designed in order to advance accounting policies into effective action. In sum, and owing to its woefully deficient and essentially lax, ineffective internal controls, the Company's Executive Officers were able to and did cause the manipulation of the timing of shipments and corrupted the accuracy and reliability of RTI's reported financial results.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 248.

249. RTI's ineffective and weak internal controls, established and exploited by the Individual Defendants, were symptomatic of a corporate culture, emanating from a tone at the top, that lacked ethics or integrity, and was not averse to playing with the numbers. Those internal controls and the defective corporate culture further support a strong inference that Defendants acted with the requisite scienter with respect to the reporting of materially false and misleading financial results.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 249.

250. The Individual Defendants established, implemented, and maintained a control environment that enabled their accounting manipulations and false financial reporting. Books cannot and do not cook themselves. RTI's system of internal controls over financial reporting was a constant and continuing focus of defendants' communications with the market in SEC filings. The Individual

Defendants acknowledge in the Company's SEC filings, which they executed, the importance of adequate and effective internal controls to the market given their connection to rendering reliable financial results. Yet RTI's internal controls were materially weak, and violated accounting standards, as the Company's management has now admitted.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 250.

251. The Individual Defendants designed and implemented weak controls, exploited their weakness, and then exploited their own SOX certifications, misleading the market by falsely declaring their controls to be effective and adequate, and RTI's financial accounting free of fraud. The salutary intent and goals of SOX certifications intended by Congress to safeguard investors from fraud, were instead weaponized by the Individual Defendants to deceive. Their public SOX certifications, falsely conveying a representation and impression that RTI's financial results were reliable, raise a strong inference that the Individual Defendants acted with an intent to deceive, while internally withholding material information, inflating reported revenues that RTI was not supposed to earn or was not entitled to earn until a later quarter, and deceptively skewing the Company's financial results.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 251.

252. Less than three weeks before the first corrective disclosure, moreover, Defendant Singer engaged in a stock sale that were suspiciously timed and out of line with his pre- and post-Class Period trading history. Specifically, Defendant Singer sold 11,450 Company shares for a gain of approximately $44,444 during the Class Period, but has sold no shares since. Through this insider trading, Defendant Singer reaped substantial profits from artificial inflation imbedded in the trading price of RTI common stock as a result of defendants' materially false and misleading public statements and omissions. Defendant Singer' trading in RTI stock at a profit, while investors were being deceived regarding the Company's financial results and internal controls, supports a strong inference of his scienter.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 252, and therefore denies them.

253. The Class Period sale by Defendant Singer is also highly suspicious given the fact that he served as RTI's CFO since September 2017 and was promoted to COO in January 2020, contingent and effective upon the Company's proposed sale of its OEM business. Despite his positive statements to the market, including the annual reports filed with the SEC on Forms 10-K, Singer elected to sell some of his holdings rather than continue to hold RTI stock in order to ostensibly enjoy the further appreciation in its stock trading price. The insider sale perpetrated

by Singer was in flagrant violation of his duty under the federal securities laws to "abstain or disclose." That sale also demonstrates that Singer acted with actual acknowledge or deliberate recklessness: indeed, he had a powerful motive to buoy or inflate the price of RTI stock by making or otherwise rendering false statements and financial results to the market to increase or buoy the trading price of RTI stock as well as the selling price of its OEM business.

**RESPONSE:** Defendants denies the allegations in paragraph 253, except he admits that Singer has been RTI's CFO since September 2017 and was promoted to COO in January 2020 contingent and effective upon RTI's successful completion of the proposed sale of RTI's OEM business.

254. Finally, during the Class Period, Defendants repeatedly told the market that they would undertake, and were undertaking, a comprehensive strategic review of the Company's business lines and operations to leverage the company's expertise, technology and products, and identify opportunities that can generate the most value for RTI's customers, employees and shareholders. Collectively, Defendants were intimately involved with and benefited for multiple financial reported from this ongoing scheme that inflated RTI's reported financials to investors. Defendants acted with knowledge or, at a minimum, deliberate recklessness as to that conduct.

