**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

PATRICIA LOWRY, individually and on
behalf of all others similarly situated,

                    Plaintiff,

v.

RTI SURGICAL HOLDINGS, INC.,
CAMILLE I. FARHAT, BRIAN K.
HUTCHISON, JONATHON M. SINGER,
ROBERT P. JORDHEIM, and JOHANNES
W. LOUW,

                    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No.: 20-cv-01939
Honorable Matthew F. Kennelly

**CLASS PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR FINAL APPROVAL OF SETTLEMENT AND**
**PLAN OF ALLOCATION AND CERTIFICATION OF THE CLASS**

| | |
|---|---|
| **POMERANTZ LLP** | **ROCHE FREEDMAN LLP** |
| 10 South LaSalle Street, Suite 3505 | SunTrust International Center |
| Chicago, Illinois 60603 | 1 S.E. 3rd Avenue, Suite 1240 |
| Telephone: 312-377-1181 | Miami, FL 33131 |
| | Telephone: 305-851-5997 |

*Lead and Proposed Class Counsel*

## I.  INTRODUCTION

Class Representative Lead Plaintiff Rosy Yeretsian ("Class Plaintiff") respectfully submits this memorandum of law in support of her Motion for Final Approval of the Settlement of this Action pursuant to Federal Rule of Civil Procedure 23(e), and for approval of the Plan of Allocation of settlement proceeds. The terms of the Settlement are set forth in the Stipulation of Settlement dated August 31, 2021 ("Stipulation") (ECF No. 95-1).[1] Pursuant to these terms, a $10.5 million cash settlement fund has been established for the benefit of the Class.

The Settlement is the result of Class Counsel's vigorous litigation efforts and arm's-length settlement negotiations with Defendants RTI Surgical Holdings, Inc., Farhat, Hutchison, Singer, Jordheim, and Louw ("Defendants"). The parties also obtained the substantial assistance of a skilled, experienced mediator, Michelle Yoshida. Because the Settlement is an excellent result for the Class, Class Plaintiff and Class Counsel firmly believe that it should be approved.

From their appointment through the settlement, Class Plaintiff and Class Counsel zealously litigated this case.  Defendants have repeatedly expressed their belief that Class Plaintiff could not prevail at trial on the Exchange Act claim. Indeed, Defendants filed four motions to dismiss, contesting falsity and scienter, and Defendants maintained that—even if Plaintiff could adequately plead and subsequently prove falsity and scienter—Plaintiff still would be unable to prove loss causation and damages associated with each stock drop alleged in the Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint") (ECF No. 53). Despite these obstacles, Class Plaintiff and Class Counsel were able to achieve a highly favorable Settlement as a direct result of their aggressive efforts during the course of litigation.

Class Counsel, who are leaders in the field and have substantial experience in prosecuting

---

[1] Unless otherwise defined herein, capitalized terms have the same meaning as defined in the Stipulation (ECF No. 95-1) and/or Class Plaintiff's Motion for Preliminary Approval of Settlement [ECF Nos. 96, 101].

complex securities fraud class actions, believe that the Settlement is in the best interests of the Class. This conclusion is based on the substantial risk, expense, and delay of continued litigation; the strengths and weaknesses of the claims and defenses asserted; the legal and factual issues presented; the likelihood of achieving a larger judgment at trial and preserving a larger judgment on appeal; and past experience in litigating complex actions.

In reaching this conclusion, Class Plaintiff and Class Counsel have also considered that the Settlement here represents a much better than average percentage recovery for a securities fraud class action. The $10,500,000 cash benefit conferred by the Settlement represents between 28% – 35% of the $30 – $37 million damages range estimated by Class Plaintiff's experts (**if** Class Plaintiff proved all allegations and prevailed on the entirety of the claims). This percentage recovery exceeds industry benchmarks. According to a recent review of securities class action settlements, cases alleging damages of $25 million to $74 million typically settle for about 8% of total damages. Laarni T. Bulan et al., Securities Class Action Settlements: 2019 Review and Analysis (Cornerstone Research).[2] Thus, the recovery in this case is over 3 times the typical amount recovered for the class in securities class action cases.

