## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| PATRICIA LOWRY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RTI SURGICAL HOLDINGS, INC., CAMILLE I. FARHAT, BRIAN K. HUTCHISON, JONATHON M. SINGER, ROBERT P. JORDHEIM, and JOHANNES W. LOUW,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No.: 20-cv-01939<br>Honorable Matthew F. Kennelly |

## CLASS PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND REIMBURSEMENT AWARD TO CLASS PLAINTIFF

**POMERANTZ LLP**
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: 312-377-1181

**ROCHE FREEDMAN LLP**
SunTrust International Center
1 S.E. 3rd Avenue, Suite 1240
Miami, FL 33131
Telephone: 305-851-5997

*Lead and Proposed Class Counsel*

Class Representative Lead Plaintiff Rosy Yeretsian ("Class Plaintiff"), by her counsel, Roche Freedman LLP ("Roche Freedman") and Pomerantz LLP ("Pomerantz") (collectively, "Class Counsel"), respectfully submit this memorandum of law in support of her Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Reimbursement Award to Class Plaintiff.

## PRELIMINARY STATEMENT

Class Counsel[1] have succeeded in obtaining a cash settlement of $10,500,000 (the "Settlement") for the benefit of the Class in this consolidated class action (the "Action"). This is an excellent outcome in the face of substantial risks and is the result of Class Counsel's vigorous, persistent, and skilled efforts. Class Counsel now respectfully move this Court for an award of attorneys' fees in the amount of 30% of the Settlement Amount ($3,150,000), as well as reimbursement of the litigation expenses incurred in prosecuting the Action ($60,943.44). Further, Class Plaintiff respectfully requests reimbursement of the reasonable costs (including the cost of time spent) that she incurred in prosecuting the Action on behalf of the Class pursuant to 15 U.S.C. § 78u-4(a)(4).

As detailed below and in the accompanying Joint Declaration,[2] the Settlement represents a substantial recovery for the Class under the circumstances. In the absence of a settlement, the

---

[1] Unless otherwise defined, capitalized terms herein have the same meanings attributed to them in the Stipulation of Settlement (the "Stipulation"). Dkt. No. 95-1.

[2] The Joint Declaration of Constantine P. Economides and Louis C. Ludwig on Support of (I) Class Plaintiff's Motion for Final Approval of the Settlement, Plan of Allocation, and Class Certification; and (II) Class Counsel's Application for an Award of Attorneys' Fees and Expenses and Reimbursement of Class Plaintiff ("Joint Decl.") is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: procedural history and the prosecution of the claims at issue; the negotiations leading to the proposed Settlement; the risks and uncertainties of continued litigation; and a description of the services Class Counsel have provided for the benefit of the Settlement Class.

Action would likely have continued for years through the completion of fact discovery, expert discovery, summary judgment, trial, and likely appeals. Class Plaintiff and her counsel faced substantial obstacles in proving liability and damages, yet they nevertheless reached a timely and substantial resolution for the Class.

It was not easy. Defendants were represented by highly skilled litigators, and Class Counsel faced numerous hurdles and risks, including the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the high cost of fact and expert discovery needed to litigate a complex securities fraud case, and the high risk of non-payment. These are not idle risks. *See Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (stating that securities litigation is "'notoriously difficult and unpredictable'") (citations omitted). "To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). As a result, a significant number of cases are dismissed at the outset. Nor do the risks end at the pleading stage. Even when a plaintiff is successful at trial, payment is not guaranteed. *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 414, 433 (7th Cir. 2015) (vacating jury verdict in plaintiffs' favor and ordering new trial); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV., 2011 WL 1585605, at *6, *38 (S.D. Fla. Apr. 25, 2011) (granting judgment as a matter of law for defendants after jury returned verdict for plaintiffs).

