**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| PATRICIA LOWRY, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| RTI SURGICAL HOLDINGS, INC., CAMILLE I. FARHAT, BRIAN K. HUTCHISON, JONATHON M. SINGER, ROBERT P. JORDHEIM, and JOHANNES W. LOUW, | ) ) ) ) ) ) ) ) | No.: 20-cv-01939 Honorable Matthew F. Kennelly |
| Defendants. | ) ) ) | |

**JOINT DECLARATION OF CONSTANTINE P. ECONOMIDES AND LOUIS C. LUDWIG OF (I) MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION AND CERTIFICATION OF THE CLASS; AND (II) MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND REIMBURSEMENT AWARD TO CLASS PLAINTIFF**

**ROCHE FREEDMAN LLP**
SunTrust International Center
1 S.E. 3rd Avenue
Suite 1240
Miami, Florida 33131
Telephone: 305-851-5997

**POMERANTZ LLP**
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: 312-377-1181

*Lead and Proposed Class Counsel*

Constantine P. Economides and Louis C. Ludwig hereby declare as follows:

## I.  Introduction

1.      We, Constantine P. Economides and Louis C. Ludwig, are Of Counsel in the law firms of Roche Freedman LLP ("Roche Freedman") and Pomerantz LLP ("Pomerantz"), respectively.

2.      In the above-captioned litigation (the "Litigation" or "Action"), by Court Order dated June 30, 2020, Roche Freedman and Pomerantz were appointed as co-lead counsel (together, "Class Counsel"). Dkt. No. 38. As Class Counsel, we have directed every major aspect of the prosecution and resolution of this Litigation on behalf of the Class.[1] We have personal knowledge of the matters set forth herein based on our active participation in the prosecution and settlement of this Litigation and, if called upon as witnesses, could and would testify competently thereto. In addition, based on our direct role in prosecuting the Litigation, we have learned about, and have a detailed understanding of, the efforts of other attorneys who have worked on the case.

3.      We submit this Declaration in support of the proposed Settlement of the Action between Lead Plaintiff Rosy Yeretsian ("Class Plaintiff" or "Plaintiff") and Defendants RTI Surgical Holdings, Inc. ("RTI" or the "Company"), Camille I. Farhat, Brian K. Hutchison, Jonathon M. Singer, Robert P. Jordheim, and Johannes W. Louw (the "Individual Defendants," and, together with RTI, the "Defendants").

4.      We also submit this Declaration in support of the proposed Plan of Allocation. The Plan of Allocation, which is set forth fully in the Mailed Notice, provides that Class Members who submit acceptable Proof of Claim and Release Forms ("Proofs of Claim") will

---

[1] Unless otherwise defined, capitalized terms herein have the same meanings attributed to them in the Stipulation of Settlement (the "Stipulation"). Dkt. No. 95-1.

1

receive a *pro rata* share of the "Net Settlement Fund," *i.e.*, the Settlement consideration less certain Court-approved costs, fees, and expenses. Dkt. No. 102.

5.     This Declaration is additionally offered in support of Class Counsel's application for attorneys' fees and reimbursement of expenses. As discussed below, the requested fees represent a fair "market rate" for counsel's services and are further supported by the contingent risk borne by Class Counsel and the result obtained. The requested fees fall well within the parameters recognized as appropriate in federal securities class actions such as this Litigation, both under a percentage of recovery analysis and under a lodestar cross-check analysis. The expenses incurred were all reasonable and necessary for the prosecution of the Litigation and within the maximum figure proposed in the Mailed Notice sent to the Class.

6.     Class Plaintiff and her counsel have vigorously litigated this case on behalf of the Class since its inception, including, among other things: (a) conducting an extensive investigation of the claims asserted in the Action, including a detailed review of the Company's filings with the U.S. Securities and Exchange Commission ("SEC"), court filings, conference call transcripts, press releases, analyst reports, news reports and other public information, interviews with former RTI employees, and consultation with damages experts; (b) researching and preparing a detailed 93-page Consolidated Amended Class Action Complaint (the "CAC") based on this investigation; (c) successfully opposing Defendants' motion to dismiss the CAC; (d) conducting a targeted review and analysis of thousands of pages of documents obtained by Class Counsel through discovery from Defendants; (e) a 3-hour interview with RTI's CFO; and (f) engaging in a mediation process overseen by a highly experienced third-party mediator, Michelle Yoshida, including a full-day mediation session and follow-up negotiations.

7. The Stipulation is a fair and reasonable resolution of the Action and was derived from the efforts of Class Plaintiff and Class Counsel. The Settlement was negotiated on both sides by experienced counsel with a clear understanding of the strengths and weaknesses of their clients' respective claims and defenses. The Settlement confers a substantial and immediate benefit to the Class and is eminently fair, reasonable, and adequate under the circumstances given the risks involved in proving liability and damages. The Settlement also avoids the further risk, delay, and expense had the Action continued to trial. Class Counsel respectfully submit that, under the circumstances, the Settlement is in the best interest of the Class and should be approved.

