**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PATRICIA LOWRY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RTI SURGICAL HOLDINGS, INC., CAMILLE I. FARHAT, BRIAN K. HUTCHISON, JONATHON M. SINGER, ROBERT P. JORDHEIM, and JOHANNES W. LOUW,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    No.: 20-cv-01939<br>Honorable Matthew F. Kennelly |

**CLASS PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION FOR ORDER OF DISTRIBUTION</u>**

**POMERANTZ LLP**
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: 312-377-1181

**ROCHE FREEDMAN LLP**
SunTrust International Center
1 S.E. 3rd Avenue, Suite 1240
Miami, FL 33131
Telephone: 305-851-5997

*Lead and Class Counsel*

1

This is a securities class action brought on behalf of investors who purchased or otherwise acquired shares of RTI Surgical Holdings, Inc. ("RTI") common stock during the period from March 7, 2016 through March 27, 2020 (the "Class").[1]

Pursuant to the January 26, 2022 Order of Final Approval and Final Judgment (the "Final Approval Order") (Dkt. No. 115), this Court approved the Parties' Settlement and dismissed all claims asserted against RTI, its successors, and the Individual Defendants in exchange for $10.5 million in cash. This $10.5 million plus interest, less Court-approved awards, fees and expenses (the "Net Settlement Fund"), is to be distributed to members of the Class pursuant to the Plan of Allocation approved by this Court in the Final Approval Order.

### A. Dissemination of Notice and Class Member Communication

As documented in the attached Declaration Of Jordan Broker In Support Of Lead Plaintiff's Motion For An Order Authorizing Distribution Of Class Action Settlement Proceeds (Exhibit A; "Broker Decl."), the Court-appointed claims administrator for the Settlement, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), has diligently fulfilled its obligation to administer the Settlement. Following entry of the Court's September 22, 2021 Order Preliminarily Approving Settlement and Providing For Notice (the "Preliminary Approval Order") (Dkt. No. 103), Epiq arranged for the printing and mailing of the Court-approved Notice to be mailed to members of the Class that could be reasonably identified. Broker Decl., ¶4.[2] In total, Epiq caused the notice to be mailed to 17,150 Notice Packages to potential Class Members

---

[1] All capitalized terms are employed consistent with their use in the parties' Stipulation of Settlement dated August 31, 2021 ("Stipulation") (ECF No. 95-1),

[2] *See also* Declaration Of Jordan Broker Regarding (I) Mailing Of Notice And Claim Form; (II) Publication Of Summary Notice; (III) Call Center Services; (IV) The Settlement Website; (V) Requests For Exclusion And Objections Received To Date (Dkt. No. 112-1) ("Mailing Declaration"); Supplemental Declaration Of Jordan Broker Regarding Requests For Exclusion And Claims Received To Date (Dkt. No. 113-1).

and nominees. *Id.*

To affect the mailing of the Notice, Epiq relied on its databases recorded from largest and most common banks, brokers and other nominees. Mailing Decl., ¶6. At the time of the Initial Mailing, Epiq's internal broker list contained 1,116 mailing records. *Id.* At the outset of the notice program, Epiq established and continues to maintain: (a) a toll-free telephone number; (b) a post office box for the receipt of Claim Forms and all written communications necessary to the administration of the Settlement; (c) a website dedicated to the Settlement; and (d) an email address dedicated to inquiries related to the Settlement. Mailing Decl., ¶¶3, 13-18.

With respect to Class Member claims, Epiq's efforts included (i) conferring with Lead Counsel regarding the project guidelines for processing Proofs of Claim; (ii) creating a unique database to store Proofs of Claim details and images of Proofs of Claim and supporting documentation; (iii) training staff in the specifics of the project so that Proofs of Claim would be properly processed; (iv) formulating a system to properly respond to telephone and email inquiries; (v) developing various computer programs and screens to enter Class Members' identifying information and transactional information; and (vi) developing a proprietary "calculation module" to calculate Recognized Loss pursuant to the Court-approved Plan of Allocation set forth in the Notice. Broker Decl., ¶7

**B**.     **The Deficiency Process and Late Claims**

On the basis of guidelines and a methodology for approving claims as set forth in the Broker Declaration, Epiq initially determined that certain filed claims were deficient or failed to meet the requirements for participating in the Settlement and should be rejected. *Id.* at ¶¶17, 21. Notices of Deficiency were sent (in e-mail form for electronic filers) to each of these claimants and, where appropriate, requested that the claimants cure the deficiencies. *Id.*; ¶19 & Exhibit A

2

thereto. Epiq received and processed follow-up requests and correspondence from claimants relating to these Notices of Deficiency. *Id.*, ¶¶21-22.

In all, 2,090 claims were recommended for rejection by Epiq. *Id.*, ¶33. Reasons for rejection or ineligibility included the following: No Eligible Purchases/Acquisitions During the Class Period (479 claims); Proof of Claim Did Not Result in a Recognized Loss (1,330 claims); Deficient Proof of Claim Never Cured (257 claims); Duplicate Proof of Claim (10 claims); Withdrawn Proof of Claim (14 claims). *Id.*, ¶34 & Exhibit B-3 thereto.