**RESPONSE:** Defendant denies the allegations in paragraph 254, except he admits that RTI made public statements during the purported Class Period relating to undertaking a comprehensive strategic review of the Company's business lines and operations and refers to the contents of those statements.

### LOSS CAUSATION

255. The false and misleading misrepresentations and material omissions, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class members she represents.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 255.

256. During the Class Period, Plaintiff and Class members purchased RTI common stock at artificially inflated prices and were damaged thereby. The price of the Company's securities declined significantly when the misrepresentations made to the market, and/or the information alleged herein to have been

103

concealed from the market, and/or the effects thereof, were disseminated and publicly revealed.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to truth of the allegations in paragraph 256 and therefore denies them.

257. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of RTI common stock, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about RTI's business, operations, financial performance, and adequacy of its internal controls, as alleged herein.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 257.

258. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by the Plaintiff and other members of the Class. Defendants made or caused to be made materially false and/or misleading statements about RTI's financial results, internal controls and related financial metrics and the reliability of their reported results. These material misstatements and/or omissions had the cause and effect of creating in the market a false positive assessment of the Company and its financial performance, internal controls and related well-being, thus causing the Company's securities to be overvalued and the price of its common stock to be artificially inflated at all relevant times. Defendants' materially false and/or misleading statements, as alleged herein, resulted in the Plaintiff and other members of the Class in purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed in a series of corrective disclosures including those on March 16, 2020, March 20, 2020, and March 30, 2020, causing the trading price of RTI common stock to materially decline, and removing the previously embedded artificial inflation.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 258 and therefore denies them.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

259. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons or entities that purchased or otherwise acquired RTI common stock during the

Class Period and were damaged thereby. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

**RESPONSE:** Defendant Louw lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 259 and therefore denies them.

260. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, RTI common stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by RTI or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

**RESPONSE:** Defendant Louw lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 260 and therefore denies them.

261. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 261 and therefore denies them.

262. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

**RESPONSE:** Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 262 and therefore denies them.

263. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

105

a. whether the federal securities laws were violated by Defendants' acts as alleged herein;

b. whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of RTI;

c. whether the Individual Defendants caused RTI to issue false and misleading financial statements during the Class Period;

d. whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

e. whether the prices of RTI common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

f. whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 263 and therefore denies them.

264. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 264.

265. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b. the omissions and misrepresentations were material;

c. RTI common stock is traded in an efficient market;

d. the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

e. The Company traded on the NASDAQ and was covered by multiple analysts;

f. the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

g. Plaintiff and members of the Class purchased, acquired and/or sold RTI common stock between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

**RESPONSE:** Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 265 and therefore denies them.

266. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 266.

267. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 267.

<u>**COUNT I**</u>
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**
<u>**Against All Defendants**</u>

268. Plaintiff repeats and realleges each and every allegation contained in ¶¶1-267 as if fully set forth herein.

**RESPONSE:** Defendant Louw re-alleges and incorporate by reference his answers to ¶¶ 1-267 above as if fully set forth herein.

269. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 269, and therefore denies them.

270. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 270.

271. Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they:

a. employed devices, schemes and artifices to defraud;

b. made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

c. engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of RTI common stock during the Class Period.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 271, including all subparts.

272. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of RTI were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of RTI, their control over, and/or receipt and/or modification of RTI's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning RTI, participated in the fraudulent scheme alleged herein.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 272.

273. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts

108

in the statements made by them or other RTI personnel to members of the investing public, including Plaintiff and the Class.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 273.

274. As a result of the foregoing, the market price of RTI common stock was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of RTI common stock during the Class Period in purchasing RTI common stock at prices that were artificially inflated as a result of Defendants' false and misleading statements.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 274.

275. Had Plaintiff and the other members of the Class been aware that the market price of RTI common stock had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased RTI common stock at the artificially inflated prices that they did, or at all.

**RESPONSE:** Defendant Louw lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 275, and therefore denies them.

276. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 276.

277. By reason of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of RTI common stock during the Class Period.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 277.