Thus, Class Plaintiff and Class Counsel respectfully submit that the Settlement, an outstanding result for the Class, should be approved by the Court. Likewise, the Plan of Allocation of settlement proceeds developed by Class Counsel and their experts and set forth in the Notice of Pendency of Class Action and Proposed Settlement ("Mailed Notice") (*see* Declaration of Jordan Broker ("Broker Decl.") submitted herewith as Exhibit ("Ex.") 1 to the Joint Decl., is fair, reasonable, and adequate and should be approved by the Court. As of the date of this memorandum, no Class Member has

---

[2] Available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2019-Review-and-Analysis.

objected to the Settlement, objected to the Plan of Allocation, or opted out of the Class.[3]

## II.     THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.     Federal Courts Favor Settlement of Class Actions.

"Federal courts naturally favor the settlement of class action litigation." *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 877 F.3d 276, 283 (7th Cir. 2017) (citing Fed. R. Civ. P. 23(e)(2)); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). "In the class action context . . . there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980)) *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

"Although such settlements must be approved by the district court, its inquiry is limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196. "When considering whether a proposed settlement meets the requirements of Rule 23, the Court does not decide whether the agreement reached between the parties is the best possible deal for plaintiffs, nor whether the class has received the same benefit from the settlement as they would have recovered from a trial." *In re: Sears, Roebuck and Co. Front-Loading Washer Prods. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *6-*7 (N.D. Ill. Feb. 29, 2016).

Indeed, "[c]ourts should not substitute their own judgment as to the optimal settlement terms for the judgment of the litigants and their counsel." *Id.*; *see also Sears, Roebuck*, 2016 WL 772785, at *7 ("Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs."); *In re Mexico Money Transfer Litig.*,

---

[3] The deadline for objecting is January 10, 2022. Should any objections be timely filed, Class Counsel will address them in a reply brief.

164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) ("In evaluating … settlement[s], the court[s] recognize[] that the essence of settlement is compromise and will not represent a total win for either side."); *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987) ("The temptation to convert a settlement hearing into a full trial on the merits must be resisted.").

Finally, a "strong presumption of fairness attaches to a settlement agreement when it is the result of [arm's-length] negotiation." *In re Harnischfeger Indus., Inc.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002) (citation omitted); *Shah v. Zimmer Biomet Holdings, Inc.*, No. 3:16-CV-815-PPS-MGG, 2020 WL 5627171, at *6 (N.D. Ind. Sept. 18, 2020) ("That they reached this settlement at arms' length supports the notion that it is fair and reasonable.").

**B.    Each Applicable Factor Favors Approval of the Parties' Settlement.**

Courts in the Seventh Circuit consider five factors (the "*Synfuel* factors") to evaluate the fairness of a class action settlement:

(1)    "the strength of plaintiffs' case compared to the amount of defendants' settlement offer;"

(2)    "an assessment of the likely complexity, length and expense of the litigation;"

(3)    "an evaluation of the amount of opposition to settlement among affected parties;"

(4)    "the opinion of competent counsel;" and

(5)    "the stage of the proceedings and the amount of discovery completed at the time of settlement."

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006); *see also Isby*, 75 F.3d at 1199; *Armstrong*, 616 F.2d at 314; *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997). In reviewing these factors, courts view the facts "in the light most favorable to the settlement." *Isby*, 75 F.3d at 1199. Each of these factors strongly favors approval of the Settlement.

**1.    The Strength of Class Plaintiff's Case Compared to the Settlement Amount Supports Approval.**

"The most important factor is the first one – the relative 'strength of plaintiffs' case on the

4

merits balanced against the amount offered in the settlement." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (Kennelly, J.). Under this factor, courts consider whether the proposed settlement is reasonable in light of the risks of proceeding with the litigation. *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 961 (N.D. Ill. 2011) ("[A]n important question concerns the Class Members' expected recovery should the case proceed to trial vis-à-vis the benefits they will obtain from the instant Settlement. That is, if the Court declined to grant final approval, could the Class Members ultimately expect to obtain more favorable relief?"). Securities class actions, moreover, pose complex issues and, in turn, substantial risks at a jury trial. *See, e.g.*, *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 260-61 (D.N.H. 2007) ("Proving loss causation would be complex and difficult. Moreover, even if the jury agreed to impose liability, the trial would likely involve a confusing 'battle of the experts' over damages."). Even a successful jury verdict does not eliminate the risk to the class. *See Robbins v. Koger Props*., 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing $81 million jury verdict for securities fraud); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (overturning plaintiffs' verdict following two decades of litigation); *Hubbard v. BankAtlantic Bancorp, Inc*., 688 F.3d 713 (11th Cir. 2012) (affirming judgment as a matter of law against plaintiffs for lack of proof of loss causation despite a jury verdict on liability in favor of plaintiffs).