Despite facing long odds, Class Counsel has vigorously pursued this case for nearly three years. Among other things Class Counsel: (1) conducted an extensive investigation, including reviewing publicly available information about RTI and interviewing former RTI employees; (2) prepared a detailed, 93-page consolidated complaint; (3) successfully briefed and argued in

opposition to Defendants' motions to dismiss; (4) analyzed documents produced by Defendants; (5) conducted a 3-hour interview of RTI's CFO; (6) consulted with loss causation and damages experts; (7) prepared a mediation brief and engaged in an all-day mediation session overseen by experienced mediator Michelle Yoshida; and (8) negotiated the final terms of the Settlement as set forth in the Stipulation. Joint Decl. ¶32. Class Counsel undertook these investigative and litigation efforts on a fully contingent basis.

As compensation for their considerable efforts on behalf of the Settlement Class, Class Counsel seeks an award equal to 30% of the Settlement Amount and reimbursement of litigation expenses in the amount of $60,943.44. The requested fee is reasonable and consistent with fees regularly awarded in class action settlements within the Seventh Circuit. The reasonableness of the requested fee may also be confirmed by the use of a lodestar cross-check. Here, the requested fee would result in a multiplier of 3.10, which is well within the range of multipliers that are commonly awarded in complex class actions with substantial contingency risks.

For these reasons, as well as those set forth below and in the Joint Declaration, Class Counsel respectfully submit that the requested attorneys' fees are fair and reasonable under the applicable standards and should therefore be awarded by the Court. The reimbursement of costs and expenses requested by Class Counsel and Class Plaintiff are likewise reasonable and necessarily incurred in the successful prosecution of the Action. Accordingly, they too should be approved.

## **ARGUMENT**

I. **Plaintiff's Counsel's Fee Application Should Be Approved**

    A. **Class Counsel Are Entitled to an Award of Attorneys' Fees from the $10.5 Million Common Fund**

It is well-settled that attorneys who represent a class and aid in the creation of a settlement

fund are entitled to compensation for legal services from the settlement fund. Under the "equitable" or "common fund" doctrine long-established in *Trustees v. Greenough*, 105 U.S. 527, 529-30 (1881), attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007).

Besides providing just compensation, awards of attorneys' fees from a common fund attract skilled counsel to represent those who seek redress for damages inflicted on classes of persons. *See, e.g.*, *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) ("The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel."); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 720 ("*Synthroid I*") (7th Cir. 2001) ("[A]wards net of fees could rise with the level of fees if a higher payment attracts the best counsel."). Indeed, the Supreme Court emphasizes that private securities cases are "'an indispensable tool with which defrauded investors can recover their losses' – a matter crucial to the integrity of domestic capital markets." *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 320 n.4 (2007) (citation omitted). Accordingly, common fund fee awards encourage and support meritorious class actions and thereby promote compliance with the federal securities laws.

**B.      The Awarded Fee Should Be a Percentage of the Fund**

In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court held that under the "common fund doctrine" a reasonable fee may be based "on a percentage of the fund bestowed on the class." *Id.* at 900 n.16. Although courts within this Circuit in "common fund cases have discretion to choose either the lodestar or the percentage method of calculating fees," *In re Trans Union Corp. Privacy Litig.*, No. 00 C 4729, 2009 WL 4799954, at *9 (N.D. Ill. Dec. 9, 2009), the Seventh Circuit has strongly endorsed the percentage of the fund method because it most closely approximates the manner in which attorneys are compensated in the marketplace for contingent

work. *See Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund . . . in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis"); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 844 (N.D. Ill. 2015) (stating that the percentage method has "emerged as the favored method for calculating fees in common-fund cases in this district.").

The Seventh Circuit has recognized "that there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572-73 (7th Cir. 1992) (noting that it is easier to award a percentage "than it would be to hassle over every item or category of hours and expenses and what multiple to fix and so forth"). Moreover, the Seventh Circuit has recognized the disadvantages of the lodestar method. *See In re Synthroaid Mktg. Litig.*, 325 F.3d 974, 979-80 ("*Synthroid II*") (7th Cir. 2003) (noting that the lodestar method may create a conflict of interest between the attorney and client); *Will v. Gen. Dynamics Corp.*, No. 06-698-GPM, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) ("The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive."); *Silverman v. Motorola, Inc.*, No. 07 C 4507, 2012 WL 1597388, at *4 (N.D. Ill. May 7, 2012) (same); *Kaufman v. Am. Express Travel Related Servs., Co.*, No. 07-CV-1707, 2016 WL 806546, at *13 n.19 (N.D. Ill. Mar. 2, 2016) (same).[3]