8. Additionally, Class Counsel have prosecuted this action on a wholly contingent basis and, by doing so, assumed the risk of an unfavorable result. Class Counsel skillfully analyzed and pleaded the technical nature of RTI's alleged accounting violations, the Company's alleged failure to remediate internal control weaknesses, and the related failure to disclose the effects of these improprieties on the Company's revenue and earnings, all of which underlie the securities law violations alleged in the Action. Class Counsel also successfully opposed Defendants' motion to dismiss the CAC. Thus, Class Counsel's application for attorneys' fees equal to 30% of the Settlement Amount is fair both to the Class and Class Counsel and warrants this Court's approval. This fee request is justified by the benefits conferred and the nature of the legal services performed.

9. In response to the distribution of 15,177 Notice Packets, which include the Notice and the Proof of Claim, to potential Class Members, there have been no requests for exclusion from the Settlement. *See* Declaration of Jordan Broker Regarding (I) Mailing of Notice and Claim Form; (II) Publication of Summary Notice; (III) Call Center Services; (IV) The Settlement

3

Website; (V) Requests for Exclusion and Objections Received to Date ("Broker Decl.") attached hereto as Exhibit 1, at ¶¶ 11, 17. Additionally, at this time, there have been no objections to the Settlement. *Id.*, ¶19.

10. As explained in greater detail herein, the Settlement—reached only after a comprehensive inquiry into the merits of the claims alleged and the likely damages that could be recovered by the Class—achieves an excellent result for the Class given the risks of continuing litigation. Substantial factual research; consultation with accounting, loss causation, and damages experts; legal research; and considerable document discovery informed Class Plaintiff and Class Counsel that—while they believed the CAC's allegations were meritorious—there were significant risks that had to be carefully evaluated before determining the course (*i.e.*, whether to settle and on what terms or to go to trial) that was in the best interests of the Class.

11. In reaching the determination to settle the Action for $10.5 million in cash, Class Plaintiff and Class Counsel weighed the expected testimony of witnesses and documents that supported the CAC's allegations against the expected testimony of witnesses and documents that Defendants believed undercut those allegations. Class Counsel also considered Defendants' characterizations and interpretations of Class Plaintiff's allegations and evidence (as presented in Defendants' four briefs in support of their motions to dismiss), Defendants' detailed mediation statements, and Defendants' presentations made during settlement discussions. Defendants' arguments highlighted unsettled factual and legal issues that could be decided against Class Plaintiff and the proposed Class. Class Plaintiff and Class Counsel carefully considered those issues, and the risks attendant to them, in deciding to settle this Litigation on the agreed terms.

12. Balancing all the circumstances and risks if the Litigation were to continue, Class Plaintiff concluded that settlement on the terms agreed upon was in the best interest of the Class.

The Settlement confers a substantial benefit on the Class and eliminates the significant risks posed by continued litigation. We respectfully submit that the Settlement should be approved as fair, reasonable, and adequate; Class Counsel should be awarded attorneys' fees of 30% of the Settlement Amount plus expenses; and the Plan of Allocation of Settlement proceeds should be approved.

## II. Counsel's Efforts in the Litigation

### A. Litigation Background

13. This Action was initially filed in March 2020, and asserted claims under the Exchange Act against RTI and certain of its current and former officers and directors. *See* Dkt. No. 1. The initial complaint alleged that RTI's internal controls over financial reporting were deficient and that certain financial reports filed by RTI contained materially inaccurate information. *Id*.

14. On April 9, 2020, the Company filed a current report on a Form 8-K with the SEC announcing that the internal audit investigation remained ongoing and that investors should no longer rely on prior financial reports and reports concerning the internal controls over financial reporting for the fiscal years ended December 31, 2014, 2015, 2016, 2017 and 2018, and RTI's unaudited financial statements for the quarterly periods for 2016-2018, and the nine months ended September 30, 2019. ¶¶ 13, 229. RTI further announced its impending plans to restate its previously released financial statements

15. On May 26, 2020, Plaintiff Yeretsian filed her motion pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") to be appointed Lead Plaintiff on behalf of the Class and approve her selection of Pomerantz LLP and Roche Freedman LLP as Co-Lead Counsel for the Class. *See* Dkt. No. 26.

16.     On June 30, 2020, Lead Plaintiff's motion for appointment, as well as approval of Co-Lead Counsel was granted. *See* Dkt. No. 37.

**B.      The Consolidated Amended Class Action Complaint and Motion to Dismiss**

17.     On August 31, 2020, and after a robust investigation led by lead counsel, Plaintiff amended her complaint. ECF No. 53.

18.     Plaintiff based the 93-page CAC on an extensive factual investigation during which Class Counsel, *inter alia*: conferred with experts regarding damages and loss causation; interviewed numerous former employees of RTI who are cited in the CAC; thoroughly examined the Company's public filings, press releases, and transcripts of earnings calls with investors; and reviewed analyst research reports, news articles, and other publicly available information concerning the Company. Critically, the publicly available information included RTI's Restatement and related disclosures, which set forth the nature of the Company's accounting violations, the reasons for such violations, and the extent of the financial misstatements. Class Counsel closely scrutinized and analyzed the Restatement disclosures.