Of 113 claims received after the filing deadline, 40 have been found to be otherwise eligible in whole or in part. *Id.*, ¶26. Epiq has concluded that these claims should be included in the distribution based on its belief that "no delay has resulted from the provisional acceptance of these Late But Otherwise Eligible Claims." *Id.*

### C. **Proposed Authorized Claims**

Of the 2,844 claims received through July 31, 2022, Epiq identified 754 properly documented claims that are entitled to distribution from the Net Settlement Fund. *Id.*, ¶32.[3] Utilizing the Court approved Plan of Allocation, the total Recognized Loss for all valid claims is $22,609,352.85. Of that total, $22,353,300.35 is for Timely Eligible Claims and $256,052.50 is for Late But Otherwise Eligible Claims. *Id.*, ¶35. According to the Plan of Allocation, each Authorized Claimant shall be allocated a *pro rata* share of the Net Settlement Fund based on his,

---

[3] A list of the submitted Claims and their ultimate disposition is contained in the Administrator's Report attached to the Broker Decl. as internal Exhibit B. Exhibit B-1, entitled "Timely Eligible Claims," lists all timely filed, provisionally accepted Proofs of Claim, and states their Recognized Loss. Exhibit B-2, entitled "Late But Otherwise Eligible Claims," lists all late filed, provisionally accepted Proofs of Claim and states their Recognized Loss. Exhibit B-3, entitled "Rejected Claims," lists all wholly rejected Proofs of Claim and states the reason for their rejection. For privacy reasons, Exhibits B-1 through B-3 provide only the claimant's claim number and Recognized Loss or reason for rejection (no names, addresses, taxpayer ID, social security or social insurance numbers are disclosed).

her or its Recognized Loss as compared to the total Recognized Losses of all Authorized Claimants; however, as set forth in the Court-approved Plan of Allocation, if an Authorized Claimant's prorated payment calculates to less than $20.00, it will not be included in the calculation and the Claimant will not receive any distribution. *Id*. Upon approval by the Court, Epiq will prepare and mail checks (or wire transfers where applicable) to all Authorized Claimants for their *pro rata* share of the Net Settlement Fund, subject to the $20.00 cut-off for payments. *Id*., ¶37.

Should the Court concur with Epiq's determinations concerning the provisionally accepted and rejected Claims, including the Late But Otherwise Eligible Claims, Epiq recommends the following distribution plan:

(a) Epiq will distribute 100% of the available balance of the Net Settlement Fund, after deducting the payments previously allowed and requested herein, and deducting payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, to the Authorized Claimants who would receive at least $20.00 based on their Recognized Loss in comparison to the total Recognized Loss of all Authorized Claimants (the "Distribution"). *Id.*, ¶39.

(b) To encourage Authorized Claimants to cash their Distribution checks promptly, and to avoid or reduce future expenses relating to unpaid Distribution checks, all Distribution checks will bear the notation: "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF DISTRIBUTION." *Id.*

(c) Authorized Claimants who do not cash their Distribution checks within the time allotted or on the conditions set forth in footnote 3 of the Broker Decl. will irrevocably forfeit all recovery from the Settlement. *Id.*

4

(d) No further Claims may be accepted, and no further adjustments to Claims may be made for any reason, after July 31, 2022. *Id.*

(e) Unless otherwise ordered by the Court, one year after the Distribution, Epiq will destroy the paper copies of the Proofs of Claim and all supporting documentation, and three years after the initial distribution, Epiq will destroy electronic copies of the same. *Id.*

Class Plaintiff requests that the Court approve these determinations and allow Epiq to proceed with allocating the *pro rata* distribution of the Net Settlement Fund for all valid claims to Authorized Claimants. As such, by this motion, Class Plaintiff seeks authority to allow Epiq to make distributions from the Net Settlement Fund to Authorized Claimants pursuant to the determinations, guidelines and methodology for approving claims, calculating Recognized Losses and determining applicable *pro rata* shares, set forth in the Broker Decl., which are consistent with the Court's prior orders and the terms of the Settlement. *Id.* & Internal Exhibit B thereto.

### D.     Claims Administration Costs

The Preliminary Approval Order authorized Lead (now Class) Counsel to pay, without further order of the Court, the Claims Administrator's reasonable and customary fees and costs for notice and administration of the Settlement up to $200,000.00, *see* Dkt. No. 103 at 8, ¶15. Epiq's current invoice is $140,772.30 for its work performed on behalf of the Class, including its estimate of fees and expenses to complete the Initial Distribution. Broker Decl., ¶36 & Internal Exhibit C thereto. This amount is paid pursuant to the Stipulation, Broker Decl., ¶36, is more than $59,000 less than the amount initially allocated by the parties, and reflects an admirable conservation of Class resources.

In addition, as is customary, Class Plaintiff seeks entry of an order providing that all

persons who were involved in the review, verification, calculation, tabulation, or any other aspect of the administration of claims filed in this Action, and all persons who were involved in the administration or taxation of the Net Settlement Fund, are released from any liability from any and all claims arising out of such activities.

Dated: September 2, 2022

By: */s/ Louis C. Ludwig*
Patrick V. Dahlstrom
Louis C. Ludwig
Pomerantz LLP
10 South LaSalle St., Ste, 3505
Chicago, IL 60603
312.377.1181
pdahlstrom@pomlaw.com
lcludwig@pomlaw.com

Velvel (Devin) Freedman
Ivy T. Ngo
Constantine P. Economides
Roche Freedman LLP
SunTrust International Center
1 S.E. 3rd Avenue
Suite 1240
Miami, FL 33131
305.851.5997
vel@rochefreedman.com
kyle@rochefreedman.com
ingo@rochefreedman.com
ceconomides@rochefreedman.com

***Class Counsel***

6