WHEREFORE, Defendant Louw demands judgment in his favor with prejudice on Count I.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

278. Plaintiff repeats and realleges each and every allegation contained in ¶¶1-277, as if fully set forth herein.

**RESPONSE:** Defendant Louw re-alleges and incorporates by reference his answers to ¶¶ 1-277 above as if fully set forth herein.

279. During the Class Period, the Individual Defendants participated in the operation and management of RTI, and conducted and participated, directly and indirectly, in the conduct of RTI's business affairs. Because of their senior positions, they knew the adverse non-public information about RTI's current financial position and future business prospects.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 279.

280. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to RTI's business practices, and to correct promptly any public statements issued by RTI which had become materially false or misleading.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 280, except he admits that the federal securities laws impose upon directors and officers certain duties.

281. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which RTI disseminated in the marketplace during the Class Period concerning the Company's business, operational and accounting policies. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause RTI to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of RTI within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of RTI common stock.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 281.

282. Each of the Individual Defendants, therefore, acted as a controlling person of RTI. By reason of their senior management positions and/or being directors of RTI, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, RTI to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised

110

control over the general operations of RTI and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 282.

283.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by RTI.

**RESPONSE:** Defendant Louw denies the allegations in paragraph 283.

WHEREFORE, Defendant Louw demands judgment in his favor with prejudice on Count II.

## DEFENSES AND AFFIRMATIVE DEFENSES

Defendant Louw states the following defenses and affirmative defenses without assuming the burden of proof on any such defenses that would otherwise fall on Plaintiff.

1.    Under *Janus Capital Grp., Inc. v. First Derivative Traders,* 564 U.S. 135 (2011), Defendant Louw cannot be held responsible for any of the alleged material misstatements for which he was not the maker.  Therefore, at a minimum, Defendant Louw cannot be liable for the allegations in paragraphs in paragraphs 93-99 (the 2015 10-K); paragraphs 100-101 (the April 28, 2016 8-K); paragraphs 102-104 (the Q1 2016 Earnings Call); paragraphs 106-109 (the Q1 2016 10-Q); paragraphs 110-111 (the July 27, 2016 8-K); paragraphs 112-116 (the Q2 2016 Earnings Call); paragraphs 117-120 (the Q2 2016 10-Q); paragraphs 121-123 (the October 25, 2016 8-K); paragraphs 124-126 (the Q3 2016 Earnings Call); paragraphs 128-131 (the Q3 2016 10-Q); paragraphs 132-134 (the February 23, 2017 8-K); paragraphs 142-144 (the Q1 2017 10-Q); paragraphs 145-147 (the August 9, 2017 8-K); paragraphs 148-152 (the Q2 2017 Earnings Call); paragraphs 153-156 (the Q2 2017 10-Q); paragraphs 159-161 (the November 2, 2017 8-K); paragraphs 162-165 (the Q3 2017 10-Q); paragraphs 166-171 (the 2017 10-K); paragraphs 172-173 (the May 3, 2018 8-K); paragraphs 174-176

(the Q1 2018 Earnings Call); paragraphs 177-179 (the Q1 2018 10-Q); paragraphs 180-181 (the August 2, 2018 8-K); paragraphs 182-185 (the Q2 2018 10-Q); paragraphs 186-188 (the November 1, 2018 8-K); paragraphs 189-191 (the Q3 2018 Earnings Call); paragraphs 192-195 (the Q3 2018 10-Q); paragraphs 196-197 (the Q4 2018 Earnings Call); paragraphs 198-203 (the 2018 10-K); paragraphs 204-205 (the Q1 2019 Earnings Call); paragraphs 206-208 (the Q1 2019 10-Q); paragraphs 209-211 (the Q2 2019 10-Q); paragraph 212 (the Q3 2019 Earnings Call); and paragraphs 213-216 (the Q3 2019 10-Q).

2.      The Complaint fails to state a claim against any Defendant upon which relief can be granted.

3.      The claims in the Complaint are contradicted by documentary evidence.

4.      The claims in the Complaint are barred, in whole or in part, by the doctrines of laches, waiver, equitable estoppel, ratification and/or unclean hands.