In light of these standards, this factor strongly favors approval of the Settlement. The $10,500,000 amount of the Settlement is not only reasonable, but also exceptional. Amounting to 28% – 35% of the potential damages that Class Plaintiff *might* recover at trial, the recovery is a multiple of the national benchmarks for securities class actions. *See supra* at 3.

On the other hand—and although Class Plaintiff's case is strong—proceeding with litigation poses substantial risks. Defendants have repeatedly denied liability. Defendants contest falsity, and even if Class Plaintiff could prove that element, Defendants contest that they acted knowingly or with

conscious misbehavior or recklessness in issuing the financials that were subsequently restated. Defendants also dispute Class Plaintiff's allegations that Defendants' misrepresentations and omissions caused the stock drops and the Class's damages. With respect to class certification, moreover, Defendants almost certainly would have contested that RTI's stock traded in an efficient market and that the Class Plaintiff and her expert could establish reliance on a class-wide basis. In sum, Class Plaintiff expects that Defendants would argue, at summary judgment and trial, that:

- the accounting errors were neither intentional nor fraudulent;

- Defendants made a good faith effort to publish accurate financials and correct previous inaccuracies;

- reliance is an individualized inquiry, defeating class certification; and

- the subject stock drops are not attributable (with statistical significance) to Defendants' disclosures, meaning the Class's damages cannot be proven.

Compounding those obstacles to a recovery for the Class, Defendants' insurance has already been drawn down by defense costs and risks being exhausted through further litigation. Indeed, there were four separate cohorts of counsel, four motions to dismiss, and multiple appearances at every hearing and every conference between Class Plaintiff and Defendants. *See*, *e.g.*, Joint Decl. at ¶¶12, 19-20. Continued litigation will only increase those substantial legal costs, while depleting the insurance proceeds that could otherwise fund a settlement or pay for a judgment in favor of the Class.

Absent insurance, moreover, RTI could prove unable to pay a settlement or satisfy a judgment. RTI has faced severe financial pressures, meaning there is substantial uncertainty as to whether the Company could satisfy a monetary judgment. In its 2020 10-K, as filed on March 16, 2021, RTI disclosed that:

- "As of December 31, 2020, we had cash of $44.0 million and an **accumulated deficit of $485.0 million**";

- "For the year ended December 31, 2020, we had a **loss** from continuing operations of $194.2 million";

- "We project we will continue to generate significant negative operating cash flows over the

6

next 12-months and beyond";

- "[W]e have forecasted the need to raise additional capital in order to continue as a going concern";

- "In consideration of the inherent risks and uncertainties and the Company's forecasted negative cash flows as described above, **management has concluded that substantial doubt exists with respect to the Company's ability to continue as a going concern within one year after the date the financial statements are issued**. Management is planning to raise additional equity financing and will attempt to curtail discretionary expenditures in the future, if necessary, however, in consideration of the risks and uncertainties mentioned, such plans cannot be considered probable of occurring at this time."[4]

Consequently, the $10.5 million Settlement eliminates multiple risks for the Class. The Class will immediately receive a substantial percentage of their damages, without facing the prospect of recovering nothing after years of prolonged and costly litigation.

### 2. The Complexity, Length, and Expense of Further Litigation Favors Approval.

Approval of the Settlement is also supported by the "likely complexity, length and expense of the litigation." *See Isby*, 75 F.3d at 1199. "Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted." *Harnischfeger Indus.*, 212 F.R.D. at 409; *see also Retsky Family Ltd. v. Price Waterhouse, LLP*, No. 97 C 7694, 2001 WL 1568856, at *2 (N.D. Ill. Dec. 10, 2001) ("Securities fraud litigation is long, complex and uncertain."); *In re Ikon Office Sols., Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA.").