---

[3] Even under a lodestar analysis, however, the fee request would equate to multiplier of 3.10, which is firmly within the range of reasonableness. *See Harman v. Lyphomed, Inc.*, 945 F.2d 976 (7th Cir. 1991) (stating that multipliers of up to 4.0 have been approved); *see also In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) ("'In recent years multipliers of between 3 and 4.5 have been common' in federal securities cases.") (citation omitted); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (finding multipliers ranged as high as 19.6, though most run from 1.0 to 4.0).

In *Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005), the Seventh Circuit provided guidance for the award of attorneys' fees in a securities class action:

> [W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time. . . . Although it is [sic] impossible to know ex post exactly what terms would have resulted from arm's length bargaining ex ante, courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions.

*Id.* at 599. In affirming an award of fees equaling 30% of a $7.5 million settlement fund plus expenses, the court considered, *inter alia*, the following factors: (1) "awards made by courts in other class actions" which "amount[ed] to 30-39% of the settlement fund"; (2) "the quality of legal services rendered"; and (3) "the contingent nature of the case." *Id.* at 600.

As discussed below, an award of 30% of the Settlement Amount plus expenses in this case is the most appropriate method to "recreate the market" given the nature and scope of the Action, awards in similar cases, the contingent nature of the representation, and the substantial result achieved for the Settlement Class.

### C. The Requested Fee Is Reasonable and Appropriate as a Percentage of the Common Fund

#### 1. The 30% Attorneys' Fee Request Is Entirely Consistent with Seventh Circuit Authority and Authority Nationwide

The Seventh Circuit has "held repeatedly that, when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Synthroid I*, 264 F.3d at 718; *see also Synthroid II*, 325 F.3d at 975 ("A court must give counsel the market rate for legal services."). A district court must factor into its assessment of the appropriateness of the percentage to award attorneys in a securities class action "the value that the

market would have placed on [Class] Counsel's legal services had its fee been arranged at the outset" to "avoid[ ] assigning a value 'based on nothing more than a subjective judgment regarding [Class Counsel's] work.'" *Sutton*, 504 F.3d at 693-94 (citation omitted). *Synthroid I* further explained that the "market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." 264 F.3d at 721.

As one court within this Circuit has observed, the "payment of 33% of the common fund is widely accepted by the Seventh Circuit as a reasonable fee in a class action." *Swift v. Direct Buy, Inc.*, No. 2:11-CV-401-TLS, 2013 WL 5770633, at *8 (N.D. Ind. Oct. 24, 2013); *Taubenfeld.*, 415 F.3d at 600 (awarding 33 1/3 % of settlement fund); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) ("A customary contingency fee would range from 33 1/3 % to 40% of the amount recovered."); *Meyenburg v. Exxon Mobil Corp.*, No. 3:05-cv-15-DGW, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) ("33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation.").

While the fee in any case can vary based on the particular facts and likelihood of recovery in that case, it is noteworthy that a 30% fee is consistent with several prior fee awards in class action cases of similar settlement amounts within this Circuit. *See, e.g.*, *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *1, *4 (S.D. Ill. Jan. 31, 2014) (awarding one-third of $30 million class recovery); *Heekin v. Anthem, Inc.*, No. 1:05-cv-01908-TWP-TAB, 2012 WL 5878032, at *1, *4-*5 (S.D. Ind. Nov. 20, 2012) (approving 33% fee for $90 million settlement); *Retsky*, 2001 WL 1568856, at *3-*4 (awarding one-third of $14 million); *See, e.g., In re Groupon, Inc. Sec. Litig.*, No. 12 CV 2450, 2016 WL 3896839, at *4 (N.D. Ill. July 13, 2016) (awarding 30% of $45 million