19.     On October 15, 2020, Defendants filed four separate briefs in support of their respective motions to dismiss, totaling over 70 pages. *See* ECF No. 58.

20.     On December 4, 2020, Plaintiff filed a 55-page combined opposition to Defendants' various motions to dismiss. *See* ECF No. 69. On January 4, 2021, Defendants filed four reply briefs in support of their motions to dismiss. *See* ECF Nos 70-73.

21.     On April 1, 2021, Judge Kennelly denied ***all*** of Defendants' motions to dismiss in their entirety. *See* MTD Order. In issuing the MTD Order, he "directed [Defendants] to answer the amended complaint by no later than April 29, 2021" and instructed the parties to "submit a joint status report containing an agreed or separate proposals by no later than April 22, 2021." *Id.*

22.     During discussions concerning the substance of the joint status report, the parties agreed that early settlement talks were both a viable and desirable path, and the parties informed Judge Kennelly of the instant mediation. *See* ECF No. 81. Furthermore, the parties agreed to not completely stay the action, to exchange Federal Rule of 26(a) disclosures, to agree – or seek relief from Judge Kennelly – on a confidentiality order and an initial electronically-stored information ("ESI") protocol. *Id.*

23.     Defendants filed separate answers to the Complaint on April 29, 2021. *See* ECF Nos. 82-85.

24.     On May 19, 2021, the parties exchanged Rule 26(a) disclosures.

25.     Subsequently, and consistent with Judge Kennelly's April 1, 2021 Order, the parties submitted a joint agreed confidentiality order and informed him that they had reached a preliminary agreement on ESI. On June 4, 2021, he entered the parties' agreed confidentiality order. *See* ECF No. 88.

## III.     Mediation, Settlement, and Preliminary Approval

### A.     Mediation and Settlement Negotiations

26.     On June 30, 2021, the Parties mediated for the full day with mediator Michelle Yoshida of Philips Alternative Dispute Resolution Enterprises. Settlement was not reached that day, and Ms. Yoshida continued negotiations, meeting several times with the Parties over the next six days. On July 6, 2021, the Parties to agreed to a mediator's recommendation on the principal terms of a settlement.

27.     The Parties, overseen by Ms. Yoshida, participated in multiple continued meetings until principal settlement terms were agreed to on July 6, 2021.

7

28.     The Parties accepted the mediator's recommendation and executed a memorandum of understanding outlining the principal terms of the Settlement.

29.     Throughout the course of the negotiations, the Parties were represented by counsel with vast experience in litigation in general and securities class actions in particular. The Settlement was the result of an adversarial process designed to produce a fair and honest compromise. Class Plaintiff and Class Counsel demonstrated a willingness to continue to litigate rather than accept a settlement that was not in the best interest of the Class, as evidenced by the fact that the Parties did not reach a settlement at the formal mediation session held on June 30, 2021, but instead continued to negotiate.

### B.     Settlement, Preliminary Approval, and Notice to the Class

30.     The Parties then finalized the terms of the Settlement, which are memorialized in the Stipulation of Settlement filed with the Court on August 31, 2021. Dkt. No. 95-1. On the same day, Plaintiff also filed the related exhibits with the Court for preliminary approval, including the Notice, Summary Notice, and Proof of Claim. Dkt. No. 95.

31.     By Order entered on September 22, 2021 (Dkt. No. 103) (the "Preliminary Approval Order"), the Court granted preliminary approval of the Settlement; held that the Settlement was sufficiently fair, reasonable, and adequate as to the Class Members to warrant providing notice of the Settlement to Class Members; preliminarily certified, for the purposes of effectuating the Settlement, the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure; and set a final settlement approval hearing date for January 24, 2022 at 9:00 a.m.

## IV.     Class Counsel's Investigation and Litigation Efforts

32.     Through the vigorous efforts of Class Counsel, Class Plaintiff was able to achieve an excellent result for the Class. Specifically, Class Counsel undertook the following efforts:

8

a. reviewed and analyzed RTI's pre-Class Period, Class Period, and post-Class Period SEC filings, press releases, conference call transcripts, and other public disclosures;

b. collected and reviewed a comprehensive compilation of analyst reports and national and local news reports concerning RTI;

c. identified and interviewed numerous former RTI employees;

d. consulted with an accounting expert, who reviewed and analyzed the Company's Restatements and assisted Class Counsel in developing the allegations in the Complaint;

e. consulted a damages expert to confirm statistically significant disclosures, estimate aggregate class period damages, and later develop a Plan of Allocation for the Class;

f. prepared the 93-page, 283 paragraph Complaint based on the investigation;

g. prepared a 55-page omnibus opposition to Defendants' four motions to dismiss;

h. engaged in meet-and-confer discussions and correspondence with Defendants regarding discovery-related matters;

i. prepared a detailed mediation statement, addressing both liability and damages issues;

j. participated in a full-day mediation session with Michelle Yoshida on June 30, 2021, with multiple continued meetings until principal settlement terms were reached on July 6, 2021;

k. obtained a $10.5 million settlement following arm's-length negotiations with Defendants;

l. engaged in confirmatory discovery, involving an exhaustive review of approximately 7,000 pages of RTI's documents and a 3-hour interview of RTI's Chief Financial Officer, Jonathon Singer;

m. prepared the documents required for preliminary and final approval of the Settlement; and

n. engaged a claims administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq"), to facilitate the claims administration process for the Class.