5.      The claims in the Complaint are barred, in whole or in part, because Plaintiff lacks standing to pursue claims against Defendant Louw.

6.      The claims in the Complaint are barred, in whole or in part, because Defendant Louw did not act with scienter.

7.      The claims in the Complaint are barred, in whole or in part, because any alleged false statement or omission identified in the Complaint was not material.

8.      The claims in the Complaint are barred, in whole or in part, because Defendant Louw has not made any untrue statements of material fact nor has he omitted any material facts necessary to make his statements not misleading.

112

9.     The claims in the Complaint are barred, in whole or in part, because all allegedly material information allegedly omitted from Defendant Louw's public statements and the Company's public filings was already disclosed to and known by the market.

10.     The claims in the Complaint are barred, in whole or in part, because Defendant Louw had no duty to disclose the allegedly omitted information.

11.     The claims in the Complaint are barred, in whole or in part, because Defendant Louw had no duty to characterize disclosed facts pejoratively.

12.     The claims in the Complaint are barred, in whole or in part, because the Complaint fails to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b) and/or the requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA").

13.     The claims in the Complaint are barred, in whole or in part, because the statements alleged in the Complaint to be false and misleading are forward-looking statements accompanied by meaningful cautionary language and are therefore not actionable under the safe harbor provisions of the PSLRA and/or the bespeaks caution doctrine.

14.     The claims in the Complaint are barred, in whole or in part, because the alleged misstatements were puffery and/or statements of optimism.

15.     The claims in the Complaint are barred, in whole or in part, because the statements that Plaintiff challenges are non-actionable statements of opinion.

16.     The claims in the Complaint are barred, in whole or in part, because of the lack of loss causation and because Defendant Louw's public statements did not cause any losses.

113

17.     The claims in the Complaint are barred, in whole or in part, because of the lack of transaction causation.

18.     The claims in the Complaint are barred, in whole or in part, because of the lack of price impact.

19.     The claims in the Complaint are barred, in whole or in part, because this action may not be maintained as a class action pursuant to Federal Rule of Civil Procedure 23.

20.     The claims in the Complaint are barred, in whole or in part, because Plaintiff is not an adequate or appropriate class representative.

21.     The claims in the Complaint are barred, in whole or in part, because the injuries Plaintiff sustained, if any, were caused by the actions or inactions of parties other than Defendants, or outside the control of Defendants, or caused by economic events that were outside the control of Defendants. These actions, inactions, and events were intervening or superseding causes of Plaintiff's alleged injuries.

22.     The claims in the Complaint are barred, in whole or in part, because the actions or inactions of Defendants were not the sole or partial cause of any decision by Plaintiff to purchase the Company's shares.

23.     The claims in the Complaint are barred, in whole or in part, because any alleged depreciation in the value of the Company's shares resulted from factors other than the misstatements or omissions alleged in the Complaint.

24.     The PSLRA requires that any liability of Defendants under the federal securities laws be determined in accordance with the proportionate fault provisions of 15 U.S.C. § 78u-4. Accordingly, Defendant Louw is entitled to a submission asking the jury to

114

assess the percentage of fault of each Individual Defendant and/or other persons or entities that the jury finds contributed to cause the harm alleged by Plaintiff (if any).

25. Plaintiff is limited to only those damages authorized by the Securities Exchange Act of 1934 and the PSLRA and Plaintiff may not recover damages in excess of those authorized by these statutes or the regulations promulgated pursuant to these statutes.

26. Defendant Louw is or may be entitled to indemnification from others including other Defendants for all or part of any judgment recovered against him.

27. The claims in the Complaint are barred, in whole or in part, because Defendant Louw's actions at all times were undertaken in good faith and for the benefit of investors.

28. Plaintiff's claim under Section 20(a) of the Exchange Act of 1934 ("Exchange Act") against Defendant Louw is barred, in whole or in part, because he is not a "control person" within the meaning of Section 20(a).

29. Plaintiff's Section 20(a) claim against Defendant Louw is barred, in whole or in part, because Defendant Louw did not violate the federal securities laws. Thus, Defendant Louw did not commit a primary violation for which the he could be secondarily liable.