Here, the complexity, length, and expense of continued litigation indicate that the Settlement should be approved. If not for this Settlement, the Action would continue to be fiercely contested, and the expense of continuing litigation through trial would be substantial. Fact and expert discovery would be time-consuming and enormously expensive, presumably involving millions of pages of documents to be reviewed by Defendants and Class Plaintiff. Class Counsel would have to depose, at

---

[4] Available at https://www.sec.gov/ix?doc=/Archives/edgar/data/1760173/000156459021013644/srga-10k_20201231.htm.

a minimum, each of the six named defendants, as well as third party Montagu Private Equity LLP. *See* ¶¶ 11, 47, 222, 235. Following discovery—including any motions to compel and/or for protective orders—the parties would engage in substantial pre-trial litigation motion practice. If Class Plaintiff's claims survived summary judgment, the parties would then incur significant time and expense to prepare for and conduct trial. Finally, if the Class were to secure a large judgment at trial, post-trial motions and appeals could delay any recovery for years. The Settlement bypasses the complexity, length, and expense that continued litigation would entail. *See, e.g.*, *Lawrence E. Jaffe Pension Plan v. Household International, Inc*., No. 02-C-5893 (N.D. Ill.) (jury verdict for plaintiffs returned on May 7, 2009, after seven years of hard-fought litigation, and final approval granted after seven more years, following an appeal, further trial court proceedings, and renewed settlement negotiations).

### 3. The Reaction of Class Members Favors Approval.

The reaction of Class members to the Settlement strongly favors approval. Of course, the fact that some class members object to a settlement does not by itself prevent the court from approving the agreement. *See Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Ill. 2001) (collecting cases in which courts approved settlements despite objections). Where only a relatively small number of class members object, it suggests that class members deem the settlement to be fair. *See, e.g., Swift v. Direct Buy, Inc.*, No. 2:11-CV-401-TLS, 2013 WL 5770633, at \*6 (N.D. Ind. Oct. 24, 2013) (citing "limited opposition to the Settlement Agreement" in granting final approval).

Here, despite widespread notice of the Settlement, no Class Member has objected or opted out. *See* ¶¶9, 42, 72, 29. Therefore, the Class's reaction to date favors approval of the Settlement.

### 4. The Opinion of Class Counsel Favors Approval.

"[T]he district court [is] entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate." *Isby*, 75 F.3d at 1200. This "factor weighs heavily in favor of the proposed settlement" where "[c]ounsel have appeared successfully in many

class actions, including some matters before this court," "[t]he court knows of no basis for the suggestion that Plaintiffs' counsel are unable or unwilling to proceed to trial in this (or any other complex) case," and "[a]ll counsel have represented to this court that the negotiation process was difficult, contentious, and protracted and that, in their opinions, the proposed settlements are fair, reasonable, and adequate." *Mex. Money Transfer Litig.*, 164 F. Supp. 2d at 1020; *see also* Hiram Walker, 768 F.2d at 889 (7th Cir. 1985) (significant weight should be attributed to experienced counsel's belief that settlement is in class's best interest).

This case has been litigated by experienced and well-respected counsel on both sides. Class Counsel are well known for their success in complex securities class action litigation and have many years of experience in litigating securities fraud class actions. *See* ECF Nos. 29-04, 29-05. Having conducted a thorough investigation into Class Plaintiff's claims—including relevant factual and legal hurdles—and received the benefit of confirmatory discovery, Class Counsel unequivocally recommend the settlement as in the Class's best interests. *See* Joint Decl., ¶¶ 10-12, 53-555.

### 5. The Stage of Proceedings Favors Approval.

The stage of proceedings also favors approval. At the time of the Settlement, Class Counsel had consulted with damages experts and were aware of the existential challenges facing RTI. *See* Joint Decl., ¶¶ 6, 10, 18, 32, 47-49. Before seeking preliminary approval, moreover, Class Counsel engaged in confirmatory discovery to confirm their deep understanding of the factual and legal issues posed by continued litigation. Thus, Class Counsel are in a well-informed position to evaluate the strengths and weaknesses of the Class's claims and the benefits of this Settlement. Accordingly, for the foregoing reasons, Class Plaintiff and Class Counsel maintain that the Settlement is in all respects fair, reasonable, and adequate and should be approved.

## III. CLASS MEMBERS WERE PROVIDED REASONABLE NOTICE

Class Plaintiff has satisfied all elements of the notice program authorized by this Court in its

Preliminary Approval Order (ECF No. 103), providing Class members reasonable notice in plain language of the terms of the Settlement, the Plan of Allocation, and their opportunity to object to or seek exclusion from the Settlement. As of December 31, 2021, a total of 15,177 Notice Packets have been mailed to potential Class Members and nominees. Broker Decl., ¶ 11. In accordance with Paragraph 5(b) of the Preliminary Approval Order, moreover, the administrator, Epiq, caused the Summary Notice of: (I) Pendency of Class Action and Proposed Settlement of Class Action; (II) Settlement Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Summary Notice") to be published via *the PR Newswire* on October 13, 2021. Additionally, copies of the Mailed Notice, Proof of Claim, and other key documents were made available on a website dedicated to the Action, and a toll-free hotline was established to answer questions of potential claimants. *See, generally,* Broker Decl., ¶¶ 3, 13-15.