7

settlement fund); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.,* No. 11–cv – 08332–AJS, 2014 WL 12767763 (N.D. Ill. Aug. 5, 2014) (awarding 30% of $60 million settlement fund); *Dairy Farmers I*, 2015 WL 753946, at *16 (awarding 33% of $46 million common fund); *In re Plasma–Derivative Protein Therapies Antitrust Litig.,* No. 09 C 7666, slip op. at 2 (N.D. Ill. Jan. 22, 2014), ECF No. 693 (awarding 33 1/3% of $64 million settlement fund); *Standard Iron Works v. ArcelorMittal*, No. 08 C 5214, 2014 WL 7781572, at *1, *3 (N.D. Ill. Oct. 22, 2014) (awarding 33% of $163.9 million total common fund, finding the amount "a fair and reasonable attorneys' fee"); *Motorola I*, 739 F.3d at 959 (holding that fee award of 27.5% of a $200 million settlement was not excessive); *Roth v. AON Corp*., No. 04– C–6835, slip op. at 1 (N.D. Ill. Nov. 18, 2009), ECF No. 220 (awarding 31% of $30 million settlement fund); *Cent. Laborers' Pension Fund v. SIRVA, Inc.*, No. 04–C–7644, 2007 U.S. Dist. LEXIS 105097, at *18–19 (N.D. Ill. Oct. 31, 2007) (awarding 29.85% of $53.3 million settlement).

Furthermore, the Seventh Circuit held that "the ratio that is relevant to assessing the reasonableness of the attorneys' fees . . . is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014). Accordingly, the ratio should exclude the cost of administering the settlement and the value of any *cy pres* award. *Redman*, 768 F.3d at 630; *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014). Here, the Settlement Amount is $10,500,000; the requested attorneys' fee is $3,150,000; maximum claims administration fees are $200,000. Joint Decl. at ¶¶ 11, 35, 79. The *Redman* ratio, then, is (1) $3,100,000 to (2) $10,300,[4] or 30.09%, which is indistinguishable from Class Counsel's 30% fee request. *See Kaufman*, 2016 WL 806546, at *12 (noting that "there is not much authority, post-*Redman*, to guide the court as to what contingency fee percentage is reasonable"). Finally, no class

---

[4] $10,500,00 - $200,000 = $10,300,000.

member has submitted any objection to the notice that Class Counsel would request up to 33 1/3% of the Settlement Amount.

>2.    **Class Counsel Provided the Settlement Class with Quality Legal Services That Produced Excellent Benefits**

In evaluating Class Counsel's fee request, the Seventh Circuit holds that courts may consider the "quality of legal services rendered." *Taubenfeld*, 415 F.3d at 600; *see also Synthroid I*, 264 F.3d at 721. As a general matter, securities litigation is "'notoriously difficult and unpredictable.'" *Maher*, 714 F.2d at 455 (citations omitted); *see also In re Suprema Specialties, Inc. Sec. Litig.*, No. 02-168(WHW), 2008 WL 906254, at *11 (D.N.J. Mar. 31, 2008) ("[T]his case's complexity is undeniable, given its facts and area of law, securities law."). Moreover, "prosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987).

From the inception of the Action, Class Counsel engaged in a concerted effort to obtain the maximum recovery for the Settlement Class. This case required an in-depth investigation, extensive briefing and confirmatory discovery efforts, and the skill to respond to a host of legal and factual issues raised by Defendants at every step of the litigation. *See* Joint Decl. ¶¶ 6, 11, 19, 20, 32, 42-43, 55. Class Counsel demonstrated a willingness to continue to litigate rather than accept a settlement that was not in the best interest of the Class, as evidenced by the fact that the full-day mediation did not result in a settlement. Rather, Class Counsel continued negotiating for days, ensuring that any settlement would be in the Class's best interest. As a result of their diligent efforts and their skill and expertise, Class Counsel negotiated an excellent result for the Settlement Class.