**V.  Summary of the Settlement and Plan of Allocation**

33.  The Settlement Fund consists of $10.5 million in cash, plus all interest earned thereon. Pursuant to the Stipulation, the Settlement Amount has already been paid and deposited into an interest-bearing escrow account.

34.  The Class consists of all persons and entities who purchased or acquired shares of RTI common stock between March 7, 2016 and June 25, 2020, both dates inclusive, and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of RTI, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which Defendants have or had a controlling interest. Also excluded from the Class are those Persons who submit valid and timely requests for exclusion in accordance with the requirements set forth in the Notice.

35.  The Net Settlement Fund is the Settlement Fund, less: (i) attorneys' fees and expenses; (ii) taxes and tax expenses; (iii) Notice and Administration Expenses; and (iv) reimbursement awards to Class Plaintiff. For example, the costs of the Settlement Administrator, which are capped at $200,000, will be charged to the Settlement Fund. The Net Settlement Fund is to be distributed on a *pro rata* basis pursuant to the Plan of Allocation to those Class Members submitting valid claims (the "Authorized Claimants"). As set forth in the Notice, the Settlement Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's "Recognized Loss." Therefore, the Settlement and Plan of Allocation are fair, reasonable, and adequate.

36.  The Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Class Members who submit timely, valid Proofs of Claim. The proposed Plan of Allocation was formulated after consultation with Class Plaintiff's damages

10

expert and reflects Class Plaintiff's theory of recoverable damages under Exchange Act jurisprudence. Class Members' recognized damages are calculated based upon the timing of securities purchases and sales, giving effect to the removal of artificial inflation in the price of RTI common stock after the disclosures of corrective information to the market. The Plan of Allocation also attempts to eliminate the effects of market forces unrelated to the alleged misrepresentations and factors in the relative strengths and weaknesses of the corrective disclosure dates and movement of the price of RTI common stock. Thus, the proposed Plan of Allocation is designed to fairly and rationally allocate the proceeds of this settlement among the Class.

37. The Net Settlement Fund will be distributed to Class Members who submit valid, timely Proofs of Claim under the Plan of Allocation and who are entitled to a distribution amount of $20 or more. Each Authorized Claimant shall be paid the percentage of the Net Settlement Fund that each Authorized Claimant's claim bears to the total of the claims of all Authorized Claimants. The allocation is based on the alleged inflation per share for purchases of RTI common stock during the Class Period, or other acquisitions and sales, as well as the PSLRA 90-day look-back amount.

38. If, after the first distribution, there are any funds left in the Net Settlement Fund (for example, due to uncashed checks), then, if economically feasible, the remaining amount will be redistributed to Class Members who cashed their checks in the first distribution and who are entitled to a redistribution amount of $20 or more.

39. Pursuant to the Preliminary Approval Order, Class Counsel, through the Settlement Administrator, implemented a comprehensive notice program whereby notice was given to the members of the Class by mail and by publication. The Notice disclosed, among

11

other things, the following information necessary to evaluate the benefits of the Settlement to Class Members: (1) the amount of the Settlement Fund to be distributed to Authorized Claimants on a per share basis (estimated to be $1.00 per share before the deduction of any fees, expenses, costs, and awards); (2) the Plan of Allocation; (3) that Class Counsel would apply for an attorneys' fee award in an amount not to exceed 33 1/3% of the Settlement Fund, plus interest and expenses incurred prosecuting the Litigation in an amount not to exceed $100,000, and that any Class Member could object to the fee application; (4) that Class Plaintiff would request payment for her actual costs and expenses (including lost wages) directly related to her representation of the Class, not to exceed $5,000; (5) a detailed explanation of the reasons for the Settlement; (6) that requests for exclusion from the Settlement must be filed no later than January 10, 2022; (7) that objections to the Settlement, the Plan of Allocation, or the fee application must be filed no later than January 10, 2022; and (8) that the deadline for filing Proofs of Claim is January 14, 2022.

40.     As set forth in the Preliminary Approval Order, the deadlines for Class Members to exclude themselves from the Class, or to object the Settlement, the Plan of Allocation, and/or to the application for attorneys' fees and reimbursement of litigation expenses—January 10, 2022—has yet to pass. However, as of the filing of this Declaration, the Settlement Administrator and Class Counsel have not received any objections or requests for exclusion. *Id.* at ¶¶17, 19

41.     Perhaps the strongest evidence that the Plan of Allocation is both fair and reasonable is that not one Class Member, each of whom has a direct financial interest in the Settlement Fund, has opted out of or objected to any aspect of the Settlement, including the specifics of the Plan of Allocation itself.