30. The claims in the Complaint are barred, in whole or in part, because Plaintiff never relied on any alleged statements, acts, or omissions of Defendant Louw.

31. The claims in the Complaint are barred, in whole or in part, because Plaintiff had actual or constructive knowledge of the allegedly untrue statements of material fact, omissions of material fact, misleading statements, or other actions by Defendant Louw set forth in the Complaint, and therefore assumed the risk of any alleged damages actually and/or legally caused thereby.

32.     The claims in the Complaint are barred, in whole or in part, by Plaintiff's own actions, omissions, and/or negligence.

33.     The claims in the Complaint are barred, in whole or in part, because Plaintiff failed to mitigate her alleged damages. Without admitting that Plaintiff suffered damages in any amount, or that Defendant Louw is or should be liable for any such damages, to the extent that Plaintiff failed to mitigate any damages referred to in her Complaint, any recovery against Defendant Louw must be reduced by that amount.

34.     The claims in the Complaint are barred, in whole or in part, because Defendant Louw relied in good faith on the advice and/or unqualified opinions of RTI's independent auditors.

35.     The claims in the Complaint are barred, in whole or in part, because the financial statements that Plaintiff complains about (either directly or indirectly through allegations about statements and/or press releases based thereon) were audited by RTI's independent auditors and approved by such independent auditors as presenting fairly, in all material respects, RTI's financial condition in accordance with Generally Accepted Accounting Principles.

36.     Plaintiff's claims are barred, in whole or in part, because at all relevant times, Mr. Louw relied in good faith on the representations, reports, expert opinions, and advice of others.

37.     The claims in the Complaint are barred, in whole or in part, because Plaintiff's damages, if any, are too speculative or remote to ascertain with reasonable certainty.

38.     Plaintiff's claims are barred, in whole or in part, to the extent that she held, disposed of, or could have disposed of the securities at a price in excess of the purchase price.

116

39. Without admitting that plaintiff suffered damages in any amount, or that Mr. Louw or any other defendant is or should be liable for any such damages, to the extent that Plaintiff failed to mitigate, minimize, or avoid any loss or damage referred to in the Complaint, any recovery by plaintiff must be reduced by that amount or eliminated.

Defendant Louw reserves and asserts all defenses and affirmative defenses available under any applicable law or regulation. Defendant Louw reserve the right to assert any additional defenses or affirmative defenses that may develop during the litigation of this action or to correct, supplement, or amend these affirmative defenses up through and including trial.

## TRIAL BY JURY DEMANDED

Defendants demand a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Defendant Louw respectfully request that the Court:

(a)     dismiss the Complaint against Defendant Louw in its entirety with prejudice or, alternatively, enter judgment in Defendants' favor;

(b)     award reasonable attorneys' fees and costs to Defendant Louw; and

(c)     grant such other and further relief as the Court deems just and proper.

117

Dated: April 29, 2021

Respectfully submitted:



Attorneys for Defendant Johannes W. Louw
1200 Four Seasons Tower
1441 Brickell Avenue
Miami Florida 33131
Phone: (305) 350-5100
Fax: (305) 372-2738

By:  /s/ *Russell Koonin*
Russell Koonin, Esq. (admitted *pro hac vice*)
Email: rkoonin@homerbonner.com
Adam Schwartz, Esq. (admitted *pro hac vice*)
Email: aschwartz@homerbonner.com

 -and-

**Jayaram Law, Inc.**
125 S. Clark Street
Suite 1175
Chicago Illinois 60603
Phone: 312-212-8676
Fax: 312-661-5910

Vivek Jayaram, Esq.
IL Bar No. 6284388
vivek@jayaramlaw.com
Elizabeth Austermuehle, Esq.
IL Bar No. 6302326
liz@jayaramlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 29, 2021, I electronically filed the foregoing document using the ECF System for the United States District Court for the Northern District of Illinois. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record in this matter registered on the ECF system.


*/s/ Russell Koonin*
Russell Koonin