Thus, the notice provided constitutes the best notice practicable under the circumstances and satisfies the requirements of due process, Federal Rule of Civil Procedure 23, and the PSLRA.[5]

## IV.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Class Plaintiff also seeks approval of the Plan of Allocation of settlement proceeds detailed in the Mailed Notice. "[A] plan for allocation of net settlement proceeds need have only a reasonable, rational basis in order to be fair and reasonable." *Shah*, 2020 WL 5627171, at *6. Moreover, district courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord Curtiss-Wright Corp. v. Helfand,* 687 F.2d 171, 173 (7th Cir. 1982) *(*quoting *Beecher*).

Class Counsel, in conjunction with their damages consultant, developed the Plan of

---

[5] Class Counsel has also been informed that Defendants have satisfied the notice provisions applicable to defendants under the Class Action Fairness Act of 2005.

Allocation, which rationally reflects the causes of action asserted in this case. The Plan of Allocation will result in a fair and equitable distribution of the proceeds among Class members who submit valid claims, as all Class members are treated equally under the plan, with each receiving no more, or less, than their *pro rata* share based on their recognized losses. Furthermore, no Class Member has objected to the Plan of Allocation. As a result, Class Counsel believe that the Plan of Allocation is fair, reasonable, and equitable to all members of the Class and should be approved.

## V.     <u>FINAL CERTIFICATION OF THE CLASS SHOULD BE GRANTED</u>

In the Preliminary Approval Order, the Court conditionally certified a class consisting of "[a]ll persons and entities that purchased or otherwise acquired shares of RTI Surgical Holdings, Inc. common stock during the period from March 7, 2016 through March 27, 2020, both dates inclusive and were damaged thereby." ECF No. 103, ¶ 1(c). As discussed in the Preliminary Approval Memorandum, certification of the Class under Rule 23 for purposes of the Settlement is appropriate *See* ECF No. 96 at 9-11; ECF No. 103.

### A.     <u>The Class Meets the Requirements of Rule 23(a)</u>

In the Seventh Circuit, there is a "strong policy favoring class actions in securities fraud actions." *In re Gen. Instrument Corp.*, No. 96 C 1129, 1999 WL 1072507, at *4 (N.D. Ill. Nov. 18, 1999) (citation omitted). For this reason, "[t]he Seventh Circuit Court of Appeals has liberally construed Rule 23 in shareholder suits." *Tatz v. Nanophase Techs. Corp.*, No. 01 C 8440, 2003 WL 21372471, at *3 (N.D. Ill. Jun. 13, 2003). Courts recognize that "securities fraud cases are uniquely situated to class action treatment since the claims of individual investors are often too small to merit separate lawsuits" and "[t]he class action is thus a useful device in which to litigate similar claims as well as an efficient deterrent against corporate wrongdoing." *Id*. (quoting *Gilbert v. First Alert, Inc.*, 904 F. Supp. 714, 719 (N.D. Ill. 1995)).

"A court may certify a class if the part[ies] seeking certification meets all the requirements of

11

Rule 23(a) and the requirements of Rule 23(b)(1), (2), or (3)." *Kolinek,* 311 F.R.D. at 490 (citation omitted). "Rule 23(a) requires the party seeking certification to demonstrate that the members of the class are so numerous … (numerosity); there are questions of law or fact common to the proposed class (commonality); the class representative's claims are typical of the claims of the class (typicality); and the representative will fairly and adequately represent the interests of the class (adequacy of representation). *Id.* at 490-91 (citing Fed. R. Civ. P. 23(a)(1)-(4)). Rule 23(b)(3), moreover, permits "class certification if questions of law or fact common to class members predominate over any questions affecting only individual members and class resolution is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*. at 492; *see also Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).

The Class meets those requirements. First, the Class is sufficiently numerous, as the Company had millions of shares of common stock outstanding during the Class Period. Indeed, over 15,000 Mailed Notices were sent to prospective Class Members. Nothing more is required to satisfy numerosity. *See Shah*, 2020 WL 5627171, at *4 ("[N]umerosity is practically a foregone conclusion in a large securities class action like this. The issue ordinarily receives only summary treatment ... and often is uncontested.").