>3.    **The Requested Attorneys' Fees Are Fair and Reasonable in Light of the Contingent-Fee Nature of the Representation**

Class Counsel undertook the Action on a contingent fee basis, assuming significant risk

that the litigation would yield no recovery and leave them uncompensated. Unlike counsel for Defendants, who are typically paid an hourly rate and regularly reimbursed for their expenses, Class Counsel have not been compensated for any time or expense since this case began nearly two years ago. Courts have consistently held that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *Synthroid I*, 264 F.3d at 721 ("The market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear."); *Taubenfeld*, 415 F.3d at 600 (noting that a court should consider "the contingent nature of the case" and that "lead counsel was taking on a significant degree of risk of nonpayment with the case.").

At the outset of the Action, Class Counsel assumed significant risk that Defendants would successfully defend this case at every stage of litigation, including at class certification, summary judgment, pre-trial *Daubert* and motion *in limine* proceedings, trial, and any post-trial proceedings. Hence, the risk that the Settlement Class and Class Counsel would recover nothing was considerable. If the Action proceeded, Class Counsel would have to contend with complex factual and legal issues such as: (i) whether RTI's financial statements were intentionally or recklessly misstated, or whether the accounting errors were the result of mere negligence, the complex nature of revenue adjustments, and persistent material weaknesses in internal controls despite good-faith efforts to remediate them; and (ii) whether the financial misstatements were material, or whether they were rendered immaterial because RTI adequately warned investors of its ineffective internal controls and the specific risk of inaccuracies in revenue adjustments. *See* Joint Decl. at ¶¶ 46, 48, 49, 66. Thus, these factual and legal issues would have been the focus of fact depositions, expert discovery, class certification, summary judgment, and, ultimately, trial.

Further, Class Plaintiff would have to prove damages. Because proof of damages is primarily obtained through expert testimony, it is complex, expensive, and fraught with risk. *See*

10

*In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 506 (W.D. Pa. 2003) ("A jury would therefore be faced with competing expert opinions representing very different damage estimates, thus adding further uncertainty as to how much money–if any– the Class might recover at trial."); *see also* Joint Decl. at ¶¶45-46.

Should the case survive summary judgment, prior to trial, Class Counsel would have to file and oppose motions *in limine*, designate transcripts, prepare the pre-trial order and trial memorandum, create jury charges and interrogatories, prepare for *voir dire*, and prepare witnesses (after facing potential difficulty securing them for trial), examinations, and exhibits. At trial, Class Counsel would have to convince a jury that, among other things, Defendants acted with scienter. Joint Decl. at ¶¶49, 66. Any jury verdict in favor of the class likely would have been subjected to post-trial motions and appeal. *Id.* at ¶50. These motions and appeals could ultimately result in no recovery at all. *See, e.g.*, *Glickenhaus*, 787 F.3d at 413-14, 433; *BankAtlantic*, 2011 WL 1585605, at *6, *38; *Robbins v. Koger Prop., Inc.*, 116 F.3d 1441, 1446, 1449 (11th Cir. 1997) (reversing judgment in plaintiffs' favor and entering judgment in favor of defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1221, 1233 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation).

Because the fee in this matter was entirely contingent, the only certainty was that Class Counsel would receive no compensation without a successful result and that such a result would only be realized after considerable time and effort. Class Counsel committed significant amounts of both time and money to the vigorous and successful prosecution of this litigation for the benefit of the Settlement Class. In view of the skill of Defendants' counsel and the legal and factual

11

difficulties of the Action, the risk of never being compensated was real and should be considered when determining whether the requested fee is reasonable under Seventh Circuit authority. *See, e.g.*, *Sutton*, 504 F.3d at 694 (reversing district court's fee award and stating "[b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel, whose only source of a fee was a contingent one, was undercompensated"). The contingent nature of Class Counsel's representation strongly favors approval of the requested fee.