## VI.     The Fairness and Reasonableness of the Settlement

42.     Prior to the Settlement of the Action, Class Counsel obtained an in-depth understanding of the factual and legal issues by, among other things: (a) conducting a thorough investigation in connection with the preparation of the CAC; (b) successfully opposing Defendants' motion to dismiss; (d) preparing detailed statements for and participating in a full-day mediation sessions; and (e) engaging in confirmatory discovery.

43.     Based on Class Counsel's investigation of the allegations set forth in the CAC, as well as documents and information obtained during the course of confirmatory discovery, Class Counsel firmly believe that Plaintiff's claims against Defendants have considerable merit and that Plaintiff would ultimately prevail at trial. However, Class Counsel also recognize that establishing liability is not guaranteed and that there are weaknesses in Plaintiff's allegations. Prosecuting the Action through trial would require Plaintiff's claims to survive Defendants' inevitable opposition to class certification and motion for summary judgment. There is no guarantee that Plaintiff would have cleared each of these hurdles.

44.     Even assuming that Plaintiff's claims were to survive class certification, and later, summary judgment, and Plaintiff were to prove liability, Plaintiff would have also faced the challenge of establishing classwide damages. Defendants would have argued, as they did in their motion to dismiss, that the corrective disclosures identified by Plaintiff were not actually corrective disclosures at all.

45.     Proof of loss causation and damages is primarily obtained through expert testimony, which is not only expensive, but also complex and fraught with risk. The jury would have to resolve a battle of the experts, with a highly uncertain outcome.

46. Additionally, Plaintiff would have to proffer expert testimony to prove: (i) what the "true value" of RTI common stock would have been had there been no alleged material misstatements in the Company's financial statements; (ii) the amount by which RTI common stock was inflated by the alleged material misstatements; and (iii) the amount of inflation removed by the corrective disclosures. Defendants would have presented their own damages expert to present conflicting conclusions and theories as to the reason(s) for RTI's stock price decline, requiring a jury to resolve a "battle of the experts"—an inherently unpredictable process.

47. Expert testimony could rest on many assumptions, any of which could be rejected by a jury as speculative or unreliable. Plaintiff would likely have faced arguments by Defendants to preclude Plaintiff's damages expert's testimony under *Daubert* and would have risked a decision that its expert's damages model might not be admissible in evidence. Even if Plaintiff's expert survived the *Daubert* motion, Plaintiff's and Defendants' competing damages assessments would be at substantial odds and subject to the highly unpredictable reactions of the jury. Class Counsel recognize the possibility that a jury could be swayed by Defendants' experts and could find that there were no damages or only a fraction of the amount of damages that Plaintiff contends were suffered by the Class.

48. Another issue hotly disputed issue is whether Defendants made materially false and misleading statements during the Class Period. As Defendants argued in their motions to dismiss and would undoubtedly argue in a motion for summary judgment or at trial, RTI adequately—and indeed, repeatedly—warned investors of the Company's ineffective internal controls and the specific risk of inaccuracies. Given these warnings and risk disclosures, Defendants could have credibly argued that RTI investors were not misled at all, but instead purchased RTI common stock with a full understanding of the risk for accounting errors.

14

49. Finally, Defendants would continue to dispute that they acted with scienter when they made materially false and misleading statements and misstated financial results. Defendants would have argued that the accounting errors identified by the Restatement were the result of negligence, general mismanagement of the accounting department, the complexity of RTI's accounting, which required significant judgment and discretion, and the Company's inability to resolve material weaknesses and ineffective internal controls, despite Defendants' best and honest efforts.

50. Even if Plaintiff prevailed on liability and the Class was awarded damages, Defendants would likely appeal the verdict and award. The appeals process could span years, during which time the Class would receive no distribution on any damages award. Moreover, an appeal of any verdict would carry the risk of reversal, in which case the Class would receive no recovery even after having prevailed on the claims at trial.

51. Class Counsel is aware that, if the case had not settled, Defendants' insurance coverage would be substantially drained further by defense costs during discovery, potentially depleting all available coverage that could be used to compensate the Class.

52. Based on an analysis conducted by Plaintiff's damages expert, Plaintiff's estimate that aggregate, class-wide damages are between $30 and $37 million. This estimate assumes that Plaintiff would have prevailed on all the merits of her arguments and that all aspects of the case would be sustained and proven at trial. Even so, based on the $30 to $37 million damages estimate, the $10.5 million Settlement Amount represents a recovery of 28% to 35%.

53. After careful review of all of the evidence, Class Counsel believe it is in Class Plaintiff's and the Class's best interest to settle the case against Defendants. Class Counsel is actively engaged in complex federal civil litigation, particularly securities class actions. Our

experience in the field allowed us to identify the complex issues involved in this case and to formulate strategies to effectively prosecute Plaintiff's and the Class's claims. We believe that our reputations as attorneys who will zealously carry a meritorious case through the trial and appellate levels, as well as our demonstrated ability to vigorously develop the evidence in this case, placed us in a strong position in settlement negotiations with Defendants.

54.     Plaintiff believes that she could have prevailed on the merits of the case. Defendants, however, were just as adamant that Plaintiff would fail. Having considered all of the foregoing, and having evaluated Defendants' defenses, it is the informed judgment of Class Counsel, based on all proceedings to date, information and documents obtained during the Litigation, and their extensive experience in litigating class actions under the federal securities laws, that the proposed Settlement is fair, reasonable, and adequate and in the best interests of the Class.