Second, there are multiple legal and factual questions that are common to the Class. The alleged misrepresentations and omissions, as set forth in the Complaint, were common to all members of the Class. Therefore, common class-wide questions include whether Defendants' statements were false or misleading, whether Defendants' acted with scienter, and whether Class Members suffered damages when Defendants revealed the truth. *Shah*, 2020 WL 5627171, at *4.

Third, Class Plaintiff's claims are typical of those of the rest of the Class. Specifically, Class Plaintiff and all Class Members purchased RTI stock during the Class Period and suffered losses by virtue of the alleged corrective disclosures. *Shah*, 2020 WL 5627171, at *4 ("[T]ypicality is satisfied,

12

as each of the named plaintiffs traded in ZBH shares during the class period. And trading in ZBH shares during the class period is the *sine quo non* of the class.").

Fourth, Class Plaintiff is an adequate class representative. Class Plaintiff has no conflicts with the other Class Members, has retained counsel with vast experience in the prosecution of securities class actions, and has been kept apprised of the case from its inception. Thus, Class Plaintiff has demonstrated her adequacy. *Shah*, 2020 WL 5627171, at *4 ("This requirement is satisfied so long as the class representatives do not have clear conflicts of interest with the absent class members and have shown a willingness to vigorously pursue the litigation on behalf of the class.").

**B.     The Class Meets the Requirements of Rule 23(b)(3)**

Rule 23(b)(3) authorizes class certification where, in addition to the requirements of Rule 23(a), common questions of law or fact predominate over any individual question and a class action is superior to other available means of adjudication. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 607 (1997). "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). "The predominance inquiry focuses on whether a proposed class is sufficiently cohesive to warrant adjudication by representation. It is akin to, but ultimately a more demanding criterion than, the commonality inquiry under Rule 23(a)." *Shah*, 2020 WL 5627171, at *5. Moreover, superiority is "easy to satisfy in a case like this," and "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried would present intractable management problems for the proposal is that there be no trial." *Id.* at *4.

Class Plaintiff has demonstrated predominance and superiority. The central issues—which predominate over any individual issues that may arise—are whether Defendants made public statements that omitted and/or misrepresented material facts and whether Defendants did so

knowingly or recklessly. *See Shah*, 2020 WL 5627171, at *5 (finding predominance where "[t]he main issue in the case is whether statements made by ZBH to the investing public were fraudulent," that issue "is common to all members of the class," and "plaintiffs may use the fraud-on-the-market theory to show reliance on class-wide basis and thus overcome individual reliance issues").

Finally, the class action mechanism is the best method of resolving this suit. The controversy for each Class Member is essentially identical; therefore, adjudicating those controversies in one suit and one forum is efficient and economical. Moreover, most Class Members' damages are arguably too small to make it feasible to bring individual suits, with substantial litigation costs that could potentially exceed any potential recovery. Thus, this class action is superior to other methods of adjudication. *See Shah*, 2020 WL 5627171, at *5 (finding superiority because "[s]ecurities fraud cases are something of a prototypical class action" where "[y]ou generally have a group of thousands of people, all of whom were allegedly harmed by the same activity and for the same reasons . . . [b]ut most of them were only harmed in small dollar amounts").

## VI.  CONCLUSION

For the forgoing reasons, Class Plaintiff respectfully requests that the Court grant her motion for final approval of the Settlement and the Plan of Allocation and final certification of the Settlement Class and issue any other relief that the Court deems proper.

 Dated:   January 3, 2022

By: */s/ Louis C. Ludwig*
Patrick V. Dahlstrom
Louis C. Ludwig
Pomerantz LLP
10 South LaSalle St., Ste, 3505
Chicago, IL 60603
312.377.1181
pdahlmstrom@pomlaw.com
lcludwig@pomlaw.com

14

Velvel (Devin) Freedman
Kyle W. Roche
Ivy T. Ngo
Constantine P. Economides
Roche Freedman LLP
SunTrust International Center
1 S.E. 3rd Avenue
Suite 1240
Miami, FL 33131
(t) (305) 851-5997
vel@rochefreedman.com
kyle@rochefreedman.com
ingo@rochefreedman.com
ceconomides@rochefreedman.com

*Class Counsel*

Brian Schall
The Schall Law Firm
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff*

15