### 4. The Reaction of the Class Supports the Requested Award

The Claims Administrator has sent the Mailed Notice to 15,177 potential Settlement Class Members and nominees and posted the Mailed Notice on a website devoted to the Action. Joint Decl. at ¶¶9, 70; *see also* Ex. 1 thereto (Broker Decl.), ¶15. The Mailed Notice informed Settlement Class Members that Class Counsel would apply for attorneys' fees of no more than 33 1/3% of the Settlement Amount, plus expenses not to exceed $100,000, and that Settlement Class Members had the right to object to this fee and expense request. *Id.* at ¶39. No objections to the fee and expense request have been received. Further, Class Counsel's filed application for attorneys' fees and expenses will be posted to the Action's website so that Settlement Class Members will know the specific amount of fees and expenses being sought before the January 10, 2022 deadline for objections. Moreover, Class Plaintiff supports Class Counsel's fee request.

## II. Class Counsel's Expenses Were Reasonable and Necessary for the Benefit of the Class

Attorneys who generate a common fund for a plaintiff class are entitled to the reimbursement of reasonable litigation expenses from that fund. *Great Neck Capital Appreciation Inv. P'Ship, L.P. v. PriceWaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 412 (E.D. Wis. 2002) (citing *Synthroid I*, 264 F.3d at 722). To prosecute the Action to resolution, Class Counsel incurred reasonable and necessary costs and expenses in the amount of $60,943.44. Joint Decl. at ¶73. Because the expenses at issue are the types reimbursed by individual clients in the marketplace, they should be

reimbursed from the common fund. A significant component of Class Counsel's expenses is the cost of experts and investigators. Class Counsel consulted experts in the fields of accounting, auditing, and loss causation and damages. These experts were instrumental in assisting Class Counsel in achieving the result obtained for the Settlement Class. In addition, Class Counsel hired an investigative firm to identify and interview witnesses to assist in the development of the facts involved in the Action. Class Counsel also incurred the costs of online legal and fact research, such as Westlaw, Bloomberg, and Pacer. *See Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015) ("It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized research; court reporters; travel expense; copy, phone and facsimile expenses and mediation.")

### III. Class Plaintiff Is Entitled to Reimbursement of Costs Under the PSLRA

Pursuant to 15 U.S.C. §78u-4(a)(4), Class Plaintiff is permitted to recoup unreimbursed costs (including the cost of time spent) incurred while serving as lead plaintiff. Courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24 2005).

Class Plaintiff respectfully requests a reimbursement of $5,000. Class Plaintiff devoted substantial time to overseeing and participating in the Action, including, among other things, reviewing pleadings, collecting documents and information, and monitoring case developments and settlement negotiations. Therefore, a $5,000 reimbursement, including the cost of her time, is appropriate under the PSLRA. *See Silverman*, 2012 WL 1597388, at *5 (granting awards as

13

"reasonable and reflect[ing] the class representatives' time spent reviewing pleadings, preparing for depositions, complying with discovery requests, consulting with Class Counsel, and participating in mediation").

## CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court enter an Order awarding: (1) attorneys' fees in the amount of 30% of the Settlement Amount ($3,150,000), plus interest thereon; (2) the reimbursement of Class Counsel's total out-of-pocket litigation expenses in the amount of $60,943.44; and (3) the reimbursement of Class Plaintiff's total costs of $5,000.

Dated:   January 3, 2022

By: */s/ Louis C. Ludwig*
Patrick V. Dahlstrom
Louis C. Ludwig
Pomerantz LLP
10 South LaSalle St., Ste, 3505
Chicago, IL 60603
312.377.1181
pdahlmstrom@pomlaw.com
lcludwig@pomlaw.com

Velvel (Devin) Freedman
Kyle W. Roche
Ivy T. Ngo
Constantine P. Economides
Roche Freedman LLP
SunTrust International Center
1 S.E. 3rd Avenue
Suite 1240
Miami, FL 33131
(t) (305) 851-5997
vel@rochefreedman.com
kyle@rochefreedman.com
ingo@rochefreedman.com
ceconomides@rochefreedman.com

***Class Counsel***

Brian Schall
The Schall Law Firm
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (424) 303-1964
brian@schallfirm.com

***Additional Counsel for Lead Plaintiff***

15