55.     In light of the various risks in the Litigation described above and based on the strengths and weaknesses of the claims asserted, the evidence developed through investigation and confirmatory discovery, and the damages that might be proven at trial, the Settlement, which provides a recovery of $10.5 million, plus interest earned thereon, is in the best interests of the Class, is well within the range of reasonableness, and compares favorably with recoveries obtained in comparable actions.

## VII.    Class Counsel's Request for Attorneys' Fees and Expenses Is Reasonable and Should Be Approved

### A.    The Fee Application

56.     The fee application is fair to both the Class and Class Counsel and, thus warrants the Court's approval. This fee request is within the range of fees frequently awarded in these types of actions and is entirely justified in light of the substantial benefits conferred on the Class,

16

the risks undertaken, the quality of representation, and the nature and extent of the legal services performed.

57.     Class Counsel also seeks payment for the expenses reasonably and necessarily incurred in prosecuting the Litigation. As set forth in the discussion of Class Counsel's efforts required to achieve the Settlement, these expenses were reasonably and necessarily incurred to obtain this successful result.

58.     As compensation for their efforts, Class Counsel is applying for an award of attorneys' fees in the amount of 30% of the Settlement Fund and reimbursement of $60,943.44 in expenses that were actually and reasonably incurred in the prosecution and settlement of the Litigation.

59.     Class Counsel have prosecuted this case for nearly two years without any compensation and have incurred substantial expenses without *any* guarantee of success.

60.     In the Seventh Circuit, courts determine the reasonableness of requested fee awards in representative litigation that results in a common settlement fund by adopting a "market-based" approach, *i.e.*, one that provides counsel with the equivalent of a fee that is privately negotiated at arm's-length prior to the outset of the case. *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). Consequently, where the "'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'" *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986) (emphasis in original). This simple and direct method of computing fees is practical, is supported by public policy, and is directly in line with the authorities in the Seventh Circuit and federal courts throughout the county. It is also supported by the PSLRA.

17

61.     As further detailed and discussed in the concurrently filed Class Plaintiff's Memorandum of Law in Support of Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Reimbursement Award to Class Plaintiff ("Fee Brief"), a fee request of 30% of the Settlement Amount is within the range of fees awarded by courts in the Seventh Circuit. Awards in similar class action cases are compiled and discussed in the Fee Brief.

**B.     Class Counsel's Expertise**

62.     The expertise and experience of Class Counsel are an important factor to be weighed in setting a fair fee. As demonstrated in the resumes of Roche Freedman and Pomerantz, Class Counsel are comprised of experienced and skilled practitioners in the class action and securities litigation fields, who are responsible for significant settlements as well as legal decisions that enable litigation such as this to be successfully prosecuted, vindicating the interests of class members. *See* Dkt. Nos. 29-04, 29-05 (Pomerantz and Roche Freedman firm resumes previously submitted).

63.     Class Counsel prosecuted the Litigation vigorously against Defendants, without any assurance of obtaining any compensation for their efforts, and expended substantial time and resources litigating this case. Specifically, Class Counsel have already devoted a significant amount of time to this case—approximately 1,338 hours—and intend to devote more time in the future towards administering the Settlement.

64.     The quality of the work performed by Class Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition. Defendants were represented by leading national law firms, including Holland & Knight LLP and DLA Piper. In the face of this knowledgeable and formidable opposition, Class Counsel were nevertheless able to develop a

18

case that was sufficiently strong to persuade Defendants to settle it on terms that were highly favorable to the Class.

### C. The Risks of Contingent Litigation

65. Class Counsel undertook representation of Class Plaintiff and the Class on a wholly contingent basis. Class Counsel knew from the outset that they would expend a substantial amount of time and expense prosecuting the Action and yet receive no compensation if the Litigation ultimately proved unsuccessful. Thus, the contingent nature of payment of fees and expenses and the risks and complexity of the Litigation should be given substantial weight by the Court in deciding upon Class Counsel's application for fees and expenses.

66. Continued litigation would have entailed significant risks to the Class. The Litigation could have been derailed in any number of ways before a final judgment was entered (and withstood appeal) finding in Plaintiff's favor on the issues of falsity, scienter, loss causation, and damages—all of which Defendants vigorously disputed. Indeed, Class Counsel was well aware of the weaknesses of Plaintiff's allegations, particularly on the issue of scienter. The Court or a jury could find that RTI's revenue adjustments were caused by negligence or the complex nature of Defendants' revenue adjustments and that ineffective internal controls persisted despite Defendants' best efforts and honest intentions to remediate them. Further, the Court or a jury could find that Defendants did not materially mislead investors because they candidly and honestly warned investors of the ineffective internal controls and material weaknesses at RTI. Thus, although Class Counsel strongly believed in the strength of this case, we recognized that prosecution of the Action posed substantial risk.

67. This Declaration and the memoranda in support of the proposed Settlement and the fee application describe the substantial risks of the Litigation. Those same difficulties also

constituted risks that Class Counsel might never be paid for their efforts. As set forth within the Fee Brief, numerous courts have recognized that risk is an important factor in determining an appropriate fee award. Indeed, there are numerous cases where class counsel in contingent fee cases such as this, after expenditures of thousands of hours and significant out-of-pocket expenditures, have received no compensation whatsoever. Class counsel who litigate cases in good faith and receive no fees whatsoever are often the most diligent members of the plaintiffs' bar. The fact that Defendants and their counsel know that members of the plaintiffs' bar are actually able to, and will, go to trial even in high-risk cases gives rise to meaningful settlements in actions such as this one. The losses suffered by class counsel in other actions where insubstantial settlement offers are rejected, and class counsel ultimately receives modest or no fees, should not be ignored. Class Counsel knows from personal experience that, despite the most vigorous and competent of efforts, success in contingent litigation is never assured. Because the fee to be awarded in this matter is entirely contingent, the only certainty from the outset was that there would be no fee without a successful result and that such a result would be realized only after a lengthy and difficult effort.

68.     Indeed, lawsuits such as this are exceedingly expensive to litigate successfully. Those unfamiliar with the efforts required to litigate class actions often focus on the aggregate fees awarded, but ignore the fact that those fees are used to fund enormous overhead expenses incurred during the course of many years of litigation; are taxed by federal, state, and local authorities; are used to fund the massive expenses of other contingent cases prosecuted by plaintiffs' counsel and to pay the monthly salaries of the firms' attorneys and staff; and when reduced to a bottom line, are far less imposing than the gross fee awarded appears.

69. As a result of consistent and persistent efforts in the face of substantial risks and uncertainties, Class Counsel achieved a significant recovery for the benefit of the Class. In consideration of Class Counsel's hard work and the excellent result achieved, the requested 30% fee is reasonable and should be approved. Indeed, the lodestar of $978,765, as shown below, demonstrates the significant effort that Class Counsel put into the prosecution of this case, despite the risk of obtaining no recovery or payment for their efforts.

**D.      Class Plaintiff and the Reaction of the Class Supports the Requested Fee**

70. As noted above, more than 15,177 Notice Packets have been sent to potential Class Members. Broker Decl. at ¶11. The Notice advised Class Members that Class Counsel would apply for an award of attorneys' fees to be awarded from the Settlement Fund not to exceed 30% of the Fund. As of the date of this Declaration, no objections to the Settlement, Plan of Allocation, or request for attorneys' fees have been received, and no Class Member has requested to be excluded from the Class.

**E.      The Fee Request Is Also Justified Under the Lodestar/Multiplier Approach**

71. The Seventh Circuit has found that a court may determine an attorney's lodestar by multiplying the number of reasonable hours that he or she worked on a client's case by a reasonable hourly billing rate for such services given the geographical location, the nature of the services provided, and the experience of the lawyer. The Seventh Circuit has also found that after the lodestar is calculated, it can then be increased or decreased based upon the contingent nature or risk in the particular case involved and the quality of the attorney's work.

72. Class Counsel expended approximately 1,338 hours in the prosecution of the Litigation, which Class Counsel submit were reasonable and reflect Class Counsel's commitment to aggressively pursuing compensation for the Class, while avoiding unnecessary duplication of

tasks. Applying the normal hourly rates of Class Counsel to the hours expended in the Litigation

yields a total lodestar amount of $978,765. The calculation of the lodestar is set forth below:

ROCHE FREEDMAN LLP

| ATTORNEYS: | STATUS | HOURS[2] | RATE | LODESTAR |
|---|---|---|---|---|
| Constantine P. Economides | Of Counsel | 69.0 85.6 8.8 | $820 $890 $890 | $140,596.00 |
| Velvel (Devin) Freedman | Partner | 21.4 108.6 2.5 | $920 $960 $960 | $126,344.00 |
| Ivy Ngo | Of Counsel | 45.4 51.0 0.1 | $775 $775 $775 | $74,787.50 |
| Brianna Pierce | Associate | 109.4 | $675 | $73,845.00 |
| Kelvin Goode | Associate | 25.6 | $800 | $20,480.00 |
| Colleen Smeryage | Associate | 19.9 2.0 | $800 $880 | $17,680.00 |
| Warren Li | Associate | 5.1 | $800 | $4,080.00 |
| Niraj Thakker | Associate | 3.2 0.9 | $710 $710 | $2,911.00 |
| Jolie Huang | Associate | 0.8 | $710 | $568.00 |
| Devyn Glass | Staff Attorney | 23.8 118.4 | $400 $420 | $59,248.00 |
| Carly Henek | Staff Attorney | 11.3 2.3 | $600 $600 | $8,160.00 |
| Athanasia Karadjas | Paralegal | 10.5 13.2 | $250 $275 | $6,255.00 |
| Christina Larkin | Paralegal | 38.8 2.9 | $240 $240 | $10,008.00 |
| Michelle Lawson | Paralegal | 7 | $275 | $1,925.00 |
| William Tracy | Paralegal | 5.1 | $290 | $1,479.00 |
| Nathalie Bermond | Paralegal | 0.6 | $200 | $120.00 |
| TOTAL LODESTAR | TOTAL | 793.2 | | $548,486.50 |

POMERANTZ LLP

| ATTORNEYS | STATUS | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| Patrick V. Dahlstrom | Partner | 159.25 | $1000 | $159,250 |
| Joshua B. Silverman | Partner | 1.90 | $895 | $1,700 |

---

[2] Divided by year: 2020, 2021, 2022 (top to bottom).

22

| Louis C. Ludwig | Of Counsel | 366.00 | $715 | $261,976.00 |
|---|---|---|---|---|
| James LoPiano | Associate | 5.63 | $400 | $2,252 |
| Michael Krzywicki | Associate | 12.00 | $425 | $5,100 |
| **TOTAL LODESTAR** | | **545.18** | | **$430,278.50** |

## VIII. Class Counsel's Request for Reimbursement of Expenses Is Reasonable and Should Be Approved

73.     Class Counsel also request reimbursement of $60,943.44 in expenses, which is substantially less than the $100,000 estimate of expenses contained in the Notice. The amount of out-of-pocket expenses, by category, incurred in the Litigation is set forth below:

ROCHE FREEDMAN LLP

| CATEGORY OF EXPENSE | AMOUNT |
|---|---|
| POSTAGE AND OVERNIGHT MAIL | $461.22 |
| COURT FILING FEES | $561.00 |
| MEDIATION | $3750.00 |
| ONLINE RESEARCH | $2499.36 |
| INVESTIGATOR | $5226.80 |
| PHOTOCOPY | $27.69 |
| **GRAND TOTAL** | **$12,526.07** |

POMERANTZ LLP

| CATEGORY OF EXPENSE | AMOUNT |
|---|---|
| COURT FILING FEES | $800.00 |
| PRESS RELEASES AND NEWSWIRES | $3,279.87 |
| MEDIATION | $4,555.00 |
| ONLINE RESEARCH | $1,006.89 |
| EXPERT | $26,723.00 |
| INVESTIGATOR | $11,861.50 |
| CLERICAL OVERTIME | $190.41 |
| **GRAND TOTAL** | **$48,417.37** |

74.     These expenses were reasonable and incurred for items necessary to the prosecution of the Action. Further, because the expenses were incurred for the benefit of the Class and are of a type reimbursed in the marketplace, they should be reimbursed from the common fund in the same manner as an individual client would reimburse counsel's expenses.

75. The fact that these expenses are less than the estimate of expenses contained in the Notice demonstrates the efficiency with which Class Counsel prosecuted the Litigation.

**IX. Class Plaintiff Should Be Reimbursed for Her Reasonable Costs and Expenses Directly Related to Her Representation of the Class**

76. It is common practice for plaintiffs to be reimbursed for their costs and expenses (including lost wages) relating to their representation of the Class. *See, e.g.*, *Silverman v. Motorola, Inc.*, No. 07 C 4507, 2012 WL 1597388, at *5 (N.D. Ill. May 7, 2012) (noting that such reimbursement is allowable under 15 U.S.C. §78u-4(a)(4)).

77. Class Plaintiff has dedicated significant time to prosecuting the Litigation— including monitoring the prosecution of the Action, and collecting and producing documents, and was instrumental in achieving a successful result for the Class. Throughout the Litigation, Plaintiff helped form the strategy for the suit, selected counsel, reviewed pleadings and motions, and consulted with counsel throughout the negotiation of the Settlement. Moreover, the Mailed Notice informed all potential Class Members that Plaintiff would seek to recover costs and expenses of up to $5,000. As of the date of this declaration, there have been no objections to Plaintiff's request for reimbursement of her reasonable costs and expenses. Class Counsel thus respectfully submits that Plaintiff should be reimbursed $5,000 for her reasonable costs and expenses.

**X. Conclusion**

78. Class Counsel respectfully submit that, based on an understanding of the facts and circumstances concerning the subject matter of the Litigation, the principles of law applicable to them, the procedural posture of the Litigation, and the risks of continued litigation against Defendants, the Settlement represents a favorable result for the Class and should be approved by the Court. Based on all these factors, as well as Class Counsel's extensive experience in

litigating securities class actions, we believe that the Settlement, which provides a significant recovery to the Class, is far more beneficial than pushing ahead towards an uncertain outcome.

79.     Class Plaintiff and Class Counsel respectfully submit that the Settlement and Plan of Allocation are fair, reasonable, and adequate in light of the criteria generally considered by courts in this Circuit. Class Plaintiff and Class Counsel request that the Court approve the $10.5 million Settlement and Plan of Allocation; grant Class Counsel's application for an award of attorneys' fees in the amount of 30% of the Settlement Amount ($3,150,000) and reimbursement of reasonable expenses in the amount of $60,943.44; and grant Class Plaintiff's request for reimbursement of her reasonable costs and expenses directly related to her representation of the Class in the amount of $5,000.


Executed this 3rd day of January 2022.


By: _/s/ Constantine P. Economides_


Executed this 3rd day of January 2022.


By: _/s/ Louis C. Ludwig_


25